UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BEKA ONE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-cv-64 |
| | § | |
| RLI INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**APPENDIX OF EVIDENCE IN SUPPORT OF RLI INSURANCE COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant RLI Insurance Company submits with its Motion for Partial Summary Judgment the following summary judgment evidence:

**SUMMARY JUDGMENT EVIDENCE**

**Exhibit A** – Declaration of Matthew Campen (**Appx 001 – 005**)

**Exhibit A-1** – RLI Policy No. RKA030001 (**Appx 006 – 158**)

**Exhibit A-2** – Loss Notice and Acknowledgment (**Appx 159 – 161**)

**Exhibit A-3** – November 9, 2020 EMA Report (**Appx 162 – 165**)

**Exhibit A-4** – December 12, 2020 EMA Report with Nelson Forensics Reports (**Appx 166 – 292**)

**Exhibit A-5** – January 28, 2021 Coverage Letter (**Appx 293 – 296**)

**Exhibit A-6** – February 2, 2021 Email attaching JS Held Estimate (**Appx 297 – 306**)

**Exhibit A-7** – February 11, 2021 Coverage Letter (**Appx 307 – 309**)

**Exhibit A-8** – HVAC report and estimate from the public adjuster (**Appx 310 – 329**)

**Exhibit A-9** – December 9, 2021 acknowledgement email (**Appx 330 – 331)**

**Exhibit A-10** – January 6, 2022 email to HVAC specialist Comfort-Air (**Appx 332)**

**Exhibit A-11** – January 27, 2022 email analysis from Comfort-Air (**Appx 333)**

**Exhibit A-12** – Comfort-Air estimate (**Appx 334 – 340)**

**Exhibit A-13** – February 8, 2022 coverage email (**Appx 341 – 347)**

**Exhibit A-14** – 542A Demand letter (**Appx 348 – 363)**

**Exhibit A-15** – First Petition (**Appx 364 – 375)**

**Exhibit A-16** – 542A Response Letter (**Appx 376 – 379)**

**Dated**:  March 15, 2024    Respectfully submitted,

         */s/ Greg K. Winslett*
         GREG K. WINSLETT, SBN 21781900
         Southern District No. 13078
         RICHARD L. SMITH, III, SBN 24098446
         Southern District No. 2860216
         QUILLING, SELANDER, LOWNDS,
         WINSLETT & MOSER, P.C.
         2001 Bryan Street, Suite 1800
         Dallas, Texas 75201
         (214) 871-2100
         (214) 871-2111 (Fax)
         gwinslett@qslwm.com
         rlsmith@qslwm.com

         **ATTORNEYS FOR MT. HAWLEY**
         **INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

   This is to certify that a true and correct copy of the above and foregoing instrument is being served upon counsel for Plaintiff via ECF in accordance with the Federal Rules of Civil Procedure, on this 15th day of March 2024.

         */s/ Greg K. Winslett*
         Greg K. Winslett

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BEKA ONE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:23-cv-64 |
| | § | |
| RLI INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF MATTHEW CAMPEN

STATE OF ILLINOIS     §
                                      §
COUNTY OF Peoria     §

1.       My name is Matthew Campen. I am over the age of 21 years and I am competent to make this declaration. I am Vice President - Claims for RLI Insurance Company ("RLI"). I have personal knowledge of the facts stated herein based on my personal experience regarding the insurance claim related to the above captioned lawsuit, and they are all true and correct. As Vice President - Claims for RLI, I am a custodian of the records for RLI in connection with the claim related to the above captioned lawsuit. The records attached to this report are made and kept in the ordinary course of business by employees of RLI, whose job it is to make and keep such records in the ordinary course of their work.

2.       Attached hereto as **Exhibit A-1** is a true and correct copy of Commercial Property Policy No. MCP0500452, issued to named insured Beka One, LLC (the "Policy").

3.       Attached hereto as **Exhibit A-2** is a true and correct copy of the October 16, 2020 email and attached Property Loss Notice from Plaintiff's insurance agent, Debbie Dudley of RDA Martin & Sons Insurance Agency, submitting the Claim, as well as the email from RLI acknowledging the claim on the same day.

EXHIBIT
**A**

4.      RLI retained independent adjusting company Engle Martin & Associates ("EMA"), who inspected the Property on October 30, 2020, and recommended that RLI retain engineers and building consultants to assist in evaluating the claimed damage. Attached as **Exhibit A-3** is a true and correct copy of the November 9, 2020 report from EMA.

5.      RLI then retained professional engineering firm Nelson Forensics, LLC, and building consulting firm JS Held, LLC, to further assist with its claim investigation. Attached as **Exhibit A-4** is a true and correct copy of the email submitting the December 22, 2020 EMA Report to RLI along with "Nelson Report 1" (dated December 21, 2020) and "Nelson Report 2" (dated December 22, 2020). EMA promptly provided the Nelson Reports to JS Held to prepare an estimate of the cost of recommended repairs.

6.      On January 28, 2021, RLI sent Plaintiff a letter outlining the findings of Nelson Forensics and explaining that there was no coverage for the reported roof damage, which was determined to be cosmetic in nature. Attached as **Exhibit A-5** is a true and correct copy of that January 28, 2021 letter.

7.      On February 2, 2021, EMA sent RLI an email attaching JS Held's HVAC repair estimate. Attached as **Exhibit A-6** is a true and correct copy of that February 2, 2021 email and the attached JS Held estimate.

8.      On February 11, 2021, RLI sent Plaintiff a letter explaining that JS Held's repair estimate was below the applicable wind/hail deductible under the Policy, which is $54,950 (1% of the $5,495,040 building limit of insurance). Attached as **Exhibit A-7** is a true and correct copy of that February 11, 2021 letter.

9.      Over nine months later, on November 12, 2021, Plaintiff's public adjuster sent RLI a damage report and $102,093.10 repair estimate from an HVAC contractor, Integrity Solutions

Mechanical, LLC ("ISM"). Attached as **Exhibit A-8** is a true and correct copy of the November 12, 2021 email from the public adjuster with the attached report and estimate from ISM.

10.    RLI followed up again by email on December 9, 2021, informing the public adjuster that the ISM materials had been provided to JS Held for review and explaining that the ISM estimate contained a different scope of repairs than the Nelson Forensics reports (including HVAC units that Nelson determined did not have any covered damage). Attached as **Exhibit A-9** is a true and correct copy of that December 9, 2021 email.

11.    On January 6, 2022, JS Held contacted HVAC specialists from Comfort-Air Engineering, Inc. to assist regarding the correct scope and pricing of covered HVAC repairs based on the Nelson Forensics and ISM materials. Attached as **Exhibit A-10** is a true and correct copy of JS Held's January 6, 2022 email.

12.    On January 27, 2022, Comfort-Air emailed its analysis to JS Held. Attached as **Exhibit A-11** is a true and correct copy of that January 27, 2022 email.

13.    On February 3, 2022, JS Held sent RLI an email attaching Comfort-Air's comparable estimate, which was based on Comfort-Air's inspection and review of the Nelson and ISM reports. Attached as **Exhibit A-12** is a true and correct copy of that February 3, 2022 email and attached estimate.

14.    On February 8, 2022, RLI emailed the public adjuster reaffirming its coverage decision based upon the analysis and estimate provided by Comfort-Air, which still fell below the applicable deductible. Attached as **Exhibit A-13** is a true and correct copy of that February 8, 2022 email.

15.    On May 16, 2022, RLI received a pre-suit demand letter from Plaintiff's counsel submitted pursuant to Chapter 542A of the Texas Insurance Code alleging various breaches of the

Policy and statutory violations. Attached as **Exhibit A-14** is a true and correct copy of that demand letter.

16.     Attached as **Exhibit A-15** is a true and correct copy of Plaintiff's lawsuit against RLI regarding the Claim filed on May 27, 2022.

17.     Attached as **Exhibit A-16** is a true and correct copy of RLI's June 23, 2022 letter responding to Plaintiff's demand letter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 14 , 2024.

_Matthew Campen_

Matthew Campen

# CERTIFICATION

I, Scott R. Ostericher, do hereby certify that I am the AVP, Claim Operations of RLI Insurance Company, a corporation organized and existing under the laws of the State of Illinois, and that to the best of my knowledge the attached is a true and correct copy of Policy No. RKA0300001 (03/07/2020 – 03/07/2021) issued to Named Insured Beka One, LLC, Valcor Commercial Real Estate.

Scott R. Ostericher
cn=Scott R. Ostericher, o=RLI/Mt. Hawley/CBIC, ou=Claim
Department, email=Scott.Ostericher@rlicorp.com, c=US
To the best of my knowledge, the attached is a true and
correct copy of this policy.
Peoria, Illinois
2022.06.20 09:05:17 -05'00'

Scott R. Ostericher, AVP, Claim Operations, Claims
RLI Insurance Company

**EXHIBIT**
**A-1**

RLI_002131



# COMMERCIAL LINES POLICY
# COMMON POLICY DECLARATIONS

9025 N. Lindbergh Drive
Peoria, IL 61615
(800) 331-4929

## RLI INSURANCE COMPANY

DECLARATION EFFECTIVE 03/07/2020

Renewal
Policy Number:    RKA0300001                                    Agent # 43137

Named Insured and Mailing Address
BEKA ONE, LLC                                    Appalachian Underwriters Inc. (43137)
VALCOR COMMERCIAL REAL ESTATE                    7301 Merchant Court
1723 N LOOP 1604 E STE 204                        Suite B
SAN ANTONIO, TX  78232                           Sarasota, FL  34240

Policy Period: From: 03/07/2020  To: 03/07/2021 at 12:01 A.M., Standard Time at your mailing address shown above.

Business Description:  PROPERTY OWNERS

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH
YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM
MAY BE SUBJECT TO ADJUSTMENT.

|  |  | PREMIUM |
|---|---|---|
| Commercial Property Coverage Part | $ | ■ |
| Commercial General Liability Coverage Part | $ | ■ |
| Commercial Auto Coverage Part | $ | |
| Crime and Fidelity Coverages | $ | |
| Commercial Inland Marine Coverage Part | $ | |
| Commercial Liability Umbrella | $ | |

Taxes, Fees, Surcharges    $

TOTAL    $    ■

Premium shown is payable at inception

**FORMS(S) AND ENDORSEMENT(S) MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:***
**Refer To Forms Schedules**

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

| 01/07/2020 | Appalachian Underwriters Inc. (43137) |
|---|---|
| Countersignature Date | Authorized Representative |

RML 100 06 15

RLI_002132

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**RLI**
A Stock Insurance Company

**RLI INSURANCE COMPANY**
9025 N. Lindbergh Drive
Peoria, IL 61615
(800) 331-4929

| Policy Number:   RKA0300001 | Agent #   43137 |
|---|---|

[ X ]   See Supplemental Declarations

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| $ | 1,000,000 | Each Occurrence Limit |
| $ | 300,000 | Damage to Premises Rented to You Limit (Any One Premises) |
| $ | 5,000 | Medical Expense Limit (Any One Person) |
| $ | 1,000,000 | Personal & Advertising Injury Limit (Any One Person or Organization) |
| $ | 2,000,000 | General Aggregate |
| $ | 2,000,000 | Products/Completed Operations Aggregate Limit |

## FORM OF BUSINESS:

[ ]  Individual     [ ]  Partnership     [ ]  Joint Venture     [ ]  Trust     [ X ]  Limited Liability Company

[ ]  Organization, Including A Corporation     [ ]  Other _____

Location of All Premises You Own, Rent or Occupy:     SEE LOCATIONS SCHEDULE

**AUDIT PERIOD (If Applicable):**     [ X ] Annually     [ ] Semi-Annually     [ ] Quarterly     [ ] Monthly

| Classifications | Code No. | Premium Basis | Rates Prem./ Ops. | Rates Prod./ Comp. Ops. | Advance Premiums Prem./ Ops. | Advance Premiums Prod./ Comp. Ops. |
|---|---|---|---|---|---|---|
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| SEE SUPPLEMENTAL DECLARATIONS | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| Subtotal | | | | | $ | $ Included |

| | | |
|---|---|---|
| State Tax or Other (If Applicable) | $ | |
| | $ | |
| Endorsement Premium | $ | |
| Total Premium for this Coverage Part (Subject to Audit) | $ | |

## FORM(S) AND ENDORSEMENT(S) APPLICABLE TO THIS COVERAGE PART:

REFER TO FORMS SCHEDULE

RLI_002133



# COMMERCIAL GENERAL LIABILITY
## SUPPLEMENTAL DECLARATIONS

**RLI INSURANCE COMPANY**

9025 N. Lindbergh Drive
Peoria, IL 61615
(800) 331-4929

Policy Number:   RKA0300001

Agent #   43137

| Classifications | Code No. | Premium Basis | Rates Prem./ Ops. | Rates Prod./ Comp. Ops. | Advance Premiums Prem./ Ops. | Advance Premiums Prod./ Comp. Ops. |
|---|---|---|---|---|---|---|
| Primary Loc Shopping Centers - buildings, or premises not occupied by the insured (lessor's risk only) | 67635 | ▆▆▆ Area | ▆▆▆ | Included | ▆▆▆ | Included |
| Primary Loc Parking – public - shopping centers – maintained by the insured (lessor's risk only) | 46607 | ▆▆▆ Area | ▆▆▆ | Included | ▆▆▆ | Included |



# COMMERCIAL PROPERTY
# COVERAGE PART DECLARATIONS

**RLI INSURANCE COMPANY**

9025 N. Lindbergh Drive
Peoria, IL  61615
(800) 331-4929
Policy Number:    RKA0300001                    Agent #    43137

                                                [ X ]        See Supplemental Declarations

---

**NAMED INSURED:** BEKA ONE, LLC

**DESCRIPTION OF PREMISES:**

Prem.     Bldg.
No.       No.        Location, Construction/Fire Protection and Occupancy

## SEE SUPPLEMENTAL DECLARATIONS

---

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of Loss Form | Coinsurance (1) |
|---|---|---|---|---|---|

## SEE SUPPLEMENTAL DECLARATIONS

(1) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol.

**OPTIONAL COVERAGES:**

| Prem. No. | Bldg. No. | Coverage | Agreed Value Expiration | Replacement Cost | Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|

## SEE SUPPLEMENTAL DECLARATIONS

**OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY**

| Prem. No | Bldg. No. | Agreed Value Expiration | Monthly Limit of Indemnity (Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|

## SEE SUPPLEMENTAL DECLARATIONS

**DEDUCTIBLE:**

## SEE SUPPLEMENTAL DECLARATIONS

**Deductible Exceptions:**

**MORTGAGE HOLDERS:**
REFER TO SCHEDULED OF MORTGAGEHOLDERS

---

**FORM(S) AND ENDORSEMENT(S) APPLICABLE TO THIS COVERAGE PART:**
REFER TO FORMS SCHEDULE

---

**TOTAL PREMIUM FOR THIS COVERAGE PART:**        $ ▮▮▮▮▮

---

RPR 100 06 16                    Contains copyrighted material of
                    Insurance Services Office, Inc. with its permission
                                    APPX 010                                            Page 1 of 1

RLI_002135

# RLI

# COMMERCIAL PROPERTY COVERAGE PART
# SUPPLEMENTAL DECLARATIONS
### RLI INSURANCE COMPANY

Policy Number:  RKA0300001

Agent #    43137

## DESCRIPTION OF PREMISES:

| Prem. No. | Bldg. No. | Location, Construction/Fire Protection and Occupancy | | |
|---|---|---|---|---|
| 1 | 1 | 903 E. BITTERS RD, 1723 N LOOP 1604 E STE 204 SAN ANTONIO, TX 78216 | Masonry Non-Comb Restaurants - With cooking | PC 1 |

**COVERAGES PROVIDED:** Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Causes of Loss Form | Coinsurance (1) |
|---|---|---|---|---|---|
| 1 | 1 | Building | 5,495,040 | Special | 90% |
| 1 | 1 | Business Income EE - Incl Rental Value | 1,100,000 | Special | 100% |

(1) Coinsurance %, Extra Expense %, Limits on Loss Payment or Value Reporting Form Symbol.

## OPTIONAL COVERAGES:

| Prem. No. | Bldg. No. | Coverage | Agreed Value Expiration | Replacement Cost | Incl. Stock | Inflation Guard |
|---|---|---|---|---|---|---|
| 1 | 1 | Building | | X | | |

## OPTIONAL COVERAGES: APPLIES TO BUSINESS INCOME ONLY

| Prem. No. | Bldg. No. | Agreed Value Expiration | Monthly Limit of Indemnity (Fraction) | Maximum Period of Indemnity | Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|
| 1 | 1 | | 1/6 | | |

## OTHER:

| Prem. No. | Bldg. No. | Description |
|---|---|---|
| | | |

## DEDUCTIBLE:

| Prem. No. | Bldg. No. | Deductible |
|---|---|---|
| 1 | 1 | See Deductible Form(s) |

Deductible Exceptions:

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 011

RLI_002136

RLI INSURANCE COMPANY

# LOCATIONS SCHEDULE

POLICY NUMBER:   RKA0300001

AGENT #   43137

BEKA ONE, LLC
VALCOR COMMERCIAL REAL ESTATE
1723 N LOOP 1604 E STE 204
SAN ANTONIO, TX 78232

Appalachian Underwriters Inc. (43137)
7301 Merchant Court
Suite B
Sarasota, FL 34240

## LOCATIONS

| PREMS NO. | BLDG NO. | STREET | CITY | COUNTY | ST | ZIP |
|---|---|---|---|---|---|---|
| Primary | 1 | 903 E. BITTERS RD<br>1723 N LOOP 1604 E STE 204 | SAN ANTONIO | | TX | 78216 |

RLI_002137

POLICY NUMBER: RKA0300001                                    COMMERCIAL POLICY

## APPLICABLE FORMS AND ENDORSEMENTS

FORMS AND ENDORSEMENTS LISTED BELOW APPLY TO AND ARE MADE PART OF THIS POLICY AT TIME OF ISSUE.

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| Form Number | Title |
|---|---|
| IL0003 09 08 | CALCULATION OF PREMIUM |
| IL0017 11 98 | COMMON POLICY CONDITIONS |
| IL0021 09 08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| RML302 06 15 | DISCRIMINATION EXCLUSION |
| RML306 08 15 | ASBESTOS EXCLUSION |
| RML307 08 15 | LEAD EXCLUSION |
| IL0168 03 12 | TEXAS CHANGES – DUTIES |
| IL0275 11 13 | TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES |
| IL0953 01 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| Form Number | Title |
|---|---|
| CG0001 04 13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2107 05 14 | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - LIMITED BODILY INJURY EXCEPTION NOT INCLUDED |
| CG2109 06 15 | EXCLUSION – UNMANNED AIRCRAFT |
| CG2144 04 17 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION |
| CG2167 12 04 | FUNGI OR BACTERIA EXCLUSION |
| CG2173 01 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG2196 03 05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| RGL300 06 15 | GENERAL LIABILITY ENHANCEMENT |
| RGL308 08 15 | ELECTROMAGNETIC RADIATION EXCLUSION |
| CG0103 06 06 | TEXAS CHANGES |

### FORMS THAT APPLY TO COMMERCIAL PROPERTY

| Form Number | Title |
|---|---|

RLI_002138

| | |
|---|---|
| CP0010 10 12 | BUILDING AND PERSONAL PROPERTY  COVERAGE FORM |
| CP0030 10 12 | BUSINESS INCOME (AND EXTRA EXPENSE)  COVERAGE FORM |
| CP0090 07 88 | COMMERCIAL PROPERTY CONDITIONS |
| CP0140 07 06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CP0320 04 18 | MULTIPLE DEDUCTIBLE FORM (FIXED DOLLAR DEDUCTIBLES) |
| CP0411 09 17 | PROTECTIVE SAFEGUARDS |
| CP1030 09 17 | CAUSES OF LOSS - SPECIAL FORM |
| CP1218 10 12 | LOSS PAYABLE PROVISIONS |
| RPR308 06 16 | EQUIPMENT BREAKDOWN COVERAGE |
| RPR315 06 16 | PREFERRED PROPERTY ENHANCEMENT |
| RPR318 06 16 | COMMERCIAL PROPERTY BASKET LIMITS ENDORSEMENT |
| RPR322 06 16 | LIMITATIONS ON COVERAGE FOR ROOF SURFACING AND/OR BUILDINGS AND STRUCTURES |
| RPR327 06 16 | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE |
| CP0142 03 12 | TEXAS CHANGES |
| CP9993 01 95 | TENTATIVE RATE |
| RPR310TX 06 16 | TEXAS CHANGES - EQUIPMENT BREAKDOWN |

RLI_002139

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

RLI_002140

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

APPX 016

RLI_002141

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

  **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

  **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

APPX-017

RLI_002142

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08

APPX-013

RLI_002143

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCRIMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM - SECTION II – LIABILITY

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or medical payments arising out of discrimination based on, but not limited to, race, color, creed, sex, religion, age, weight, national origin, gender, handicap, familial preference, or sexual preference.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 019

RLI_002144

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM - SECTION II - LIABILITY

The following exclusion is added:

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or medical payments arising out of:

1. Asbestos, asbestos fibers or asbestos products or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "property damage," "personal and advertising injury," or medical payments;

2. Any supervision, instructions, recommendations, notices, warnings, testing, monitoring or advice given or which should have been given in connection with the manufacturing, selling, renting, consulting, removal, demolition, and/or distributing of asbestos, asbestos fibers or asbestos products or products or premises containing asbestos;

3. Removal of asbestos or products containing asbestos including:

   a. Cost of asbestos removal and replacement with other fire retardant materials;

   b. "Property damage" in the course of removing asbestos, asbestos fibers or asbestos products.

4. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos, asbestos fibers, or asbestos products; or

5. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of asbestos, asbestos fibers, or asbestos products.

In addition, we shall not be obligated to investigate, to pay any claim or judgment or to defend any "suit" for "bodily injury," "property damage," "personal and advertising injury," or medical payments caused by, resulting from or arising out of asbestos, asbestos fibers or asbestos products.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission

**APPX 020**

RLI_002145

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM - SECTION II – LIABILITY

The following exclusion is added:

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or medical payments arising out of:

1. The ingestion, inhalation or absorption of lead in any form or to any obligation of the insured to indemnify another and/or contribute with another because of damages arising out of, or as a result of such "bodily injury," "property damage," "personal and advertising injury," or medical payments;

2. Any supervision, instructions, recommendations, notices, warnings, testing, monitoring or advice given or which should have been given in connection with the manufacturing, selling, renting, consulting, removal, demolition and/or distributing of lead or products or premises containing lead;

3. Removal of lead or products containing lead, including "property damage" in the course of removing lead;

4. Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

5. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages, because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

In addition, we shall not be obligated to investigate, to pay any claim or judgment or to defend any "suit" for "bodily injury," "property damage," "personal and advertising injury," or medical payments caused by, resulting from or arising out of the ingestion, inhalation or absorption of lead in any form.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission
APPX 021

RLI_002146

IL 01 68 03 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

© Insurance Services Office, Inc., 2011

APRX 022

RLI_002147

IL 02 75 11 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **2.** We may cancel this policy:

    **a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

APPX-023

RLI_002148

**b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

　**(a)** Fraud in obtaining coverage;

　**(b)** Failure to pay premiums when due;

　**(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

　**(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

　**(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

**(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

　**(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

　**(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

　**(c)** If the Named Insured submits a fraudulent claim; or

　**(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**B.** The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

　**a.** The first Named Insured; and

　**b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

 © Insurance Services Office, Inc., 2013

APPX-024

RLI_002149

POLICY NUMBER: RKA0300001 **IL 09 53 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

APPX 025

RLI_002150

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© Insurance Services Office, Inc., 2015
IL 09 53 01 15

ARPX 026

RLI_002151

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

APPX-027

RLI_002152

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

RLI_002154

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

APPX 030

RLI_002155

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012 APPX 031

RLI_002156

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

#### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

#### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

#### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

#### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

#### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

#### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

#### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

#### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

APPX 032

RLI_002157

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012
RLI_002158

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    © Insurance Services Office, Inc., 2012

RLI_002159

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

  **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

  **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

  **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

  **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

  **(a)** Obtain records and other information related to the "suit"; and

  **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© Insurance Services Office, Inc., 2012
RLI_002160

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

RLI_002161

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012

ARRX-037

RLI_002162

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012     CG 00 01 04 13

RLI_002163

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

ARPX-039

RLI_002164

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

       (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

       (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012

RLI_002165

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012

APPX 041

RLI_002166

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 ARPX 042

RLI_002167

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CG 21 07 05 14 © Insurance Services Office, Inc., 2013 Page 1 of 1

ARRX-043

RLI_002168

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

 © Insurance Services Office, Inc., 2014

RLI_002169

(e) "Bodily injury" or "property damage" arising out of:

    (i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

    **2. Exclusions**

    This insurance does not apply to:

    **Unmanned Aircraft**

    "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

    **a.** The use of another's advertising idea in your "advertisement"; or

    **b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

© Insurance Services Office, Inc., 2014
ARPX-045
RLI_002170

POLICY NUMBER: RKA0300001

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project Or Operation:** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

ARPX-046

RLI_002171

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

    © Insurance Services Office, Inc., 2016    **CG 21 44 04 17**

RLI_002172

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

RLI_002173

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003 APPX-049

RLI_002174

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

   © Insurance Services Office, Inc., 2014

APPX 050

RLI_002175

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

APPX-051

RLI_002176

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# GENERAL LIABILITY ENHANCEMENT

SCHEDULE OF COVERAGES ADDRESSED BY THIS ENDORSEMENT

This schedule is provided only as a convenience. It should not be assumed to provide a reference to every provision that can affect a question, claim or coverage. To determine the full scope of coverage and pertinent restrictions and exclusions, the policy, including endorsements, must be read it its entirety.

A. **Reasonable Force – Bodily Injury Or Property Damage**

B. **Aircraft, Auto or Watercraft**

C. **Damage To Premises Rented To You**

D. **Supplementary Payments**

E. **Newly Acquired Or Formed Organizations**

F. **Additional Insured – Owner, Manager or Lessor Of Premises Or Leased Equipment**

G. **Additional Insured – State or Political Subdivisions – Permits Related to Premises or Operations**

H. **Unnamed Partnership Or Joint Venture**

I. **General Aggregate Limit – Per Project or Per Location**

J. **Damage To Premises Rented To You Limit**

K. **Knowledge And Notice Of Occurrence Or Offense**

L. **Unintentional Omission**

M. **Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

N. **Amended Bodily Injury Definition**

O. **Amended Insured Contract Definition**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
**APPX 052**

RLI_002177

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**A. Reasonable Force – Bodily Injury Or Property Damage**

Paragraph **2.a. Exclusions; Expected Or Intended Injury**, is deleted and replaced by the following:

**a. Expected or Intended Injury**

"Bodily Injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**B. Aircraft, Auto or Watercraft**

1. Paragraph **2.g.(2) Exclusions; Aircraft, Auto Or Watercraft** is deleted and replaced by the following:

   **(2)** A watercraft you do not own that is:

   **(a)** Up to seventy-five (75) feet long; and

   **(b)** Not being used to carry persons or property for a charge;

2. The following is added to the exceptions to the exclusions:

   **(6)** Any non-owned aircraft chartered to you with a crew including a pilot.

3. The following is added to paragraph **2.g.**:

   Only as respects to the insurance provided by this provision, **Section II - Who Is An Insured** is amended to include as an insured any person who, with your express consent uses a watercraft owned by you.

   The insurance provided by this provision shall be excess over any valid and collectible other insurance available to the insured, whether primary, excess, contingent or on

any other basis, except for the insurance purchased specifically by you to apply in excess of the Limits of Insurance shown in the declarations for this Coverage Part.

**C. Damage To Premises Rented To You**

The last paragraph of **2. Exclusions** is deleted and replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by water, fire, explosion, lightning, or smoke resulting from fire to premises while rented to you, or temporarily occupied by you with permission by the owner. A separate limit of insurance applies to this coverage as described in **Section III – Limits Of Insurance.**

This provision does not apply if coverage for Damage To Premises Rented To You is excluded by another endorsement to this policy.

### SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**D. Supplementary Payments**

Paragraphs **1.b.** and **1.d.** are deleted and replaced with the following:

**b.** Up to $2,500 for the cost of bail bonds required because of accidents or traffic violations arising out of any vehicle to which Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off work.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 053

RGL 300 06 15

RLI_002178

## SECTION II – WHO IS AN INSURED

### E. Newly Acquired Or Formed Organizations

The following replaces Paragraph **3.**:

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the one hundred eightieth (180th) day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**d.** This provision does not apply to any organization for which coverage is excluded by another endorsement to this policy.

### F. Additional Insured – Owner, Manager Or Lessor Of Premises Or Leased Equipment

The following paragraph is added:

**4.** Any person or organization that you have agreed in a contract or agreement to include as an additional insured on this policy, but:

**a.** Only with respect to liability for "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense committed, after you have entered into that contract or agreement; and

**(1)** Only if the "bodily injury", "property damage" or "personal and advertising injury" is caused, in whole or in part, by you or any person or organization performing operations on your behalf,

and arises out of the ownership, maintenance or use of that part of any premises leased to you under that contract or agreement; or

**(2)** The "bodily injury", "property damage" or "personal and advertising injury" is caused, in whole or in part, by you or any person or organization performing operations on your behalf, and arises out of the maintenance, operation or use of equipment leased to you by such additional insured.

**b.** The insurance provided to such additional insured under this provision is subject to the following:

**(1)** The limits of insurance afforded to such additional insured shall be the limits which you agreed to provide in the contract or agreement, or the limits shown in the Declarations, whichever are less; and

**(2)** The insurance afforded to such additional insured does not apply:

**(a)** To any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense committed, after you cease to be a tenant in that premises;

**(b)** To any structural alterations, construction or demolition operations performed by or on behalf of such additional insured;

**(c)** To any premises for which coverage is excluded by another endorsement to this Coverage Part;

**(d)** To any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense committed, after the equipment lease expires; or

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002179

        **(e)** If the equipment is leased with an operator.

    **c.** This provision does not apply on any basis to any person or organization for which coverage as an additional insured specifically is added by another endorsement to this policy.

**G. Additional Insured – State Or Political Subdivisions – Permits Related To Premises Or Operations**

The following paragraphs are added:

    **5.** Any state or political subdivision that has issued a permit in connection with premises owned or occupied by, or rented or loaned to, you, but only with respect to "bodily injury", "property damage", "personal and advertising injury" arising out of the existence, ownership, use, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, elevators, street banners or decorations for which that state or political subdivision has issued such permit.

    **6.** Any state or political subdivision that has issued a permit, but only with respect to "bodily injury", "property damage", "personal and advertising injury" arising out of operations performed by you or on your behalf for which that state or political subdivision has issued such permit. However, no such state or political subdivision is an insured for:

        **a.** "Bodily injury", "property damage" "personal and advertising injury" arising out of operations performed for that state or political subdivision; or

        **b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**H. Unnamed Partnership Or Joint Venture**

    **1.** The last paragraph of **Section II – Who Is An Insured** is deleted and replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations. However this limitation does not apply to your liability with respect to your conduct of the business of any current or past partnership or joint venture:

    **a.** That is not shown as a Named Insured in the Declarations; and

    **b.** In which you are a member or partner but only if:

        **(1)** Each and every member or partner in that joint venture or partnership is not a construction contractor; and

        **(2)** The joint venture or partnership is not providing construction contracting services.

    **2.** This provision does not apply to any person or organization for which coverage is excluded by another endorsement to this policy.

    **3.** The insurance provided by this provision shall be excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis.

**SECTION III – LIMITS OF INSURANCE**

**I. General Aggregate Limit – Per Project Or Per Location**

Paragraph **3.** is deleted and replaced by the following:

    **3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and applies separately to each of your "projects" away from premises owned by or occupied by you or to each of your "locations" owned by or occupied by you.

"Projects" mean an area away from premises owned by or rented to you at which you are performing operations pursuant to a contract or agreement. For the purposes of determining the applicable

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RGL 300 06 15

RLI_002180

aggregate limit of insurance, each "project" at the same "location" shall be considered a single "project".

For the purposes of this provision, "location" means

**a.** Premises involving the same connecting lots;

**b.** Premises where connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; or

**c.** Premises where operations are performed in sections, stages or phases as a continuation of the same contract or agreement, even if the premises do not involve connecting lots.

### J.  Damage To Premises Rented To You Limit

Paragraph **6.** is deleted and replaced by the following:

**6.** Subject to paragraph **5.** above, whichever applies, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of fire, explosion, lightning, smoke resulting from such fire; or water while rented to you or temporarily occupied by you with permission of the owner.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### K.  Knowledge And Notice Of Occurrence Or Offense

Paragraph **2.a. Duties In The Event of Occurrence, Offense, Claim Or Suit** is deleted and replaced by the following**:**

**a.** Notice of an "occurrence" or of an offense which may result in a claim must be given as soon as practicable after knowledge of the "occurrence" or offense has been reported to you, one of your "executive officers" (if you are a corporation), one of your partners who is an individual (if you are a partnership), one of your managers (if you are a limited liability company), one of your trustees who is an individual (if you are a trust), or an "employee" (such as an insurance, loss control or risk

manager or administrator) designated by you to give such notice.

Knowledge by any other "employee" of an "occurrence" or offense does not imply that you also have such knowledge.

Notice of an "occurrence" or of an offense which may result in a claim will be deemed to be given as soon as practicable to us if it is given in good faith as soon as practicable to your workers' compensation, accident, or health insurer. This applies only if you subsequently give notice of the "occurrence" or offense to us as soon as practicable after you, one of your "executive officers" (if you are a corporation), one of your partners who is an individual (if you are a partnership), one of your managers (if you are a limited liability company), one of your trustees who is an individual (if you are a trust), or an "employee" (such as an insurance, loss control or risk manager or administrator) designated by you to give such notice discovers that the "occurrence" or offense may involve this policy.

To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

### L.  Unintentional Omission

The following is added to paragraph **6. Representations:**

However, the unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy shall not prejudice your rights under this insurance. This provision does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
Page 5 of 6

APPX 056

RLI_002181

**M. Waiver Of Transfer Of Rights Of Recovery Against Others To Us**

The following is added to paragraph **8. Transfer of Rights of Recovery Against Others to Us**:

> However, we waive any rights of recovery we may have against any person or organization because of payments we make for "bodily injury", "property damage", "personal injury and advertising injury" arising out of:
>
> **a.** Premises owned by you, temporarily occupied by you with permission of the owner, or leased or rented to you;
>
> **b.** Ongoing and completed operations performed by you, or on your behalf, under a contract or agreement with that person or organization;
>
> **c.** Your "work"; or
>
> **d.** "Your products".
>
> We waive these rights only where you have agreed to do so as part of a contract or agreement entered into by you before the "bodily injury" or "property damage" occurs or the "personal and advertising injury" offense is committed.

## SECTION V - DEFINITIONS

**N. Amended Bodily Injury Definition**

Paragraph **3.** is deleted and replaced by the following:

**3.** "Bodily injury" means injury to the body, sickness, disease, or death. "Bodily injury" also means mental injury, mental anguish, emotional distress, pain and suffering, or shock resulting from injury to the body, sickness, disease or death of any person.

**O. Amended Insured Contract Definition**

**1.** Paragraph **9.a.** is deleted and replaced by the following:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by water, fire, explosion, lightning, or smoke resulting from fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**2.** Paragraph **9.c.** is deleted and replaced by the following:

**c.** Any easement or license agreement

**3.** Subsection **9.f.(1)** is deleted.

**4.** The following is added to the end of paragraph **9.**:

> The insurance provided by the above definitions of "Insured Contract" shall be excess over any valid and collectible Railroad Protective Liability insurance available to an insured , whether primary, excess, contingent or on any other basis, except for the insurance purchased specifically by you to apply in excess of the Limits of Insurance shown in the declarations for this Coverage Part.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RGL 300 06 15

RLI_002182

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTROMAGNETIC RADIATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverages, Coverage A, Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverages, Coverage B, Personal and Advertising Injury Liability:**

This insurance does not apply to:

**Electromagnetic Radiation**

**(1)** "Bodily injury", "property damage", "personal and advertising injury" arising out of the actual, alleged, threatened or existing discharge, release, emission, or generation of "electromagnetic radiation" or exposure to "electromagnetic radiation" from electrical lines, equipment or any type of energy or electricity that is, or is alleged to be, detected in the air, space, atmosphere, ground or water; or

**(2)** The costs of administrative or regulatory proceedings, costs of abatement or mitigation or determination of "electromagnetic radiation" or exposure to "electromagnetic radiation"; or

**(3)** Any obligation to share damages with or repay someone else who must pay damages because of injury, damage or costs arising from **(1)** or **(2)** above; or

**(4)** Any liability, claim or suit arising out of any supervision, instructions, warnings, recommendations, or advice given or which should have been given in connection with **(1)** or **(2)** above.

As used herein, "electromagnetic radiation" includes, but is not limited to, magnetic energy, waves, fields or forces generated, produced, distributed, transmitted or maintained by charges, currents, frequencies, energy or forces of electricity.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 058

RLI_002183

COMMERCIAL GENERAL LIABILITY
CG 01 03 06 06

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

APPX-059

RLI_002184

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011
ARRX-060

RLI_002185

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

    **(1)** The lowest basement floor; or

    **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

    **(1)** Are licensed for use on public roads; or

    **(2)** Are operated principally away from the described premises.

    This paragraph does not apply to:

        **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

 © Insurance Services Office, Inc., 2011

APPX 061

RLI_002186

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 © Insurance Services Office, Inc., 2011

RLI_002187

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| Limit of Insurance: | | $ 90,000 |
|---|---|---|
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | | $ 50,000 |
| Amount of Loss Payable: | | $ 49,500 |
| | ($50,000 − $500) | |
| Debris Removal Expense: | | $ 10,000 |
| Debris Removal Expense Payable: | | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| Limit of Insurance: | | $ 90,000 |
|---|---|---|
| Amount of Deductible: | $ | 500 |
| Amount of Loss: | | $ 80,000 |
| Amount of Loss Payable: | | $ 79,500 |
| | ($80,000 − $500) | |
| Debris Removal Expense: | | $ 40,000 |
| Debris Removal Expense Payable | | |
| Basic Amount: | $ | 10,500 |
| Additional Amount: | $ | 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

 © Insurance Services Office, Inc., 2011

APRX-063

RLI_002188

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

　　　© Insurance Services Office, Inc., 2011　　　

ARRX-064

RLI_002189

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011

APPX065

RLI_002190

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

APPX 066

RLI_002191

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

 © Insurance Services Office, Inc., 2011

ARPX 067

RLI_002192

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

   (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

   (a) Will end 90 days after the business personal property has been placed in the storage unit;

   (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

© Insurance Services Office, Inc., 2011

ARRX-068

RLI_002193

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100

–   250

$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

 © Insurance Services Office, Inc., 2011

APPX069

RLI_002194

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

 © Insurance Services Office, Inc., 2011

APP 070

RLI_002195

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

  **a. Description Of Terms**

    **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

      **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

      **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

        **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

        **(ii)** Used by the building owner to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

  **b. Vacancy Provisions**

  If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

      **(a)** Vandalism;

      **(b)** Sprinkler leakage, unless you have protected the system against freezing;

      **(c)** Building glass breakage;

      **(d)** Water damage;

      **(e)** Theft; or

      **(f)** Attempted theft.

    **(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

 © Insurance Services Office, Inc., 2011

RLI_002196

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety-glazing material if required by law.

e. Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step (1): $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

© Insurance Services Office, Inc., 2011
APPX 072
RLI_002197

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:    The value of the property is:

| | |
|---|---|
| Building at Location 1: | $  75,000 |
| Building at Location 2: | $100,000 |
| Personal Property at Location 2: | $  75,000 |
| | $250,000 |

| | |
|---|---|
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| The Deductible is: | $    1,000 |

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $  30,000 |
| Personal Property at Location 2: | $  20,000 |
| | $  50,000 |

Step **(1):**  $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):**  $180,000 ÷ $225,000 = .80

Step **(3):**  $50,000 x .80 = $40,000

Step **(4):**  $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

 © Insurance Services Office, Inc., 2011

APPX 073

RLI_002198

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If:  The applicable Limit of Insurance is:  $ 100,000

The annual percentage increase is:  8%

The number of days since the beginning of the policy year (or last policy change) is:  146

The amount of increase is: $100,000 x .08 x 146 ÷ 365 =  $  3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

  © Insurance Services Office, Inc., 2011  ARRX-024

RLI_002199

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

 © Insurance Services Office, Inc., 2011 CP 00 10 10 12

RLI_002200

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

RLI_002201

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

 © Insurance Services Office, Inc., 2011

ARR%9CT

RLI_002202

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

 © Insurance Services Office, Inc., 2011

ARP%978

RLI_002203

(2) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

(3) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

 © Insurance Services Office, Inc., 2011

RLI_002204

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

© Insurance Services Office, Inc., 2011

RLI_002205

## 3. Loss Determination

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

### c. Resumption Of Operations

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

## 4. Loss Payment

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

## D. Additional Condition

### COINSURANCE

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

 © Insurance Services Office, Inc., 2011 CP 00 30 10 12

RLI_002206

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight – outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

   **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

   **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

   **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $150,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $400,000 x 50% = $200,000

   (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1. Maximum Period Of Indemnity**

      **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

ARR% 982

RLI_002207

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

  **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

  **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

  **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

  **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

    **(1)** The Limit of Insurance, multiplied by

    **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| Days 1–30: | $ 40,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| Days 1–30: | $ 30,000 |
|---|---|
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

  **a.** To activate this Optional Coverage:

    **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

      **(a)** During the 12 months prior to the date of the Work Sheet; and

      **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

    **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

      **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

      **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

  **b.** The Additional Condition, Coinsurance, is suspended until:

    **(1)** 12 months after the effective date of this Optional Coverage; or

    **(2)** The expiration date of this policy;

  whichever occurs first.

  **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

    **(1)** Within 12 months of the effective date of this Optional Coverage; or

    **(2)** When you request a change in your Business Income Limit of Insurance.

  **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

    **(1)** The Business Income Limit of Insurance; divided by

    **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $100,000 |
|---|---|---|
| | The Agreed Value is: | $200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

  **4. Extended Period Of Indemnity**

  Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

 © Insurance Services Office, Inc., 2011

RLI_002208

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

 © Insurance Services Office, Inc., 2011

RLI_002209

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the coverage territory.

2. The coverage territory is:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

APPX 085

RLI_002210

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1987    APPX 086    CP 00 90 07 88    RLI_002211

COMMERCIAL PROPERTY
CP 01 40 07 06

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006

APPX 087

RLI_002212

POLICY NUMBER: RKA0300001

**COMMERCIAL PROPERTY**
**CP 03 20 04 18**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MULTIPLE DEDUCTIBLE FORM

### (FIXED DOLLAR DEDUCTIBLES)

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

The Deductibles applicable to any one occurrence are shown below:

| Premises Number | Building Number | Deductible | Covered Cause(s) Of Loss* |
|---|---|---|---|
| 1 | 1 | $ 5000<br>$<br>$ | (2) |
|  |  | $<br>$<br>$ |  |
|  |  | $<br>$<br>$ |  |

*For each deductible listed in this Schedule, enter the number corresponding to the Covered Cause(s) of Loss to which that deductible applies (or enter the description):

(1) All Covered Causes of Loss

(2) All Covered Causes of Loss **except** Windstorm Or Hail

(3) All Covered Causes of Loss **except** Theft

(4) All Covered Causes of Loss **except** Windstorm Or Hail and Theft

(5) Windstorm Or Hail

(6) Theft

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

RLI_002213

The following is added to the **Deductible** section:

**A.** In the event that loss or damage occurs to Covered Property at more than one building location as a result of one occurrence, the largest applicable deductible for that Covered Cause of Loss, shown in the Schedule above or in the Declarations, will apply.

**B.** The terms of this endorsement do not apply to any Windstorm Or Hail Percentage Deductible provided elsewhere in this policy.

**C.** This policy does not cover Earthquake or Flood unless such causes of loss are added to the policy as covered causes of loss. If Earthquake and/or Flood are added to this policy as covered causes of loss, the terms of this endorsement do not apply to Earthquake or Flood and corresponding deductibles will be shown elsewhere in this policy and identified as such.

© Insurance Services Office, Inc., 2017

APPX089

**CP 03 20 04 18**

RLI_002214

POLICY NUMBER: RKA0300001

**COMMERCIAL PROPERTY**
**CP 04 11 09 17**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| | | |
| | | |
| | | |

| Describe Any "P-9": |
|---|
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1"** **Automatic Sprinkler System,** including related supervisory services.

ARRX-090

RLI_002215

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

    © Insurance Services Office, Inc., 2016    CP 04 11 09 17

APPX 091

RLI_002216

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

 © Insurance Services Office, Inc., 2016

APPX 092

RLI_002217

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

APPX-093

RLI_002218

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

ARRX-094
RLI_002219

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

(1) Applies whether or not an act occurs during your normal hours of operation;

(2) Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

(a) To the extent that coverage is provided under the Additional Coverage, Collapse; or

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

 © Insurance Services Office, Inc., 2016 **ARRX-095** CP 10 30 09 17

RLI_002220

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 © Insurance Services Office, Inc., 2016 ARPX-096

RLI_002221

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

© Insurance Services Office, Inc., 2016

ARRX-097

RLI_002222

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

© Insurance Services Office, Inc., 2016

APPX 098

RLI_002223

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

   **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

   **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

   **b.** The personal property which collapses is inside a building; and

   **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

   **1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

   **a.** A "specified cause of loss" other than fire or lightning; or

   **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

   This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

   **2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

   **3.** The coverage described under **E.2.** of this Limited Coverage is limited to \$15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of \$15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

 © Insurance Services Office, Inc., 2016 ARRX 099

RLI_002224

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

   **1. Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   **b.** Loss or damage must be caused by or result from one of the following causes of loss:

   **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

   **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

   **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   **c.** The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

   **2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

 © Insurance Services Office, Inc., 2016

ARR-X-100

RLI_002225

3. **Glass**

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

   This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

   1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

      a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

         (1) The cost of filling sinkholes; or

         (2) Sinking or collapse of land into man-made underground cavities.

      b. Falling objects does not include loss or damage to:

         (1) Personal property in the open; or

         (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

      c. Water damage means:

         (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

         (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

   But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

   To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 © Insurance Services Office, Inc., 2016 APPX-101

RLI_002226

POLICY NUMBER: RKA0300001

**COMMERCIAL PROPERTY**
**CP 12 18 10 12**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Location Number: 1 | Building Number: 1 | Applicable Clause (Enter C.1., C.2., C.3. or C.4.): C.2. |
|---|---|---|
| **Description Of Property:** | | |
| **Loss Payee Name:** Wells Fargo, N.A. and its successors and assigns | | |
| **Loss Payee Address:** BBOCS San Antonio Loans Ops     SAN ANTONIO, TX 78265 | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** (Enter C.1., C.2., C.3. or C.4.): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** (Enter C.1., C.2., C.3. or C.4.): |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

© Insurance Services Office, Inc., 2011     APPX 102

RLI_002227

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a

mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

(1) Warehouse receipts;

(2) A contract for deed;

(3) Bills of lading;

(4) Financing statements; or

(5) Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

(1) We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

(2) The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

(3) If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(a) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(b) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(c) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

(4) If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(a) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(b) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

© Insurance Services Office, Inc., 2011

RLI_002228

**3. Contract Of Sale Clause**

a.  The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

b.  For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

(1)  Adjust losses with you; and

(2)  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

c.  The following is added to the **Other Insurance** Condition: For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**4. Building Owner Loss Payable Clause**

a.  The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

b.  We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc., 2011

RLI_002229

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE
## (Including Electronic Circuitry Impairment)

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> CAUSES OF LOSS-- BASIC FORM
> CAUSES OF LOSS-- BROAD FORM
> CAUSES OF LOSS-- SPECIAL FORM

**A.** The following is added as an Additional Coverage to the Causes of Loss – Basic Form, Broad Form or Special Form.

**Additional Coverage – Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage – Equipment Breakdown as described and limited below. Without an "accident" or "electronic circuitry impairment", there is no Equipment Breakdown Coverage.

**1.** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**2.** Unless otherwise shown in an Equipment Breakdown Coverage Schedule, the following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However with respect to coverage **2.e.** Service Interruption below and any Dependent Properties coverage provided by this coverage part, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**a.** Expediting Expenses

**(1)** With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

**(a)** Make temporary repairs; and

**(b)** Expedite permanent repairs or permanent replacement.

**(2)** The most we will pay for loss or expense under this coverage is $100,000 unless otherwise shown in an Equipment Breakdown Coverage Schedule.

**b.** Hazardous Substances

**(1)** We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

**(2)** This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **2.c.(1)(b)** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

**(3)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in an Equipment Breakdown Coverage Schedule.

**c.** Spoilage

**(1)** We will pay:

**(a)** For physical damage to "perishable goods" due to spoilage;

**(b)** For physical damage to "perishable goods" due to

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 105**

RLI_002230

contamination from the release of refrigerant, including but not limited to ammonia;

(c) Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

(3) The most we will pay for loss, damage or expense under this coverage is $100,000 unless otherwise shown in an Equipment Breakdown Coverage Schedule.

d. Data Restoration

We will pay for your reasonable and necessary cost to research, replace and restore lost "data".

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in an Equipment Breakdown Coverage Schedule.

e. Service Interruption

(1) Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical

power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

(2) "Cloud computing services" must be provided by a professional provider with whom you have a contract.

(3) With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "data" stored in the equipment of a provider of "cloud computing services".

(4) Unless otherwise shown in an Equipment Breakdown Coverage Schedule, Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of interruption, and the applicable deductible will apply.

(5) The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense, Data Restoration or Spoilage, except that if a limit is shown in an Equipment Breakdown Coverage Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

f. Business Income and Extra Expense

(1) Any insurance provided under the coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in an Equipment Breakdown Coverage Schedule, then with respect to this endorsement only, the "period of

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 106
RPR 308 06 16
Page 2 of 10

RLI_002231

restoration" will begin immediately after the "accident" or "electronic circuitry impairment", and the deductible shown in an Equipment Breakdown Coverage Schedule will apply.

(2) The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in an Equipment Breakdown Coverage Schedule.

**g.** Off Premises Equipment Breakdown

(1) We will pay for physical damage to transportable "covered equipment" that, at the time of the "accident" or "electronic circuitry impairment", is not at a covered location. As respects this Off Premises Equipment Breakdown coverage only, the "accident" or "electronic circuitry impairment" may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance.

(2) We will also pay for your reasonable and necessary cost to research, replace and restore lost "data" contained within "covered equipment" as described under **(1)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

(3) The most we will pay for loss, damage or expense under this coverage including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, and Data Restoration as described in **(2)** above is the limit for Property Off-Premises coverage, shown in your policy, unless otherwise shown in an Equipment Breakdown Coverage Schedule.

**h.** Public Relations

(1) This coverage only applies if you have sustained an actual loss of Business Income covered under this endorsement.

(2) We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

(a) The media;

(b) The public; or

(c) Your customers, clients or members.

(3) Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

(4) The most we will pay for loss or expense under this coverage is $5,000 unless otherwise shown in an Equipment Breakdown Coverage Schedule.

**3. EXCLUSIONS**

All exclusions in the applicable Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage – Equipment Breakdown.

**a.** The following exclusions are modified:

(1) If the Causes of Loss - Basic Form or Causes of Loss - Broad Form applies, the following is added to Exclusion **B.2.**:

Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. But if an "accident" or "electronic circuitry impairment" results, we will pay for the resulting loss, damage or expense caused by that "accident" or "electronic circuitry impairment".

(2) If the Causes of Loss - Special Form applies, as respects this endorsement only, the last paragraph of Exclusion **B.2.d.** is deleted and replaced with the following:

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002232

in an "accident" or "electronic circuitry impairment", we will pay for the loss, damage or expense caused by that "accident" or "electronic circuitry impairment".

**b.** The following exclusions are added:

(1) We will not pay for loss, damage or expense caused by or resulting from a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

(2) Coverage under this endorsement does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

(a) Fire (including fire resulting from an "accident" or "electronic circuitry impairment"), or water or other means used to extinguish a fire;

(b) Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

(c) Any other explosion, except as specifically covered under this endorsement;

(d) Vandalism;

(e) Lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

(f) Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

(g) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However if electrical "covered equipment" requires drying out

because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.

(h) Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

(3) With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

(a) Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

(b) Any increase in loss resulting from an agreement between you and your customer or supplier.

(4) We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that such spoilage is covered under Spoilage coverage.

(5) We will not pay under this endorsement for any loss or damage to animals.

**c.** Exclusions **b.(2)(e)** and **b.(2)(f)** above shall not apply if:

(1) The excluded cause of loss occurs away from any covered location and

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002233

causes an electrical surge or other electrical disturbance;

**(2)** Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

**(3)** The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**d.** Any cause of loss set forth in exclusion **b.(2)(f)** above that is not a Covered Cause of Loss in this coverage part shall be excluded only as respects Service Interruption coverage.

**4. DEFINITIONS**

The following definitions are added with respect to this endorsement only:

**a.** "Accident"

**(1)** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

**(a)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**(b)** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

**(c)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**(d)** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

**(e)** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**(2)** None of the following is an "accident":

**(a)** Defect, programming error, programming limitation, computer virus, malicious code, loss of "data", loss of access, loss of use, loss of functionality or any other condition within or involving "data" or "media" of any kind; or

**(b)** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

**b.** "Boilers and vessels" means:

**(1)** Any boiler, including attached to steam, condensate and feedwater piping; and

**(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement but may appear in an Equipment Breakdown Coverage Schedule.

**c.** "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), SaaS (software as a service) and NaaS (network as a service). This includes business models known as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

**d.** "Covered equipment"

    **(1)** "Covered equipment" means, unless otherwise specified in an Equipment Breakdown Coverage Schedule, Covered Property:

        **(a)** That generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

        **(b)** Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

    "Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

    **(2)** None of the following is "covered equipment":

        **(a)** Structure, foundation, cabinet, compartment;

        **(b)** Insulating or refractory material;

        **(c)** Sewer piping, underground vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

        **(d)** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

        **(e)** "Vehicle" or any equipment mounted on a "vehicle";

        **(f)** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

        **(g)** Dragline, excavation or construction equipment; or

        **(h)** Equipment manufactured by you for sale.

**e.** "Data" means information or instructions stored in digital code capable of being processed by machinery.

**f.** "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

**g.** "Electronic circuitry impairment"

    **(1)** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **(2)**, **(3)** and **(4)** below.

    **(2)** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment".

    **(3)** The "covered equipment" must be owned or leased by you, or operated under your control.

    **(4)** None of the following is an "electronic circuitry impairment":

        **(a)** Any condition that can be reasonably remedied by:

            **(i)** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

            **(ii)** Rebooting, reloading or updating software or firmware; or

            **(iii)** Providing necessary power or supply.

        **(b)** Any condition caused by or related to:

            **(i)** Incompatibility of the "covered equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

            **(ii)** Insufficient size, capability or capacity of the "covered equipment".

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 110

RLI_002235

(c) Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

h. "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

i. "Media" means material on which "data" is recorded, such as solid state drives, magnetic tapes, hard disks, optical disks, flash drives, or floppy disks.

j. "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments", all will be considered "one equipment breakdown". All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown".

k. "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

l. "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle".

B. The Building and Personal Property Coverage Form is modified as follows.

The definitions stated above also apply to section B. of this endorsement.

1. **DEDUCTIBLE**

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in an Equipment Breakdown Coverage Schedule. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision **D. DEDUCTIBLE** is deleted and replaced with the following:

a. Deductibles for Each Coverage

(1) Unless the Equipment Breakdown Coverage Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one equipment breakdown".

(2) We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Equipment Breakdown Coverage Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

(3) If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one equipment breakdown," only the highest deductible for each coverage will apply.

b. Direct and Indirect Coverages

(1) Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Equipment Breakdown Coverage Schedule.

(2) Unless more specifically indicated in the Equipment Breakdown Coverage Schedule:

(a) Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and

(b) Direct Coverages Deductibles apply to all remaining loss,

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 111

RLI_002236

damage or expense covered by this endorsement.

**c.** Application of Deductibles

**(1)** Dollar Deductibles

We will not pay for loss, damage or expense resulting from any "one equipment breakdown" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Equipment Breakdown Coverage Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.

**(2)** Time Deductible

If a time deductible is shown in the Equipment Breakdown Coverage Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident" or "electronic circuitry impairment". If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

**(3)** Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" or "electronic circuitry impairment" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or "electronic circuitry impairment" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in    the

valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration".

The number indicated in the Equipment Breakdown Coverage Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

**(4)** Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**2. CONDITIONS**

**a.** The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form, the Commercial Property Conditions and the Common Policy Conditions.

**(1)** Suspension

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

**(a)** Your last known address; or

**(b)** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 112

RLI_002237

equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**(2)** Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(3)** Coinsurance

If a coinsurance percentage is shown in the Equipment Breakdown Coverage Schedule for specified coverages, the following condition applies:

We will not pay the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**b.** As respects this endorsement only, the Valuation Condition in the Building and Personal Property Coverage Form is deleted and replaced with the following:

**Valuation**

We will determine the value of Covered Property as follows:

**(1)** Except as specified otherwise, our payment for damaged Covered Property will be the smallest of:

**(a)** The cost to repair the damaged property;

**(b)** The cost to replace the damaged property on the same site; or

**(c)** The amount you actually spend that is necessary to repair or replace the damaged property.

**(2)** The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

**(3)** Except as described in **(4)** below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

**(4)** Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced.

However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not increase any of the applicable limits and does not apply to the replacement of component parts or to any property to which Actual Cash Value applies.

**(5)** The following property will be valued on an Actual Cash Value basis:

**(a)** Any property that does not currently serve a useful or necessary function for you;

**(b)** Any Covered Property that you do not repair or replace within 24 months after the date of the "accident" or "electronic circuitry impairment"; and

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 113

RLI_002238

**(c)** Any Covered Property for which Actual Cash Value coverage is specified in an Equipment Breakdown Coverage Schedule.

Actual Cash Value includes deductions for depreciation.

**(6)** If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

**(a)** The property was manufactured by you;

**(b)** The sales price of the property is less than the replacement cost of the property; or

**(c)** You are unable to replace the property before its anticipated sale.

**(7)** Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

**(a)** For mass-produced and commercially available software, at the replacement cost.

**(b)** For all other "data" and "media", at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

The most we will pay for loss, damage or expense under this endorsement arising from any "one equipment breakdown" is the applicable Limit of Insurance in the Declarations unless otherwise shown in an Equipment Breakdown Coverage Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 114

RLI_002239

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# PREFERRED PROPERTY ENHANCEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS – SPECIAL FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM - ACTUAL LOSS SUSTAINED

The coverage enhancements described in this endorsement either modify or are in addition to the coverage granted under the forms listed above. The limits offered replace, modify, or increase the limits provided by such forms unless otherwise stated in this Enhancement Endorsement. All terms and conditions of this policy not specifically modified by this endorsement shall remain unchanged.

If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part, or if more than one coverage under this endorsement applies, in the event of loss or damage, the most we will pay is the largest of the limits that would be applicable. Refer to each coverage within this endorsement for the application of coverage.

Refer to **SECTION E – DEFINITIONS** of this endorsement for additional words or phrases which appear in quotation marks as they have special meanings.

| SECTION A – SCHEDULE OF INSURANCE | | LIMIT OF INSURANCE | PAGE |
|---|---|---|---|
| 1. | Amended Limitations | Included | 3 |
| 2. | Business Personal Property Temporarily in Portable Storage Units | $10,000 | 3 |
| 3. | Civil Authority | 3 mile/72 hrs | 3 |
| 4. | Computer Fraud | $5,000 | 4 |
| 5. | Contract Penalty Clause | $10,000 | 4 |
| 6. | Debris Removal | $50,000 | 4 |
| 7. | Deferred payments | $10,000 | 5 |
| 8. | Electronic Data | $10,000 | 5 |
| | Electronic Vandalism | $2,500 | 5 |
| 9. | Employee Dishonesty | N/A | 6 |
| 10. | ERISA | N/A | 7 |
| 11. | Employee Tools (Including Off Premises Tools) | N/A | 8 |
| 12. | Expediting Expense | $10,000 | 8 |
| 13. | Forgery or Alteration | $25,000 | 9 |
| 14. | Foundations & Underground Pipes | $50,000 | 9 |
| 15. | Fungus, Rot, Bacteria | $25,000 | 9 |
| 16. | Increased Cost of Construction | $50,000 | 10 |
| 17. | Installation Coverage | $5,000 | 10 |

- Continued -

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX 115

RLI_002240

| **SECTION A – SCHEDULE OF INSURANCE (Continued)** | **LIMIT OF INSURANCE** | **PAGE** |
|---|---|---|
| 18. Interruption of Computer Operations | | 11 |
|     On Premises Aggregate | $25,000 | 11 |
|     Off Premises Per Occurrence | $5,000 | 11 |
|     Off Premises Aggregate | $10,000 | 11 |
|     Electronic Vandalism | $2,500 | 11 |
| 19. Limited Building Coverage - Tenant Obligation | $10,000 | 11 |
| 20. Loss Adjustment Expense | $2,500 | 12 |
| 21. Marring or scratching | Included | 12 |
| 22. Money & Securities (Inside / Outside) | $10,000 / $5,000 | 12 |
| 23. Money Orders & Counterfeit Money | $10,000 | 13 |
| 24. Newly Acquired Property - Building | $500,000 | 13 |
|     Newly Acquired Property – Business Personal Property | $250,000 | 13 |
| 25. Newly Acquired Locations – Business Income & Extra Expense | $250,000 | 13 |
| 26. Outdoor Signs | $50,000 | 13 |
| 27. Pairs / Sets (Valuation) | Included | 14 |
| 28. Personal Effects / Personal Property of Others | $5,000 | 14 |
| 29. Pollutant Cleanup / Removal | $25,000 | 14 |
| 30. Preservation of Property | 60 Days | 14 |
| 31. Property Definitions | 1,000 ft | 14 |
| 32. Property in Transit | N/A | 14 |
| 33. Property Off Premises | $50,000 | 15 |
| 34. Reward Payment | $10,000 | 15 |
| 35. Salespersons Samples | $10,000 | 15 |
| 36. Soft Cost Coverage | $5,000 | 16 |
| 37. Temporary Relocation of Property | $25,000 | 16 |
| 38. Tenant Glass | $5,000 | 16 |
| 39. Transit Business Income & Extra Expense | N/A | 17 |
| 40. Unauthorized Business Card Use | $2,500 | 17 |
| 41. Unintentional Omission | $100,000 | 17 |
| 42. Utility Services - Direct Damage | N/A | 17 |
| 43. Utility Services - Time Element | N/A | 18 |
| 44. Water Back up & Sump Overflow, Including Seepage & Underground Water | $25,000 | 18 |
| 45. Worldwide Property Off Premises | N/A | 19 |

## SECTION B - DEDUCTIBLES

We will not pay for covered loss or damage in any one "occurrence" unless the amount of loss or damage exceeds the deductible amount shown in the Declarations of this Policy. We will then pay the amount of loss or damage in excess of the Deductible up to the Limit of Insurance for all applicable coverages listed this endorsement under **SECTION A – COVERAGES.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 116

RLI_002241

## SECTION C – SCHEDULED COVERAGES

### 1. Amended Limitations

Paragraph **C.3.** of the Cause of Loss – Special Form is replaced by the following:

#### C. Limitations

**3.** The special limit shown for each category, **a.** through **d.** is the total limit for loss of or damage to all property in that category. The special limit applies to any one "occurrence" of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

**a.** $5,000 for furs, fur garments and garments trimmed with fur.

**b.** $5,000 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $5,000 for patterns dies, molds and forms.

**d.** $1,000 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

All other provisions of **C. Limitations** of Causes of Loss - Special Form remain unchanged.

### 2. Business Personal Property Temporarily In Portable Storage Units

Section **A. Coverage, 5. Coverage Extensions,** Paragraph **g.(3)** and **g.(4)** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form are replaced by the following:

#### g. Business Personal Property Temporarily in Portable Storage Units

**(3)** Coverage under this Extension:

**(a)** Will end 120 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 120 consecutive days, even if the business personal property has been stored there for 120 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total loss of all loss or damage to business personal property is $10,000 regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

### 3. Civil Authority

Section **A. Coverage, 5. Additional Coverages,** Paragraph **a.** of the Business Income (And Extra Expense) Coverage Form and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained is replaced by the following:

#### a. Civil Authority

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than three miles from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have un-

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002242

impeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

### 4. Computer Fraud

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building and Personal Property Coverage Form:

**Computer Fraud**

**a.** We will pay for loss of or damage to Business Personal Property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the building at the described premises or "banking premises".

**b.** **Limitations** paragraph **C.1.f.** in the Cause of Loss - Special Form does not apply to this Extension.

**c.** The most we will pay under this Extension in any one "occurrence" is $5,000, regardless of the number of premises involved.

### 5. Contract Penalties

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Contract Penalties**

**a.** We will pay for contractual penalties you are required to pay due to your failure to provide your product or service according to contract terms because of direct physical loss or damage by a Covered Cause of Loss to Covered Property.

**b.** The most we will pay for all penalties in any one "occurrence" is $10,000 for the sum of all covered contract penalties arising out of all Covered Causes of Loss occurring during each separate twelve (12) month period of this policy beginning with the effective date of this endorsement.

**c.** The amount payable under this Additional Coverage is additional insurance.

### 6. Debris Removal

Section **A. Coverage, 4. Additional Coverages, a. Debris Removal** of the Building and Personal Property Coverage Form is amended as follows:

**a.** Paragraphs **(3)** and **(4)** are replaced by the following:

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $10,000 at each location.

**(4)** We will pay up to an additional $50,000 for debris removal expense, for each location, in any one "occurrence" of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Cov-

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002243

ered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $50,000.

**b.** Paragraph **(5)** is deleted.

### 7. Deferred Payments

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form.

**Deferred Payments**

**a.** We will pay for your interest in lost or damaged Personal Property sold by you under a conditional sale or trust agreement or any installment or deferred payment plan after delivery to buyers. The loss or damage must be caused by a Covered Cause of Loss.

**b.** When a total loss to that property occurs, deferred payments are valued on the amount shown on your books as due from the buyer.

When a partial loss to that property occurs and the buyer refuses to continue payment, forcing you to repossess, deferred payments are valued as follows:

**(1)** If the realized or appraised value of the repossessed property is greater than or equal to the amount shown on your books as due from the buyer, we will make no payment; but

**(2)** If the realized value of the repossessed property is less than the amount shown on your books as due from the buyer, we will pay the difference.

**c.** When loss occurs and the buyer continues to pay you, there will be no loss payment.

**d.** The most we will pay under this Additional Coverage for loss or damage in any one "occurrence" at a described premises is $10,000.

### 8. Electronic Data

Section **A. Coverage, 4. Additional Coverages** Paragraph **f.** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is amended as follows:

**f.    Electronic Data**

Paragraph **(3)(d)** is replaced by:

**(d)** The Covered Causes of Loss include electronic vandalism, meaning a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from:

**i.** Manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system; or

**ii.** Unexplained or indeterminable failure, malfunction, or slowdown of a computer system including electronic data, or the inability to access or properly manipulate electronic data.

Paragraph **(4)** is replaced by:

**(4)** The most we will pay under this Additional Coverage is

**(a)** $10,000 or the limit shown in Section A – Schedule of Insurance for Electronic Data; and

**(b)** $2,500 or the limit shown in Section A – Schedule of Insurance for loss of or damage to Electronic Data caused by or resulting from Electronic Vandalism as described in Paragraph **(3)(d)** above.

for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of prem-

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002244

ises, locations, or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**9.  Employee Dishonesty**

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Employee Dishonesty**

**a.**  We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)**  Cause you to sustain loss or damage; and also

**(2)**  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)**  Any employee; or

**(b)**  Any other person or organization.

**b.**  We will not pay for loss or damage:

**(1)**  Resulting from any dishonest or criminal act that you or any of your partners or "members" commit whether acting alone or in collusion with other persons.

**(2)**  Resulting from any dishonest act committed by any of your employees (except as provided in Paragraph a. above), "managers" or directors:

**(a)**  Whether acting alone or in collusion with other persons; or

**(b)**  While performing services for you or otherwise.

**(3)**  The only proof of which as to its existence or amount is:

**(a)**  An inventory computation; or

**(b)**  A profit and loss computation.

**(4)**  Caused by an employee if the employee had also committed theft or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the employee, learned of that theft or dishonest act prior to the policy period shown in the Declarations.

**c.**  The most we will pay for loss or damage in any one occurrence is the Limit Of Insurance for Employee Dishonesty shown in Section A – Schedule of Insurance.

**d.**  All loss or damage:

**(1)**  Caused by one or more persons; or

**(2)**  Involving a single act or series of acts;

is considered one occurrence.

**e.**  If any loss is covered:

**(1)**  Partly by this insurance; and

**(2)**  Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period, even if renewed or replaced in its present form by a new policy.

**f.**  This Additional Coverage is cancelled as to any employee immediately upon discovery by:

**(1)**  You; or

**(2)**  Any of your partners, "members", "managers", officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 120**

RLI_002245

**g.** We will pay only for covered loss or damage sustained during the policy period and discovered no later than one year from the end of the policy period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the policy period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Additional Coverage, provided:

    **(1)** This Additional Coverage became effective at the time of cancellation or termination of the prior insurance; and

    **(2)** The loss or damage would have been covered by this Additional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Additional Coverage and is limited to the lesser of the amount recoverable under:

    **(1)** This Additional Coverage as of its effective date; or

    **(2)** The prior insurance had it remained in effect.

**j.** With respect to this Employee Dishonesty Additional Coverage, employee means:

    **(1)** Any natural person:

        **(a)** While in your service or for 30 days after termination of service;

        **(b)** Who you compensate directly by salary, wages or commissions; and

        **(c)** Who you have the right to direct and control while performing services for you;

    **(2)** Any natural person who is furnished temporarily to you:

        **(a)** To substitute for a permanent employee, as defined in Paragraph **(1)** above, who is on leave; or

        **(b)** To meet seasonal or short-term workload conditions;

    **(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **(2)** above;

    **(4)** Any natural person who is a former employee, director, partner, member, manager, representative or trustee retained as a consultant while performing services for you; or

    **(5)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside any building you occupy in conducting your business.

But employee does not mean:

    **(1)** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

    **(2)** Any "manager, director or trustee except while performing acts coming within the usual duties of an employee.

**10. ERISA**

The following is added to **Section A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**ERISA**

Your Employee welfare or pension benefit plan(s) that are subject to the Employee Retirement Income Security Act of 1974 (hereinafter called Plan) are included as insureds under the Employee Dishonesty coverage as provided herein.

In compliance with certain provisions of the Employee Retirement Income Security Act of 1974 (ERISA):

**a.** "Employee" also includes any natural person who is;

    **(1)** A trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor of any Plan insured under this endorsement, and

    **(2)** Your director or trustee while that person is handling "money", "securi-

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002246

ties", or "other property" of any Plan insured under this endorsement.

**b.** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for ERISA Employee Dishonesty that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**c.** If the first Named Insured in the Declarations is an entity other than a Plan, any payment we make to that insured for loss sustained by a Plan will be held by that insured for the use and benefit of the Plan sustaining the loss.

**d.** If two or more Plans are insured under this Additional Coverage, any payment we make for loss;

   **(1)** Sustained by two or more Plans; or

   **(2)** Of commingled "funds" or "other property" of two or more Plans;

   that arises out of one "occurrence" is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

**e.** The Deductible does not apply to this Additional Coverage.

**f.** Any of your Plan(s) that meet the requirements of ERISA is an insured under this endorsement.

**g.** The most we will pay for loss in any one "occurrence" is the limit shown in Section A – Schedule of Insurance.

**11. Employee Tools Including Off Premises**

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Employee Tools Including Off Premises**

**a.** We will pay for direct physical loss of or damage to tools of your "employees" damaged by a Covered Cause of Loss while such tools are:

   **(1)** At an insured location,

   **(2)** On a client's premises,

   **(3)** At your job sites,

   **(4)** In transit between the job site and an insured location,

   **(5)** In transit between the job site and living quarters of you or your "employee".

**b.** The most we will pay for loss or damage under this Coverage Extension is the limit shown in Section A – Schedule of Insurance per "occurrence". However, in no event will we pay more than $5,000 for any one tool. Our payment for loss of or damage to tools owned by "employees" will only be for the account of the owner of the tools.

**c.** We will not pay for loss of or damage to any property covered under this Extension caused by or resulting from theft from any unattended vehicle, unless, at the time of the theft, the vehicle's windows, doors and compartments were closed and locked, and there are visible signs that the theft was a result of forced entry. We will not pay for theft of tools from an unlocked portion of the vehicle.

**d.** With respect to this Extension, the following is added to Section **E. Loss Conditions, 7. Valuation:**

   The value of the tools will be the least of the following amounts:

   **(1)** The amount of replacing the lost or damaged tools with property substantially identical; or

   **(2)** The cost of reasonably restoring the property to its condition immediately before the loss; or

   **(3)** The actual cash value of the tools.

**e.** The Coinsurance Additional Condition does not apply to this coverage.

**12. Expediting Expense**

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Expediting Expense:**

**a.** When a Covered Cause of Loss occurs to Covered Property, we will pay for the reasonable and necessary additional expenses you incur to:

   **(1)** Make temporary repairs;

   **(2)** Expedite permanent repair or replacement of damaged property; or

   **(3)** Provide training on replacement machines or equipment.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002247

**b.** The most we will pay for loss under this Extension in any one "occurrence" is $10,000.

**c.** The amount payable under this Extension is additional insurance.

## 13. Forgery or Alteration

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

### Forgery or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, credit cards, debit cards, charge cards, drafts, promissory notes, or similar written promise, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been made or drawn.

**b.** If you are sued for refusing to pay any instrument covered in paragraph **a.** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense.

**c.** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures

**d.** For the purpose of this coverage, check includes a substitute check as defined in the Check Clearing for the 21st Century Act, and will be treated the same as the original it replaced.

**e.** The most we will pay for any loss in any one occurrence including legal expenses, under this Additional Coverage is the limit shown in Section A – Schedule of Insurance.

**f.** An occurrence, as used in this Additional Coverage, means:

(1) An individual act or event;

(2) The combined total of all separate acts or events whether or not related; or

(3) A series of acts or events whether or not they are related.

committed by a person acting alone or in collusion with other persons, or not committed by any person, which occurs during the policy period shown in the Declarations, before such policy period, or both.

## 14. Foundations & Underground Pipes

**a.** The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

### Foundations & Underground Pipes

(1) You may extend the insurance that applies to Building to apply to loss or damage to:

(a) Foundations of buildings, structures, machinery or boilers if their foundations are below:

i. The lowest basement floor; or

ii. The surface of the ground, if there is no basement;

(b) Underground pipes, flues and drains; and

(c) The cost of excavating, grading, backfilling or filling

only when such loss or damage is caused by a Covered Cause of Loss at an insured location, and does not include any coverage for "Flood" or Earthquake even when these Causes of Loss are added to this policy by endorsement.

(2) The most we will pay for loss under this Additional Coverage is $50,000 or the limit shown in Section A – Schedule of Insurance.

**b.** Section **A. Coverage, 2. Property Not Covered**, Paragraphs **f., g.,** and **m.** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form do not apply to this Additional Coverage.

## 15. Limited Coverage for "Fungus", Wet Rot, Dry Rot and Bacteria

Paragraph **E.3.** of the Cause of Loss - Special Form is replaced by the following:

**3.** If a limit is shown in Section A – Schedule of Insurance, then the coverage described under **E.2.** of this Limited Coverage is limited to $25,000. Regardless of the number of claims, this limit is the

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002248

most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and "Flood" which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $25,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

### 16. Increased Cost of Construction

**a.** Coverage is extended under Section **A.4. Additional Coverages,** Paragraph **e. Increased Cost of Construction**, of the Building And Personal Property Coverage Form or Condominium Association Coverage Form to include:

**(1)** The loss in value of the undamaged portion of the building as a consequence of enforcement of any ordinance or law that requires demolition of undamaged parts of the same building.

**(2)** The cost incurred to demolish and clear the site of undamaged parts of the same building as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

**(3)** Tenants' Improvements and Betterments as described in Paragraph **A.1.b.(6)** if:

**(a)** You are a tenant; and

**(b)** A limit of Insurance is shown in the Declarations for Business Personal Property at the described premises.

**b.** The coverages provided by this Extension apply only if the building sustains direct physical damage due to a Covered Cause of Loss under this policy and such damage results in enforcement of the ordinance or law.

**c.** Section **A.4. Additional Coverages,** Paragraph **e. Increased Cost of Construction**, subparagraph **(6)** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is replaced by the following:

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form is $50,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $50,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

### 17. Installation Coverage

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Installation Coverage**

**a.** We will pay for loss or damage to the following property:

**(1)** Materials, supplies, equipment, machinery, and fixtures owned by you or in your care, custody or control, and which are to be installed by you or at your direction; and

**(2)** Temporary structures built or assembled by you on site, including cribbing, scaffolding and construction forms.

**b.** This property is covered while:

**(1)** At any job site you do not own, lease or operate;

**(2)** Awaiting and during installation, or awaiting acceptance by the purchaser;

**(3)** At a "temporary storage location".

**c.** The most we will pay for loss or damage to covered property in any one "occurrence" is $5,000 or the limit shown in Section A – Schedule of Insurance.

This is the most we will pay regardless of:

**(1)** The number of job sites you do not own, lease or operate; or

**(2)** "Temporary storage locations".

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 124**

RLI_002249

**d.** Coverage provided will end when one of the following first occurs:

**(1)** This policy expires or is cancelled;

**(2)** The covered property is accepted by the purchaser;

**(3)** Your interest in the covered property ceases;

**(4)** You abandon the project to be performed by you for the purchaser, with no intention to complete it; or

**(5)** 90 days after the project to be performed by you for the purchaser is completed, unless we specify a different date in writing.

**e.** This Additional Coverage does not apply to:

**(1)** An existing building or structure to which an addition, alteration improvement or repair is being made;

**(2)** Property stored at a permanent warehouse or storage yard that you own;

**(3)** A plan, blueprint, design or specification;

**(4)** The weight of a load when it exceeds the designed capacity of any property covered under this Additional Coverage to lift, move or support the load from any position.

**18. Interruption of Computer Operations**

Section **5. Additional Coverages,** Paragraph **d. Interruption of Computer Operations** of the Business Income (And Extra Expense) Coverage Form and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained is amended as follows:

Paragraph **(2)** is replaced by the following:

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" cause by an interruption in computer operations due to destruction or corruption of electronic data at or away from the described premises due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation - Interruption of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

Paragraph **(3)(d)** is replaced by the following:

**(d)** The Covered Causes of Loss include electronic vandalism, meaning a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to:

**i.** Manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system; or

**ii.** Unexplained or indeterminable failure, malfunction, or slowdown of a computer system including electronic data, or the inability to access or properly manipulate electronic data.

Paragraph **(4)** is replaced by the following:

**(4)** Unless a higher limit is shown in Section A – Schedule of Insurance, the most we will pay under this Additional Coverage is:

**(a)** $25,000 for the sum of all covered interruptions arising out of all Covered Causes of Loss occurring at the described premises during each separate twelve (12) month period of this policy beginning with the effective date of this policy.

**(b)** $5,000 in any one "occurrence" for a covered interruption arising out of a Covered Cause of Loss occurring away from the described premises. This limit applies regardless of the number of premises involved.

**(c)** $10,000 for the sum of all covered interruptions arising out of all Covered Cause of Loss occurring away from the described premises during each separate twelve (12) month period of this policy beginning with the effective date of this policy.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002250

**(d)** $2,500 for a covered interruption arising out of Electronic Vandalism as described in Paragraph **(3)(d)** above.

## 19. Limited Building Coverage – Tenant Obligation

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

### Limited Building Coverage – Tenant Obligation

**a.** We will pay for direct physical loss of or damage to:

  **(1)** That part of a building you occupy as a tenant;

  **(2)** Non-owned equipment within the building used to maintain or service the building;

caused by or resulting from theft, attempted theft, or a Covered Cause of Loss.

**b.** This Extension applies only to a premise where you are a tenant and to this premises and non-owned equipment only if you have a contractual obligation to insure.

**c.** This Extension does not apply to any otherwise covered:

  **(1)** Building glass; or

  **(2)** Tenants Improvements and Betterments as described in Paragraph **A.1.b.(6).**

**d.** We will pay nothing if others pay for the repairs or replacement.

**e.** The most we will pay under this Extension in any one occurrence is $10,000 at each described premises.

## 20. Loss Adjustment Expense

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

### Loss Adjustment Expense

**a.** We will pay for all reasonable expenses you incur at our request to assist us in:

  **(1)** The investigation of a claim;

  **(2)** The determination of the amount of loss, such as taking inventory.

**b.** We will not pay for:

  **(1)** Expenses to prove that loss or damage is covered;

  **(2)** Expenses incurred under Section **E. Loss Conditions**, item **2. Appraisal** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form.

  **(3)** Expenses incurred for examinations under oath; or

  **(4)** Expenses or percentages billed by and payable to attorneys or independent or public adjusters.

**c.** The most we will pay for this Additional Coverage is $2,500 in any one "occurrence" regardless of the number of premises involved.

## 21. Marring or Scratching

**a.** The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

### Marring or Scratching

  **(1)** You may extend the insurance that applies to Business Personal Property to apply to damage caused directly by sudden and accidental marring and scratching of:

    **(a)** Your "stock";

    **(b)** Your printing plates; or

    **(c)** Property of others that is in your care, custody or control.

  **(2)** This Extension does not apply to:

    **(a)** Property at other than the described premises; or

    **(b)** Property in transit.

  **(3)** Payment under this Extension is included within the Limit of Insurance applicable to your Business Personal Property.

**b.** **Exclusion B.2.d.(7)(c)** of the Causes of Loss – Special Form does not apply to this Extension.

## 22. Money & Securities

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 126**

RLI_002251

**Money & Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any "employee" having use and custody of the property, at the described premises, or in transit between any of these places.

**b.** We will pay only for loss of "money" and "securities" resulting directly from:

   **(1)** Theft, meaning any act of stealing;

   **(2)** Disappearance; or

   **(3)** Destruction.

**c.** We will not pay for loss:

   **(1)** Resulting from accounting or arithmetic errors or omissions;

   **(2)** Resulting from giving or surrendering of property in any exchange or purchase; or

   **(3)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**d.** The most we will pay for loss in any one "occurrence" is the limit shown in Section A – Schedule of Insurance:

   **(1)** For "money" and "securities" while:

     **(a)** In or on the described premises; or

     **(b)** Within a bank or savings institution; and

   **(2)** For "money" and "securities" while anywhere else described in Paragraph **22.a.** above.

**e.** All loss caused by one or more persons and involving a single act or series of related acts is considered one "occurrence".

**f.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**g.** The **Additional Coverage Extension, F.1. Property in Transit** in the Cause of Loss - Special Form does not apply to this Additional Coverage.

**h.** Any amount payable under this Additional Coverage is additional insurance.

**23. Money Orders & Counterfeit Money**

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Money Orders & Counterfeit Money**

**a.** We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

   **(1)** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

   **(2)** "Counterfeit money" that is acquired during the regular course of business.

**b.** The most we will pay for loss in any one occurrence is the limit shown in Section A – Schedule of Insurance.

**c.** An occurrence, as used in this Additional Coverage, means:

   **(1)** An individual act or event;

   **(2)** The combined total of all separate acts or events whether or not related; or

   **(3)** A series of acts or events whether or not they are related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, which occurs during the policy period shown in the Declarations, before such policy period, or both.

Any amount payable under this Additional Coverage is additional insurance.

**24. Newly Acquired or Constructed Property**

The following Coverage Extensions under Section **A.5.a. Newly Acquired Or Constructed Property** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form are amended as follows:

**a.** The limit applicable to **(1) Buildings** is increased to $500,000.

**b.** The limit applicable to **(2) Business Personal Property** is increased to $500,000.

**c.** Paragraph **(3)(b)** is replaced by the following:

   **(3) Period Of Coverage**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002252

**(b)** 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

## 25. Newly Acquired Locations – Business Income and Extra Expense

Paragraph **A.6. Coverage Extension** of the Business Income (And Extra Expense) Coverage Form and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained is amended as follows:

**a.** The limit shown in paragraph **A.6.b.** is increased to $500,000.

**b.** Paragraph **A.6.c.(2)** is amended to show 180 days.

## 26. Outdoor Signs

The limit for outdoor signs shown in Section **C. Limits of Insurance** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is amended to $10,000 or the limit shown in Section A – Schedule of Insurance per sign in any one "occurrence".

## 27. Pairs or Sets

The following is added to Section **E. Loss Conditions, 7. Valuation** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form**:**

**Pairs or Sets**

In case of loss to any part of a pair or set, we may:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between the value of the pair or set before and after the loss.

## 28. Personal Effects And Property Of Others

The limit shown under Section **A. Coverage, 5. Coverage Extensions**, Paragraph **b. Personal Effects And Property Of Others** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is amended to $5,000 at each described premises.

## 29. Pollutant Cleanup And Removal

Section **A. Coverage, 4. Additional Coverages,** Paragraph **d.** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is replaced by the following:

### d.  Pollutant Cleanup And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the  policy  period. The expenses will be paid only if  they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is the limit shown in Section A – Schedule of Insurance, for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

## 30. Preservation Of Property

Section **A. Coverage, 4. Additional Coverages,** Paragraph **b.(2)** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is replaced by the following:

### b.  Preservation Of Property

**(2)** Only if the loss or damage occurs within 60 days after the property is first moved.

## 31. Property Definitions – Extended Coverage on Property within 1,000 feet

Under the Building And Personal Property Coverage Form or Condominium Association Coverage Form, Business Income (And Extra Expense) Coverage Form, and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained, all provisions that limit the location of property to   "within 100 feet" of a described premise are replaced with "within 1,000 feet" of a described premise.

## 32. Property In Transit

Section **F. Additional Coverage Extensions, 1. Property In Transit** of the Cause of Loss - Special Form is replaced by the following:

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002253

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 1,000 feet from the described premises.

**b.** This extension applies to your personal property while:

(1) In or on a motor vehicle you own, lease or operate while between points in the Coverage Territory.

**c.** In the custody of a common carrier or contract carrier. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**d.** The most we will pay for loss or damage under this Extension is the limit shown in Section A – Schedule of Insurance.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

### 33. Property Off Premises

Section **A. Coverage, 5. Coverage Extensions, d. Property Off-premises** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form is replaced by the following:

**d. Property Off-premises**

(1) You may extend the insurance that applies to your Covered Property to apply to direct physical loss or damage to your property or property of others that is in your care, custody or control while it is at other than a described location, but located within the Coverage Territory.

(2) This Extension does not apply to property:

(a) In or on a vehicle; or

(b) Loss or damage covered under the following Additional Coverages or Extensions:

   **i.** Property in Transit

   **ii.** Sales Representatives Samples

(c) Loss or damage caused directly or indirectly by "Flood" or Earthquake, even when these Causes of Loss are added to this policy by endorsement.

(3) The most we will pay for loss or damage under this Extension is $50,000 or the limit shown in Section A – Schedule of Coverages.

### 34. Reward Payment

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Reward Payment**

**a.** We will reimburse you for payment of any reward offered on your behalf and for information that leads to the arrest and conviction of the person or persons responsible for:

(1) Arson;

(2) Theft; or

(3) Vandalism

to Covered Property.

**b.** The arrest or conviction must involve a covered loss caused by arson, theft or vandalism.

**c.** The most we will pay under this Additional Coverage is $10,000. The amount we pay is not increased by the number of persons involved in providing the information.

**d.** The amount payable under this Additional Coverage is additional insurance.

### 35. Sales Representative Samples

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Sales Representative Samples**

**a.** We will pay for direct physical loss or damage by a Covered Cause of Loss to

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002254

samples of your "stock" in trade (including containers) while:

**(1)** In the custody of your sales representative, agent or any "employee" who travels with sales samples;

**(2)** In your custody while acting as a sales representative; or

**(3)** "In transit" between the described premises and your sales representatives.

**b.** The most we will pay for any loss or damage under this Additional Coverage is $10,000.

**c.** The amount payable under this Additional Coverage is additional insurance.

**d.** We will not pay for loss to the following property:

**(1)** Property which has been sold;

**(2)** Jewelry, precious or semiprecious stones, gold, silver, platinum or other precious metals or alloys;

**(3)** Fur, fur garments or garments trimmed with fur; or

**(4)** Any property while waterborne.

**e.** We will not cover loss resulting from theft from any unattended vehicle, unless, at the time of the theft, the vehicle's windows, doors and compartments were closed and locked, and there are visible signs that the theft was a result of forced entry.

### 36. Soft Costs

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

#### Soft Costs

**a.** We will pay the actual "soft cost expenses" that arise out of a delay in the construction, erection or fabrication of a Covered Building that is

**(1)** Listed in paragraphs **A.1.a.(5)** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form; and

**(2)** Your new building while being built on or within 1,000 feet of the described premises

resulting from direct physical loss or damage to that Covered Building from a Covered Cause of Loss.

**b.** We will only pay the necessary "soft cost expenses" that are over and above those costs that would have been incurred had there been no delay.

**c.** The most we will pay under this Extension in any one "occurrence" is $5,000.

### 37. Temporary Relocation of Property

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

#### Temporary Relocation of Property

**a.** We will pay for loss of or damage to Covered Property from a Covered Cause of Loss while it is away from the described premises, if it is being stored temporarily at a location you do not own, lease or operate while the described premises is being renovated or remodeled.

**b.** This coverage applies for 90 days after the property is first moved, but does not extend past the date on which this policy expires.

**c.** The most we will pay under this Additional Coverage is $25,000.

### 38. Tenant Glass

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

#### Tenant Glass

**a.** If glass in a building you occupy but do not own, is damaged, we will pay for direct physical loss of or damage to glass.

**b.** This insurance includes replacement of lettering, artwork, ornamentation, sensors or other items permanently affixed to, or part of a building at an insured location.

**c.** For coverage to apply, the glass must be in your care, custody or control and repairs must be made at your expense.

**d.** We will also pay for necessary:

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002255

**(1)** Expenses incurred to put up temporary plates or board up openings when repair or replacement of the damaged glass is delayed;

**(2)** Repair or replacement of encasing frames; and

**(3)** Expenses incurred to remove or replace obstructions to repair or replace the damaged glass.

This does not include the cost of removing, replacing or rebuilding window displays.

**e.** The most we will pay for loss or damage in an "occurrence" under this Coverage Extension is $5,000.

**39. Transit Business Income & Extra Expense**

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Business Income (And Extra Expense) Coverage Form and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained:

**Transit Business Income & Extra Expense**

**a.** We will pay the actual loss of Business Income you sustain and necessary and reasonable Extra Expense you incur caused by direct physical loss of or direct physical damage to Covered Property while "in transit" caused by or resulting from a Covered Cause of Loss.

**b.** The most we will pay for loss in any one "occurrence" under this Additional Coverage is the limit shown in Section A – Schedule of Insurance.

**40. Unauthorized Business Card Use**

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Unauthorized Business Card Use**

**a.** We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge cards issued in your business name, including:

**(1)** Fund transfer cards;

**(2)** Charge plates; or

**(3)** Telephone cards.

**b.** The most we will pay under this Additional Coverage in any one "occurrence" is $2,500.

**41. Unintentional Omission**

The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Unintentional Omission**

**a.** If you unintentionally failed to report or describe a location to us, coverage provided by this policy will not be invalid. However, you must report such errors or omissions to us in writing as soon as you discover them. You also agree to pay the additional premium that would have been earned by us if the location was correctly reported to us.

**b.** This Additional Coverage only applies to direct loss or damage caused by a Covered Cause of Loss at the omitted location and does not include any coverage for "Flood" or Earthquake even when these Causes of Loss are added to this policy by endorsement.

**c.** You must provide reasonable documentation and clear and convincing evidence explaining the cause of the oversight.

**d.** For any location you have failed to report to us, this coverage will end when any of the following first occurs:

**(1)** This policy expires; or

**(2)** You report values to us.

**e.** The most we will pay for any loss under this Additional Coverage in any one policy period regardless of the number of occurrences or reporting errors or omissions is $100,000.

**f.** The amount payable under this Additional Coverage is additional insurance.

**g.** This Additional Coverage does not apply to a loss that is covered under **Newly Acquired or Constructed Property** coverage.

**42. Utility Services – Direct Damage**

**a.** The following is added to Section **A. Coverage, 4. Additional Coverages** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 131**

RLI_002256

**Utility Services – Direct Damage**

(1) We will pay for loss of or damage to Covered Property, caused by the interruption of services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises, that provides:

    (a) "Water supply services";

    (b) "Communication supply services"; or

    (c) "Power supply services".

(2) Services under this Additional Coverage do not include overhead transmission lines that deliver utility services to you. Overhead transmission lines include, but are not limited to:

    (a) Overhead transmission and distribution lines;

    (b) Overhead transformers and similar equipment; and

    (c) Supporting poles and towers.

(3) The most we will pay for loss or damage under this Additional Coverage in any one "occurrence" at each described premises is the limit shown in Section A – Schedule of Insurance.

**b.** Exclusion **B.1.e.** of the Cause of Loss - Special Form does not apply to this Additional Coverage.

**43. Utility Services – Time Element**

**a.** The following is added to Section **A. Coverage, 4. Additional Coverages** of the Business Income (And Extra Expense) Coverage Form and Business Income (And Extra Expense) Coverage Form – Actual Loss Sustained:

**Utility Services – Time Element**

(1) We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises, that provides:

    (a) "Water supply services";

    (b) "Communication supply services"; or

    (c) "Power supply services".

(2) Services under this Additional Coverage do not include overhead transmission lines that deliver utility services to you. Overhead transmission lines include, but are not limited to:

    (a) Overhead transmission and distribution lines;

    (b) Overhead transformers and similar equipment; and

    (c) Supporting poles and towers.

(3) We will pay the actual loss sustained from the initial time of service(s) failure at the described premises but only when the service interruption at the described premises exceeds twenty-four (24) hours immediately following the direct physical loss or damage. Coverage does not apply to any reduction of income after service has been restored to your premises.

(4) The most we will pay for loss or damage under this Additional Coverage in any one "occurrence" at each described premises is the limit shown in Section A – Schedule of Insurance.

**b.** Exclusion **B.1.e.** of the Cause of Loss - Special Form does not apply to this Additional Coverage.

**44. Water Backup & Sump Overflow, Including Seepage & Underground Water**

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Water Backup & Sump Overflow, Including Seepage & Underground Water**

**a.** We will pay for loss of or damage to Covered Property at the described premises caused by or resulting from:

(1) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002257

**(c)** Doors, windows or other openings.

**(2)** Water or sewage that backs up or overflows from a sewer, drain, or sump resulting from:

**(a)** Water or waterborne material which backs up through or overflows or is otherwise discharged from a sewer or drain; or

**(b)** Water or waterborne material which overflows or is otherwise discharged from a sump, sump pump or related equipment, even if the overflow or discharge results from mechanical breakdown.

However, coverage does not apply to loss or damage resulting from an insured's failure to perform routine maintenance or repair necessary to keep a sewer, drain, or sump free from obstruction.

**b.** **Exclusions B.1.g.(3)** and **(4)** in the Causes of Loss – Special Form do not apply to this Extension.

**c.** The most we will pay for loss or damage under this Extension in any one "occurrence" at each described premises is the limit shown in Section A – Schedule of Insurance.

**45. Worldwide Property Off Premises**

The following is added to Section **A. Coverage, 5. Coverage Extensions** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**Worldwide Property Off Premises**

**a.** You may extend the insurance that applies to Your Business Personal Property and Personal Property of Others to apply to that property while it is temporarily outside the Coverage Territory if it is:

**(1)** Temporarily at a location you do not own, lease or operate;

**(2)** Temporarily on display or exhibit at any fair, trade show or exhibition;

**(3)** Samples of your "stock" in trade in the custody of your sales representatives; or

**(4)** While "in transit" between the described premises and a location described in **(1), (2)** or **(3)** above.

**b.** The most we will pay for loss or damage under this Extension is the limit shown in Section A – Schedule of Insurance.

**c.** This Extension provides an additional amount of insurance.

**SECTION D – VALUATION**

The following is added to Section **E. Loss Conditions, 7. Valuation** of the Building And Personal Property Coverage Form or Condominium Association Coverage Form:

**7. Valuation**

**f.** "Money" at its face value

**g.** "Securities" at their value at the close of business on the day the loss is discovered.

**h.** Property "in transit" (other than "stock" you have sold) at the amount of invoice, including your prepaid or advanced freight charges and other charges which may have accrued or become legally due since the shipment. If you have no invoice, actual cash value will apply.

**SECTION E – DEFINITIONS**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Communication Supply Services" means property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**a.** Communication transmission lines, including optic fiber transmission lines;

**b.** Coaxial cables; and

**c.** Microwave radio relays except satellites.

**3.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**4.** "Discover" or "Discovered" means:

**a.** The time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details may not be known.

**b.** "Discover" or "Discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third par-

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002258

ty under circumstances which, if true, would constitute a loss under this policy.

**5.** "Employee" means:

  **a.** Any natural person:

    **(1)** While in your service for 30 days after termination of service;

    **(2)** Who you compensate directly by salary, wages or commissions; and

    **(3)** Who you have the right to direct and control while performing services for you; or

  **b.** Any natural person who is furnished temporarily to you:

    **(1)** To substitute for a permanent "employee" as defined in paragraph **a.** above, who is on leave; or

    **(2)** To meet seasonal or short-term workload conditions;

  **c.** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a person temporarily furnished to you as defined in **b.** above;

while that person is subject to your direction and control and performing services for you.

"Employee" does not mean:

  **a.** Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

  **b.** Any manager, director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

**6.** "Flood" means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

  **a.** The overflow of inland or tidal waters;

  **b.** The unusual or rapid accumulation of runoff of surface waters from any source; or

  **c.** Mudslides or mudflows which are caused by flooding as defined in **b.** above. For the purpose of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive. It does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Funds" means "money" and "securities".

**9.** "In transit" means in the course of shipment from or to the premises shown in the Declarations. It includes such shipments while temporarily stopped or delayed, incidental to the delivery.

**10.** "Manager", as respects to the coverage provided under **Section C.9.** of this endorsement for Employee Dishonesty only, means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

**12.** "Money" means:

  **a.** Currency, coins and bank notes in current use and having a face value; and

  **b.** Travelers checks, register checks and money orders held for sale to the public.

**13.** "Occurrence" means all loss or damage that is attributable to:

  **a.** An act, event, cause or series of similar, related acts, events or causes involving one or more persons; or

  **b.** An act, event, cause or series of similar related acts, events or causes not involving any person.

**14.** "Other property" means tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

**15.** "Power supply services" means the following types of property supplying electricity, steam or gas to the described premises:

  **a.** Utility generating plants;

  **b.** Switching stations;

  **c.** Substations;

  **d.** Transformers; and

  **e.** Transmission lines.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002259

**16.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**17.** "Soft cost expenses" means additional:

    **a.** Realty taxes and other assessments that you incur for the period of time that construction has been extended beyond the projected completion date;

    **b.** Interest on money borrowed to finance construction, remodeling, renovation or repair; and

    **c.** Advertising, public relations and promotional expenses.

**18.** "Temporary storage location" means a location where property that is to become a permanent part of a completed project is stored while waiting to be delivered to the job site:

    **a.** That you do not own, lease or operate; and

    **b.** Where work is in progress, or will begin in 30 days.

**19.** "Water supply services" means the following types of property supplying water to the described premises:

    **a.** Pumping stations; and

    **b.** Water mains.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

**APPX 135**

RLI_002260

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL PROPERTY
# BASKET LIMITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM

## BASKET LIMIT OF INSURANCE

### $ 100,000

### SUBJECTS OF INSURANCE IN BASKET

**Additional Coverages**
Fire Department Service Charge
Fire Protection Equipment Recharge
Leasehold Interest
Lock & Key Replacement
Reward Payment

**Coverage Extensions**
Accounts Receivable
Brands & Labels
Fine Arts
Non Owned Detached Trailers
Outdoor Property
Valuable Papers

**A. Limits of Insurance applicable to this endorsement**

1. Except where otherwise noted, the Basket Limit of Insurance shown in the Schedule is the most we will pay in any one occurrence for loss or damage covered under one or more of the Subjects of Insurance in Basket shown in the Schedule.  You may apportion this Basket Limit of Insurance among the Subjects of Insurance as you choose. Any Coinsurance or Deductible provisions contained within the Coverage Forms applicable to this endorsement do not apply to the amount of covered loss or damage apportioned to that Coverage Form.

2. If a more specifically described coverage is found elsewhere in this or any other policy, coverage under this Basket Limits Endorsement would not apply.

**B.** Section **A.4. Additional Coverages** of the Building and Personal Property Coverage Form is amended as follows:

1. Paragraph **c.** is replaced by the following:

   **c. Fire Department Service Charge**

   When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

   **(1)** Assumed by contract or agreement prior to loss; or

   **(2)** Required by local ordinance.

   The most we will pay under this Additional Coverage in any one "occurrence" is the Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission

**APPX 136**

RLI_002261

**2.** The following Additional Coverages are added:

**g. Fire Protection Equipment Recharge**

**(1)** We will pay the cost of the lesser of recharging or replacing ABC type (multipurpose) fire extinguishers or chemical fixed pipe fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 1,000 feet of the described premises.

**(2)** No coverage will apply if the fire extinguishing system:

**(a)** Is discharged during installation or testing; or

**(b)** Is not in compliance with NFPA standard #96 and/or UL 300.

**(3)** The most we will pay under this Additional Coverage in any one "occurrence" is the Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**h. Leasehold Interest - Tenants**

**(1)** We will pay for the loss of prepaid rent you sustain due to the cancellation of your written lease. The cancellation must result from direct physical loss or damage to property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**(2)** This additional Coverage only applies if at the time of loss, you were occupying and conducting business at the described premises.

**(3)** The most we will pay for loss in any one "occurrence" is the lesser of:

**(a)** The unused pro-rata portion of prepaid rent based on the period of time remaining in your lease, which you have paid at the described prem-

ises where your lease was cancelled; or

**(b)** The Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**(4)** We will not pay for any

**(a)** Lease cancelled, suspended or allowed to lapse by you; or

**(b)** Lease cancelled at the normal expiration date.

**i. Lock and Key Replacement**

**(1)** We will pay for the cost to repair or replace locks at the described premises due to theft or other loss to keys.

**(2)** The most we will pay for loss or damage under this Additional Coverage in any one "occurrence" is the Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**C.** Section **A.5. Coverage Extensions** of the Building and Personal Property Coverage Form is amended as follows:

**1.** The Extensions herein apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

**2.** The following Coverage Extensions are added:

**h. Accounts Receivable**

**(1)** We will pay for loss or damage caused by or resulting from a Covered Cause of Loss to your records of Accounts Receivable. Accounts Receivable means:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission

**APPX 137**

RLI_002262

collect pending our payment of these amounts;

**(c)** Collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable.

**(2)** The most we will pay under this Additional Coverage for loss or damage in any one "occurrence" at a described premises is subject to the Basket Coverage Limit of Insurance shown in the schedule, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**(3)** We will not pay for loss or damage:

**(a)** Caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or "other property".

This exclusion applies only to the extent of the wrongful giving, taking or withholding;

**(b)** Caused by or resulting from bookkeeping, accounting or billing errors or omissions;

**(c)** That requires any audit of records or any inventory computation to prove its factual existence.

**i.   Brands & Labels**

**(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, we will pay your reasonable expenses and you may:

**(a)** Stamp the word salvage on the merchandise or its containers, if the stamp will not

physically damage the merchandise; or

**(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

**(2)** We will pay for the loss in value of the salvage merchandise that results from stamping it or removing the brands and labels.

**(3)** The most we will pay under this Coverage Extension for loss or damage in any on "occurrence" at a described premises is subject to the Basket Coverage Limit of Insurance shown in the schedule, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**j.   Fine Arts**

**(1)** We will pay for direct physical loss of or damage to Fine Arts, which are your property or the property of others in your care, custody or control.

We will pay for loss or damage caused by or resulting from a Covered Cause of Loss anywhere in the coverage territory.

**(2)** The most we will pay for loss or damage under this Coverage Extension in any one "occurrence" is the Basket Limit of Insurance, subject to $100,000 maximum per item, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**(3)** The breakage limitation under Paragraph **C.2.b.** in the Cause of Loss – Special form does not apply to this Coverage Extension.

**(4)** We will not pay for loss or damage caused by or resulting from any repairing, restoration or retouching process.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission

**APPX 138**

RLI_002263

**(5)** The value of Fine Arts will be the least of the following amounts:

**(a)** The "market value" of the property at the time of loss;

**(b)** The cost of reasonably restoring that property to its condition immediately before the loss; or

**(c)** The cost of replacing that property with substantially identical property.

**(6)** In the event of loss, the value of property will be determined as of the time of loss.

**(7)** The following are added to Paragraph **E. Loss Conditions**:

**(a)** In the case of loss to any pair or set, we will:

i. Repair or replace any part to restore the pair or set to its value before the loss; or

ii. Pay the difference between the value of the pair or set before and after the loss.

**(b)** You must arrange for the Fine Arts to be packed and unpacked by competent packers.

**3.** The following paragraphs under Section **A.5. Coverage Extensions** are replaced by the following:

**f.   Non Owned Detached Trailers**

Subparagraph **(3)** is replaced by the following:

**(3)** The most we will pay under this Coverage Extension for loss or damage in any one "occurrence" at a described premises is subject to the Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

**e.   Outdoor Property**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings); bridges, roadways, patios or other paved surfaces; bulkheads, pilings, piers, wharves or docks; retaining walls that are not part of a building described in the Declarations; trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any specified cause of loss.

**(2)** Regardless of the types or number of items lost or damaged in any one "occurrence", the most we will pay under this Extension is subject to the Basket Limit of Insurance, but not more than $1,000 for any one tree, shrub or plant.

**c.   Valuable Papers and Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist.   But this Extension does not apply to valuable papers and records which exist as electronic data.   Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one "occurrence" at a described premises is subject to the Basket Limit of Insurance, less any amount we have agreed to pay at your request in connection with the same occurrence as respects all other Subjects of Insurance in Basket.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission
**APPX 139**

RLI_002264

We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

(3) Loss or damage to "valuable papers and records" will be valued at the cost of restoration or replacement of the lost or damaged information. To the extent that the contents of the "valuable papers and records" are not restored, the "valuable papers and records" will be valued at the cost of replacement with blank materials of substantially identical type.

**D.** Section **A. Coverages**, Paragraph **2.a.** is replaced by the following:

**2. Property Not Covered**

**a.** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities", except as provided in the Accounts Receivable or Valuable Papers and Records provisions of this Endorsement. Lottery tickets held for sale are not "securities".

**E. Definitions**

**1.** "Market value" means the price which the property might be expected to realize if offered for sale in a fair market.

**2.** "Money" means:

    **a.** Currency, coins, and bank notes in current use and having a face value; and

    **b.** Travelers checks, register checks and money orders held for sale to the public.

**3.** "Occurrence" means all loss or damage that is attributable to:

    **a.** An act, event, cause or series of similar, related acts, events or causes involving one or more persons; or

    **b.** An act, event, cause or series of similar, related acts, events or causes not involving any person.

**4.** "Other Property" means tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

**5.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

    **a.** Lottery tickets, redeemed coupons, tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you; but does not include "money".

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission
**APPX 140**

RLI_002265

POLICY NUMBER: RKA0300001

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# LIMITATIONS ON COVERAGE FOR ROOF SURFACING AND/OR BUILDINGS AND STRUCTURES

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number or Description | Building Number | Subject to the Following Paragraph(s): |
|---|---|---|
| 1 | 1 | C |
| | | |
| | | |
| Information required to complete this Schedule, if not shown above, w ll be shown in the Declarations. | | |

**A.** The following applies with respect to loss or damage by a **Covered Causes of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.**:

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.**:

We will not pay for cosmetic damage to roof surfacing of any building or structure caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting, granulation loss, curling or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **C**:

We will not pay for cosmetic damage to the building or structure, including roof surfacing, caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, denting, pitting or other superficial damage that altered the appearance of the building or structure, but such damage does not prevent the building or structure from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

If windows or doors are damaged to the extent that they do not function as a barrier to the entrance of elements we will pay for damage to those windows or doors to the extent they are covered elsewhere in the policy. Payment of loss to windows or doors does not affect other provisions of this endorsement.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission.

APPX 141

RLI_002266

**D.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services APPX 142, with its permission.

RLI_002267

POLICY NUMBER: RKA0300001                                    **COMMERCIAL PROPERTY**

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

## SCHEDULE

| Premises Number | Building Number | Windstorm Or Hail Deductible Percentage Enter 1%, 2%, 5% or 10% | |
|---|---|---|---|
| 1 | 1 | 1 | % |
| | | | % |
| | | | % |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | |

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) Of Insurance are shown in the Declarations.

## WINDSTORM OR HAIL DEDUCTIBLE CALCULATIONS

### A. Calculation Of The Deductible – All Policies

1. A Deductible is calculated separately for, and applies separately to:

   a. Each building that sustains loss or damage;

   b. The personal property at each building at which there is loss or damage to personal property; and

   c. Personal property in the open.

   If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.

2. We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition; Agreed Value Optional Coverage; or any provision in a Value Reporting Form relating to full reporting or failure to submit reports.

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

RLI_002268

**3.** When property is covered under the Coverage Extension for Newly Acquired Or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired Or Constructed Property is the highest percentage shown in the Schedule for any described premises.

**B. Calculation Of The Deductible – Specific Insurance Other than Builders' Risk**

**1. Property Not Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

**2. Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is the latest value(s) shown in the most recent Report of Values on file with us.

However:

**a.** If the most recent Report of Values shows less than the full value(s) of the property on the report dates, we will determine the deductible amount as a percentage of the full value(s) as of the report dates.

**b.** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the applicable Limit(s) of Insurance.

**C. Calculation Of The Deductible – Blanket Insurance Other Than Builders' Risk**

**1. Property Not Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is that shown in the most recent Statement of Values on file with us.

**2. Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the value(s) of that property as of the time of loss or damage.

**D. Calculation Of The Deductible – Builders' Risk Insurance**

**1. Builders' Risk Other Than Reporting Form**

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the actual cash value(s) of that property as of the time of loss or damage.

**2. Builders' Risk Reporting Form**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the value(s) of the property that has sustained loss or damage. The value(s) to be used is the actual cash value(s) shown in the most recent Report of Values on file with us.

However:

**a.** If the most recent Report of Values shows less than the actual cash value(s) of the property on the report date, we will determine the deductible amount as a percentage of the actual cash value(s) as of the report date.

**b.** If the first Report of Values is not filed with us prior to loss or damage, we will determine the deductible amount as a percentage of the actual cash value(s) of the property as of the time of loss or damage.

**Examples – Application Of Deductible**

**Example 1 – Specific Insurance (B.1.)**

The amount of loss to the damaged building is $60,000.

The value of the damaged building at time of loss is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the Coinsurance requirement is $80,000 (80% of $100,000).

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc., with its permission

RLI_002269

The actual Limit of Insurance on the damaged building is $70,000.

The Deductible is 1%.

Step **(1)**:  $70,000 ÷ $80,000 = .875

Step **(2)**:  $60,000 x .875 = $52,500

Step **(3)**:  $70,000 x 1% = $700

Step **(4)**:  $52,500 – $700 = $51,800

The most we will pay is $51,800. The remainder of the loss, $8,200, is not covered due to the Coinsurance penalty for inadequate insurance (Steps **(1)** and **(2)**) and the application of the Deductible (Steps **(3)** and **(4)**).

**Example 2 – Specific Insurance (B.1.)**

The amounts of loss to the damaged property are $60,000 (Building) and $40,000 (Personal Property in building).

The value of the damaged building at time of loss is $100,000. The value of the personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the Coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the personal property.

The actual Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the personal property (therefore, no Coinsurance penalty).

The Deductible is 2%.

**Building**

Step **(1)**:  $80,000 x 2% = $1,600

Step **(2)**:  $60,000 – $1,600 = $58,400

**Personal Property**

Step **(1)**:  $64,000 x 2% = $1,280

Step **(2)**:  $40,000 – $1,280 = $38,720

The most we will pay is $97,120. The portion of the total loss not covered due to application of the Deductible is $2,880.

**Example 3 – Blanket Insurance (C.1.)**

The sum of the values of Building 1 ($500,000), Building 2 ($500,000) and Building 3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,800,000 (90% of $2,000,000).

The actual Blanket Limit Of Insurance covering Buildings 1, 2, and 3, shown in the Declarations, is $1,800,000 (therefore, no Coinsurance penalty).

Buildings 1 and 2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building 1) and $20,000 (Building 2).

The Deductible is 2%.

**Building 1**

Step **(1)**:  $500,000 x 2% = $10,000

Step **(2)**:  $40,000 – $10,000 = $30,000

**Building 2**

Step **(1)**:  $500,000 x 2% = $10,000

Step **(2)**:  $20,000 – $10,000 = $10,000

The most we will pay is $40,000. The portion of the total loss not covered due to application of the Deductible is $20,000.

**Example 4 – Blanket Insurance (C.1.)**

The sum of the values of Building 1 ($500,000), Building 2 ($500,000), Personal Property at Building 1 ($250,000) and Personal Property at Building 2 ($250,000), as shown in the most recent Statement of Values on file with us, is $1,500,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,350,000 (90% of $1,500,000).

The actual Blanket Limit Of Insurance covering Buildings 1 and 2 and Personal Property at Buildings 1 and 2, shown in the Declarations, is $1,350,000. Therefore, there is no Coinsurance penalty.

Building 1 and Personal Property at Building 1 have sustained damage; the amounts of loss are $95,000 (Building) and $5,000 (Personal Property).

The Deductible is 5%.

**Building**

Step **(1)**:  $500,000 x 5% = $25,000

Step **(2)**:  $95,000 – $25,000 = $70,000

**Personal Property**

Step **(1)**:  $250,000 x 5% = $12,500

The loss, $5,000, does not exceed the Deductible.

The most we will pay is $70,000. The remainder of the building loss, $25,000, is not covered due to application of the Deductible. There is no loss payment for the personal property.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RPR 327 06 16

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission
APPX. 145

Page 3 of 3

RLI_002270

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part is replaced by the term Policy.

**B. Legal Action Against Us**

**1.** The **Legal Action Against Us** Commercial Property Condition is replaced by the following, except as provided in **B.2.** below:

**Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all of the terms of this Coverage Part; and

**(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

**b.** With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all the terms of this Coverage Part; and

**(2)** The action is brought within the earlier of the following:

**(a)** Two years and one day from the date we accept or reject the claim; or

**(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

**2.** Paragraph **B.1.** above does not apply to the Legal Action Against Us Loss Condition in the Legal Liability Coverage Form **CP 00 40.**

**C. Appraisal**

**1.** Except as provided in **C.2.** below, the **Appraisal** Loss Condition in the:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM;
BUILDERS RISK COVERAGE FORM;
CONDOMINIUM ASSOCIATION COVERAGE FORM;
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM;
EXTRA EXPENSE COVERAGE FORM;
LEASEHOLD INTEREST COVERAGE FORM;
TOBACCO SALES WAREHOUSES COVERAGE FORM; and
STANDARD PROPERTY POLICY

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

 © Insurance Services Office, Inc., 2011

RLI_002271

**2.** The **Appraisal** Condition in the:

BUSINESS     INCOME     (AND     EXTRA
EXPENSE) COVERAGE FORM; and
BUSINESS     INCOME     (WITHOUT     EXTRA
EXPENSE) COVERAGE FORM

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense and the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

**D.** Under the **Duties In The Event Of Loss Or Damage** Loss Condition:

   **a.** Paragraph **a.(2)** is replaced by the following:

      **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

**b.** The provision requiring signed, sworn proof of loss is replaced by the following:

   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**E.** Under the Loss Payment Condition, the provisions pertaining to notice of our intentions and the time period for payment of claims are deleted and replaced by the following:

   **1. Claims Handling**

      **a.** Within 15 days after we receive written notice of claim, we will:

         **(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

         **(2)** Begin any investigation of the claim; and

         **(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

      **b.** We will notify you in writing as to whether:

         **(1)** The claim or part of the claim will be paid;

         **(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

         **(3)** More information is necessary; or

         **(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

      We will provide notification, as described in **b.(1)** through **b.(4)** above, within:

         **(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

         **(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

      If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

          © Insurance Services Office, Inc., 2011

APPX-167

RLI_002272

**2.** We will pay for covered loss or damage within five business days after:

    **a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

    **b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Coverage Part, we will make payment within five business days after the date you have complied with such terms.

The following paragraphs are added:

**3. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **E.1.** and **E.2.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

    **a.** Is declared a disaster under the Texas Disaster Act of 1975; or

    **b.** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term "business day", as used in the Loss Payment Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**F.** The following is added to the **Valuation** Loss Condition:

**Chapter 862 – Subsection 862.053. Policy A Liquidated Demand.** A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. This subsection does not apply to personal property.

**G.** Paragraphs **d.** and **f.** of the **Mortgageholders** Additional Condition are replaced by the following:

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    **f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

    If we cancel this policy, we will give written notice to the mortgageholder at least:

        **(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**H.** The following is added to Paragraph **D.1.** in the **Duties In The Event Of Accident, Claim Or Suit** Loss Condition in the Legal Liability Coverage Form:

We will notify the first Named Insured in writing of:

**1.** An initial offer to settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**2.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

 © Insurance Services Office, Inc., 2011

ARPX-168

RLI_002273

COMMERCIAL PROPERTY
CP 99 93 01 95

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Property Coverage Part are tentative. We will adjust the premium effective from the inception date of this Coverage Part once we develop the actual rates. If this is a renewal of a policy previously issued by us, we will adjust the premium effective from the renewal date of this Coverage Part once we develop the actual rates.

APPX 149

RLI_002274

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES - EQUIPMENT BREAKDOWN

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN COVERAGE (Including Electronic Circuitry Impairment)

**A.** The following coverages are added:

    **1.** Defense

    If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control that was directly caused by an "accident" to "covered equipment" we will either:

      **a.** Settle the claim or "suit"; or

      **b.** Defend you against the claim or "suit" but keep for ourselves the right to settle it at any point.

    **2.** Supplementary Payments

    We will pay, with respect to any claim or "suit" we defend:

      **a.** All expenses we incur;

      **b.** The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

      **c.** All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work;

      **d.** All costs taxed against you in any "suit" we defend;

      **e.** Pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

      **f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

These payments will not reduce the Limit of Insurance.

**B.** As respects Equipment Breakdown Coverage only, the following are added:

    **1.** Bankruptcy

    The bankruptcy or insolvency of you or your estate will not relieve us of an obligation under this coverage section.

    **2.** Legal Action Against Us

    No one may bring a legal action against us under this Equipment Breakdown coverage unless:

      **a.** There has been full compliance with all the terms of this Equipment Breakdown coverage; and

      **b.** The action is brought within 2 years and 1 day from the date that cause of action first accrues.

      **c.** We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

**C.** With respect to Equipment Breakdown Coverage only, the following Definition is added:

    "Suit" means a civil proceeding and includes:

    **1.** An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or

    **2.** Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Contains copyrighted material of
Insurance Services Office, Inc. with its permission

APPX 150

RLI_002275

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Jean M. Stephenson

Corporate Secretary

Craig W. Kliet

President & COO

# POLICY CHANGE ENDORSEMENT

Policy Number: RKA0300001                                    Agent #: 43137

Named Insured and Mailing Address:

BEKA ONE, LLC                                    Appalachian Underwriters Inc. (43137)
VALCOR COMMERCIAL REAL ESTATE                    7301 Merchant Court
P.O. BOX 381820                                  Suite B
DUNCANVILLE, TX 75138-1820                       Sarasota, FL 34240

Policy Period: From:  03/07/2020   To:  03/07/2021   At 12:01 A.M., Standard Time at your mailing address shown above.

CHANGE EFFECTIVE   03/07/2020      CHANGE #  1

**DESCRIPTION**

| | | | | |
|---|---|---|---|---|
| Insured's Name | | | X | Insured's Mailing Address |
| Effective / Expiration Date | | | | Business Description |
| Additional Interested Parties | | | | Premium Determination |
| Limits/Exposures / Occupancy / Construction | | | | Coverage Forms and Endorsements |
| Covered Property / Location | | | | Deductibles / Coinsurance |
| Rates | | | | Classification / Class Codes |
| Signed Exclusion | | | | Underlying Insurance |
| Drivers | | | | Employee / Employee Position |
| Assessments / Taxes | | | | Adding/Deleting Auto |
| Self-Insured Retention/Retroactive Date | | | | Protective Safeguards |
| Policy Correction | | | | This policy is Cancelled |
| Business Entity | Individual | Partnership | | Corporation | Other |

is (are) changed to read **{See Additional Page(s)}: (Information if not shown below will be shown on the attached Declarations or Schedules)**

AMENDING THE MAILING ADDRESS TO READ: P.O. BOX 381820
DUNCANVILLE, TX 75138-1820

☐ Additional Premium   $_____   ☐ Return Premium   $_____   ☒ No Change In Premium

Taxes, Fees, Surcharges   $_____
Total                     $_____

Countersignature    02/27/2020    By    Appalachian Underwriters Inc. (43137)
                        (Date)                 (Authorized Representative)

RLI INSURANCE COMPANY
Includes copyrighted material of
Insurance Services Office, Inc., with its
APPX 152
permission.

RML 2101 08 15                                              Page 1 of 2

RLI_002277

**POLICY CHANGE ENDORSEMENT DESCRIPTION**



**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

APPX 153

RML 2101 08 15

RLI_002278

RLI INSURANCE COMPANY

# LOCATIONS SCHEDULE

POLICY NUMBER:   RKA0300001

AGENT #   43137

BEKA ONE, LLC
VALCOR COMMERCIAL REAL ESTATE
P.O. BOX 381820
DUNCANVILLE, TX  75138-1820

Appalachian Underwriters Inc. (43137)
7301 Merchant Court
Suite B
Sarasota, FL  34240

## LOCATIONS

| PREMS NO. | BLDG NO. | STREET | CITY | COUNTY | ST | ZIP |
|---|---|---|---|---|---|---|
| Primary | 1 | 903 E. BITTERS RD<br>1723 N LOOP 1604 E STE 204 | SAN ANTONIO | | TX | 78216 |

**APPX 154**

RLI_002279



**RLI Insurance Company**
Peoria, Illinois 61615

# TEXAS POLICYHOLDER NOTICE

## TEXAS
## IMPORTANT NOTICE

**Have a complaint or need help?**

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

### RLI Insurance Company

To get information or file a complaint with your insurance company or HMO:

Call: Product Manager, Small Commercial at 309-692-1000

**Toll-free: 800-331-4929**

Online: https://www.rlicorp.com/contact-rli

E-mail: TexasInquiries@rlicorp.com

Mail:
9025 N. Lindbergh Drive, Peoria, Illinois 61615

### The Texas Department of Insurance

To get help with an insurance question or file a complaint with the state:

Call with a question: 800-252-3439

File a complaint: www.tdi.texas.gov

Email: ConsumerProtection@tdi.texas.gov

Mail:
MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

## TEXAS
## AVISO IMPORTANTE

**Tiene una queja o necesita ayuda?**

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

### RLI Insurance Company

Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

Llame a: Product Manager, Small Commercial al 309-692-1000

**Teléfono gratuito: 800-331-4929**

En línea: https://www.rlicorp.com/contact-rli

Correo electrónico: TexasInquiries@rlicorp.com

Dirección postal:
9025 N. Lindbergh Drive, Peoria, Illinois 61615

### The Texas Department of Insurance

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

Llame con sus preguntas al: 800-252-3439

Presente una queja en: www.tdi.texas.gov

Correo electrónico:
ConsumerProtection@tdi.texas.gov

Dirección postal:
MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

RLI_002280

# POLICY CHANGE ENDORSEMENT

Policy Number: RKA0300001                                         Agent #: 43137

Named Insured and Mailing Address:
BEKA ONE, LLC                                    Appalachian Underwriters Inc. (43137)
1723 N LOOP 1604 E  STE 204                      7301 Merchant Court
                                                Suite B
SAN ANTONIO, TX  78232                          Sarasota, FL  34240

Policy Period:  From:  03/07/2020   To:   03/07/2021   At 12:01 A.M., Standard Time at your mailing address shown above.

CHANGE EFFECTIVE     05/20/2020        CHANGE #   2

| DESCRIPTION | | | | | | |
|---|---|---|---|---|---|---|
| Insured's Name | | | X | Insured's Mailing Address | | |
| Effective / Expiration Date | | | | Business Description | | |
| Additional Interested Parties | | | | Premium Determination | | |
| Limits/Exposures / Occupancy / Construction | | | | Coverage Forms and Endorsements | | |
| Covered Property / Location | | | | Deductibles / Coinsurance | | |
| Rates | | | | Classification / Class Codes | | |
| Signed Exclusion | | | | Underlying Insurance | | |
| Drivers | | | | Employee / Employee Position | | |
| Assessments / Taxes | | | | Adding/Deleting Auto | | |
| Self-Insured Retention/Retroactive Date | | | | Protective Safeguards | | |
| Policy Correction | | | | This policy is Cancelled | | |
| Business Entity | Individual | Partnership | | Corporation | Other | |

is (are) changed to read {See Additional Page(s)}: (Information if not shown below will be shown on the attached Declarations or Schedules)
   AMENDING THE MAILING ADDRESS TO READ:
   1723 N LOOP 1604 E, STE 204
   SAN ANTONIO, TX 78232

☐ Additional Premium    $ _____    ☐ Return Premium   $_____    ☒ No Change In Premium

Taxes, Fees, Surcharges    $ _____
Total                      $ _____

Countersignature _____ 06/02/2020 _____ By   Appalachian Underwriters Inc. (43137)
                              (Date)                           (Authorized Representative)

RML 2101 08 15                        RLI INSURANCE COMPANY
                                      Includes copyrighted material of
                                   Insurance Services Office, Inc., with its                    Page 1 of 2
                                          permission.

APPX 1156

RLI_002281

**POLICY CHANGE ENDORSEMENT DESCRIPTION**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RLI INSURANCE COMPANY
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

APPX 157

RML 2101 08 15

RLI_002282

RLI INSURANCE COMPANY

# LOCATIONS SCHEDULE

POLICY NUMBER:   RKA0300001

AGENT #   43137

BEKA ONE, LLC
1723 N LOOP 1604 E  STE 204

SAN ANTONIO, TX  78232

Appalachian Underwriters Inc. (43137)
7301 Merchant Court
Suite B
Sarasota, FL  34240

## LOCATIONS

| PREMS NO. | BLDG NO. | STREET | CITY | COUNTY | ST | ZIP |
|---|---|---|---|---|---|---|
| Primary | 1 | 903 E. BITTERS RD<br>1723 N LOOP 1604 E STE 204 | SAN ANTONIO | | TX | 78216 |

RLI_002283

**To:**      First Report[First.Report@rlicorp.com]
**From:**    Debbie Dudley
**Sent:**    Fri 10/16/2020 7:27:20 PM
**Subject:** Beka One, LLC  --  Commercial Package  --  Policy Number #RKA0300001  --  New Loss
doc04903220201016142951.pdf

Good Afternoon,

Please find attached new loss for the captioned account.  Upon receipt of the claim number, and the name and contact information of the handling claim professional, please forward to us.

Thank you,
Debbie Dudley
Commercial Lines Underwriter

RDA Martin & Sons Insurance Agency, LTD
1414 W. Wheatland Rd., Suite 200
Duncanville, TX 75116

Phone (972) 298-4923
Fax    (972) 298-4939

debbie@rdamartinltd.com

www.rdamartinltd.com

Find Us On Facebook: @rdamartinltd.com



EXHIBIT
**A-2**
APPX 159

RLI_000001

# PROPERTY LOSS NOTICE

**ACORD**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 10/16/2020 |

| AGENCY | INSURED LOCATION CODE | DATE OF LOSS AND TIME | | AM |
|---|---|---|---|---|
| RDA MARTIN & SONS INS AGENCY | | 5-27-2020 | 5-27-2020 | PM |
| 1414 W Wheatland   Ste 200 | | | | |
| Duncanville, TX 75116 | PROPERTY / HOME POLICY | | | |

| | CARRIER | | NAIC CODE |
|---|---|---|---|
| | RLI | | |

| CONTACT NAME: | POLICY NUMBER | |
|---|---|---|
| PHONE (A/C, No, Ext): (972)298-4923 | RKA0300001 | |
| FAX (A/C, No): (972)298-4939 | FLOOD POLICY | |
| E-MAIL ADDRESS: lbritton@rdamartinltd.com | CARRIER | NAIC CODE |
| CODE:          SUBCODE: | | |

| AGENCY CUSTOMER ID: | POLICY NUMBER |
|---|---|
| | |
| | WIND POLICY |
| | CARRIER         NAIC CODE |
| | |
| | POLICY NUMBER |

## INSURED

| NAME OF INSURED (First, Middle, Last) | INSURED'S MAILING ADDRESS |
|---|---|
| BEKA ONE, LLC / VALCOR COMMERCIAL REAL ESTATE | 1723 N. LOOP 1604 E., STE #204 |
| | ARLINGTON, TX 76010 |
| | SAN ANTONIO, TX 78232 |

| DATE OF BIRTH | FEIN (if applicable) | MARITAL STATUS |
|---|---|---|
| | | |

| PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | PRIMARY E-MAIL ADDRESS: |
|---|---|---|
| (214) 727-2790 | | SECONDARY E-MAIL ADDRESS: |

| NAME OF SPOUSE (First, Middle, Last) (if applicable) | SPOUSE'S MAILING ADDRESS (if applicable) |
|---|---|
| | |

| DATE OF BIRTH | FEIN (if applicable) | MARITAL STATUS |
|---|---|---|
| | | |

| PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | PRIMARY E-MAIL ADDRESS: |
|---|---|---|
| (214) 727-2790 | | SECONDARY E-MAIL ADDRESS: |

| CONTACT | X | CONTACT INSURED |
|---|---|---|

| NAME OF CONTACT (First, Middle, Last) | CONTACT'S MAILING ADDRESS |
|---|---|
| BARDIA BAHERI | |

| PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | |
|---|---|---|
| (214) 727-2790 | | |

| WHEN TO CONTACT | PRIMARY E-MAIL ADDRESS: |
|---|---|
| ASAP | SECONDARY E-MAIL ADDRESS: |

## LOSS

| LOCATION OF LOSS   BEKA ONE, LLC | POLICE OR FIRE DEPARTMENT CONTACTED |
|---|---|
| STREET: REDONDO PLACE | |
| CITY, STATE, ZIP: 903 EAST BITTERS RD., SAN ANTONIO, TX 78216 | REPORT NUMBER |
| COUNTRY: | |

| DESCRIBE LOCATION OF LOSS IF NOT AT SPECIFIC STREET ADDRESS: |
|---|

| KIND OF LOSS | FIRE | LIGHTNING | FLOOD | | PROBABLE AMOUNT ENTIRE LOSS |
|---|---|---|---|---|---|
| | THEFT | X HAIL | WIND | | |

| DESCRIPTION OF LOSS & DAMAGE (Attach ACORD 101, Additional Remarks Schedule, if more space is required) |
|---|
| |
| |
| DAMAGE TO ROOF, HVAC, EXHAUSTS OUTLETS RESULTING FROM HAIL |
| |

| REPORTED BY | REPORTED TO |
|---|---|
| INSD | AGENCY |

ACORD 1 (2010/02)

© 1988-2010 ACORD CORPORATION. All rights reserved.

APPX 160

The ACORD name and logo are registered marks of ACORD

RLI_000002

**To:** RDA Martin & Sons Insurance Agency, LTD[debbie@rdamartinltd.com]
**Bcc:** Broker Ack Notifications[correspondence.routing@rlicorp.com]
**From:** Trevor Terry
**Sent:** Fri 10/16/2020 8:03:00 PM
**Subject:** Broker Acknowledgement  RLI INSURANCE COMPANY Claim:00489674 Policy: RKA0300001

October 16, 2020

| | |
|---|---|
| Claim Number: | 00489674 |
| Claimant: | BEKA ONE, LLC |
| DOL: | 05/27/2020 |
| Policy Number: | RKA0300001 |
| Insured: | BEKA ONE, LLC |
| Examiner: | Trevor Terry, 404-315-9515  x1024  Trevor.Terry@rlicorp.com |

Thank you for submitting this matter to us on 10/16/2020.  We are sending this notice to let you know we got it!

We truly appreciate our relationship with BEKA ONE, LLC.  We realize that being involved in a claim can be stressful but we look forward to working with you through this process.  This matter has been assigned to Trevor Terry.  We will contact you as soon as possible.

If you have any questions in the meantime, you can contact the Claim Department at 800-444-0406. You can also send us an email at claimhelp@rlicorp.com or visit the 'Chat with us!' feature on the Claims page at www.rlicorp.com to chat with a live representative.

Sincerely,

The RLI Claim Team

**RLI Correspondence Tracking Token: Please do not alter or remove**
[q+0PoeaCWtewFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**

RLI_000003



**ENGLE MARTIN & ASSOCIATES**
Adjusters & Claims Administrators

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

November 9, 2020

RLI Insurance Company

Attention: Shawn Garner

*Sent via Electronic Mail:* claimhelp@rlicorp.com; Shawn.Garner@rlicorp.com

RE: **Report Number:** **One**
 **Insured:** **Beka One, LLC**
 Location of Loss: 903 Bitters Rd, San Antonio, TX 78216
 Nature of Loss: Hail (CAT 32) (As Claimed)
 Date of Loss: May 27, 2020 (As Claimed)
 Date Assigned: October 16, 2020
 Date Inspected: October 30, 2020
 Policy Number: RKA0300001
 Our File Number: 1000312890
 **Claim Number:** **00489674**

Dear Mr. Garner:

This will serve to acknowledge receipt of above referenced assignment on May 27, 2020. We contacted the insured representative, Mr. Bardia Baheri. Mr. Baheri requested we contact the insured's preferred contractor, Mr. Mike Hiser with Empire Roofing. As such, we contacted Mr. Hiser and scheduled our inspection for October 30, 2020.

**ESTIMATE OF LOSS:**          TBD

**DEDUCTIBLE:**          (Please Advise)

**NET ESTIMATE OF LOSS:**          **At your discretion**

It is our understanding that the insured is making a claim for replacement of the roofing system. The approximate cost if the insured were to replace the roofing system including substrate and membrane would be $700,000.00. Per your instructions we are in the process of securing budgets from structural engineering firms as well as building consulting firms to provide to your office for review and consideration.



**EXHIBIT**

**A-3**

www.englemartin.com

RLI_000010



1000312890
Page 2

## COVERAGE:

To date we have not received a copy of the policy. If you would like our office to review coverage, please provide a copy of the policy to our office at your convenience.

## COINSURANCE:

At your convenience, please advise if the policy contains a coinsurance provision and if you would like our office to prepare a building valuation to prepare said provision.

## OTHER INSURANCE:

We are unaware of any other first party insurance available to the insured.

## INSURED:

The named insured is identified as Beka One, LLC. Our primary point of contact has been the insured representative, Mr. Bardia Baheri. Mr. Baheri may be contacted by telephone at (214) 727-2790. Additionally, we have been in contact with the insured's representative, Mr. Mike Hiser with Empire Roofing. Mr. Hiser may be contacted by telephone at (210) 669-6938 or by email at mike@empireroofing.com.

## RISK:

## Building:

The subject location is identified as a single-story strip mall. As per the Bexar County appraisal district, the building contains 50,889 square feet and the building was constructed circa 1986. The exteriors are masonry, and the flat roofing system contains an EPDM membrane.

At the time of our inspection the building appeared to be in average condition in comparison to buildings of similar age and construction. Maintenance at this location also appeared average. Please refer to the enclosed Bexar CAD enclosure regarding leased space information in the building.

## LOSS DESCRIPTION:

**Hail - CAT32 (As Reported).** It is our understanding that the insured is making a claim for replacement of the roofing system due to hail that reportedly fell at the location on May 27, 2020. Additionally, the insured is making a claim for reported damages to air

www.englemartin.com
RLI_000011



1000312890
Page 3

conditioning units and exhaust vents.  **If you would like our office to secure a CoreLogic Hail Report, please advise and we will do so accordingly.**

## USE OF CONSULTANTS/EXPERTS:

### Structural Engineer:

Per your instructions we are in the process of securing budgets from structural engineering firms to assist with the claim. Upon our receipt of the budgets, we will provide same to your office for review and consideration.

### Building Consultant:

Per your instructions we are in the process of securing budgets from building consulting firms to assist with the claim if warranted. Upon our receipt of the budgets, we will provide same to your office for review and consideration.

## INVESTIGATION AND ADJUSTMENT:

Upon our arrival at the subject location we met with the insured's roofing contractor, Mr. Hiser.  At that time, Mr. Hiser advised our office that hail fell at the location on May 27, 2020 resulting in damage specifically to the insulation board below the rubber membrane. Mr. Hiser was not able to provide our office with any information with regards to interior leaks and we are in the process of following up with the insured to determine if interior water intrusion is being claimed in addition to the reported hail.

### Building:

Our inspection of the roofing system revealed approximately ½" - ¾" spatter marks on the air conditioning covers and other oxidized metal surfaces.  Additionally, we observed indentations in the metal vents as well as bent air conditioning coil fins located sporadically across the roofing system.  We noted that the air conditioning units with bent coil fins appear to have since have had a guard installed on the air conditioning units.

As evidence in the enclosed photographs, the roofer completed an inspection of the roofing system prior to our joint inspection and created circular marks on the rubber membrane.  Mr. Hiser stated to our office that it is his position that hail has caused indentations the insulation board below the rubber membrane and therefore the roofing system requires replacement.

Based on our inspection we are unable to determine to what extent if any hail has affected the roofing system.  As such, per your instructions we are in the process of securing

www.englemartin.com
RLI_000012

**ENGLE MARTIN & ASSOCIATES**
Adjusters & Claims Administrators

1000312890
Page 4

budgets from structural engineering firms as well as building consulting firms to provide to your office for review and consideration.

**SUBROGATION:**

To date, we have not identified any avenues of subrogation. We will continue to monitor this aspect of the claim and notify your office immediately should any avenues of subrogation arise.

**SALVAGE:**

Salvage will likely not be a factor in this claim.

**PLAN OF ACTION:**

1. Secure expert budgets, provide them to your office, await your approval and engage said experts on your behalf to assist with the adjustment of the claim
2. Diary status 30 days
3. As you advise

We thank you very much for the referral of this claim. Upon receipt and review of this report, should you have any questions or additional handling instructions, please contact our office. Otherwise, our subsequent report will follow in due course.

Report Prepared By:

**ENGLE MARTIN & ASSOCIATES**

Stephen C. Klink II, AIC
National General Adjuster
sklink@englemartin.com
Cell Phone: (210) 992-6326 | Direct (210) 253-7854

**Enclosures:**

1. Bexar CAD – Property Details
2. Bexar CAD – Leased Space Information
3. Satellite View of Subject Location
4. EMA Inspection Photographs

www.englemartin.com
RLI_000013

**To:**      Claim Help[claim.help@rlicorp.com]
**Cc:**      Shawn Garner[Shawn.Garner@rlicorp.com]; Klink, Stephen[sklink@englemartin.com]
**From:**    Logan, Joey
**Sent:**     Tue 12/22/2020 9:16:59 PM
**Subject:**  Beka One, LLC | Claim #00489674 | REPORT 02 | EMA File #1000312890
Report 02 12-22-20.pdf
01. Nelson Binder of Report 1.pdf
02. Nelson Binder of Report 02.pdf

.......
;;;;;;;

Dear Mr. Garner:

On behalf of Stephen Klink, I am attaching our Report Two with enclosures for your review. Should you have any questions, please feel free to respond directly to Mr. Klink's attention at sklink@englemartin.com.

Thanks,


**Joey Logan**
*Administrative Assistant*
**Engle Martin & Associates**
Birmingham, Alabama
O: 205.437.0084 | TF: 800.818.5619
jlogan@englemartin.com

**Mailing Address**
5565 Glenridge Connector | Suite 900
Atlanta, Georgia 30342
www.englemartin.com

*Connect with us:*



NOTICE: This communication is strictly confidential. If you are not an intended recipient, then any review, use or distribution of it, and/or any action taken or not taken in reliance upon it, is unauthorized, strictly prohibited and may be unlawful. Instead, please immediately notify the sender by return email and then delete this communication and its attachments from your system. Click here to read our Point of Collection Policy.

**From:** Mayo, Jessica
**Sent:** Monday, November 9, 2020 4:25 PM
**To:** claimhelp@rlicorp.com
**Cc:** Shawn Garner ; Klink, Stephen
**Subject:** Beka One, LLC | Claim #00489674 | REPORT 01 | EMA File #1000312890


Dear Mr. Garner:

On behalf of Stephen Klink, I am attaching our Report 01 with enclosures for your review. Should you have any questions, please feel free to respond directly to Mr. Klink's attention at sklink@englemartin.com.

**Thanks,**

**Jessica Mayo**



RLI_000074

***Administrative Assistant***
**Engle Martin & Associates**
Houston, Texas
O: 832.500.0965 | TF: 800.818.5619
jmayo@englemartin.com

**Mailing Address**
5565 Glenridge Connector | Suite 900
Atlanta, Georgia 30342
www.englemartin.com

***Connect with us:***



NOTICE: This communication is strictly confidential. If you are not an intended recipient, then any review, use or distribution of it, and/or any action taken or not taken in reliance upon it, is unauthorized, strictly prohibited and may be unlawful. Instead, please immediately notify the sender by return email and then delete this communication and its attachments from your system. Click here to read our Point of Collection Policy.

RLI_000075



**ENGLE MARTIN & ASSOCIATES**
Adjusters & Claims Administrators

5565 Glenridge Connector
Suite 900
Atlanta, GA 30342

December 22, 2020

RLI Insurance Company

Attention:  Shawn Garner

*Sent via Electronic Mail:*  claimhelp@rlicorp.com; Shawn.Garner@rlicorp.com

| RE: | **Report Number:** | **Two** |
|---|---|---|
| | **Insured:** | **Beka One, LLC** |
| | Location of Loss: | 903 Bitters Rd, San Antonio, TX  78216 |
| | Nature of Loss: | Hail (CAT 32) (As Claimed) |
| | Date of Loss: | May 27, 2020 (As Claimed) |
| | Date Assigned: | October 16, 2020 |
| | Date Inspected: | October 30, 2020 |
| | Policy Number: | RKA0300001 |
| | Our File Number: | 1000312890 |
| | **Claim Number:** | **00489674** |

Dear Mr. Garner:

Please accept this as our status report two in regards to the subject claim.  Please refer to our previous report for additional information.

**ESTIMATE OF LOSS:**          TBD

**DEDUCTIBLE:**          (1% Per Building)

**NET ESTIMATE OF LOSS:**     **At your discretion**

www.englemartin.com

RLI_000076



**ENGLE MARTIN & ASSOCIATES**
Adjusters & Claims Administrators

1000312890
Page 2

## LOSS DESCRIPTION:

**Hail - CAT32 (As Reported).**  It is our understanding that the insured is making a claim for replacement of the roofing system due to hail that reportedly fell at the location on May 27, 2020.  Additionally, the insured is making a claim for reported damages to air conditioning units and exhaust vents.  **If you would like our office to secure a CoreLogic Hail Report, please advise and we will do so accordingly.**

## USE OF CONSULTANTS/EXPERTS:

### Structural Engineer:

Nelson Forensics (Nelson) was retained on behalf of your office to evaluate the building for wind and/or hail damage.  Nelson has completed and we enclose their Binder of Report 1  outlining the following in part. Please refer to the full enclosed report for additional information.

### *ANALYSIS*

*Burnish marks coincident with circular indentations at metal surfaces were limited to one RTU unit housing, metal appurtenances, and the top surfaces of signage. Nelson also observed circular indentations at metal cap flashing and light gauge vent hoods, with no appreciable coincident burnish marks. Indentations consistent with hail impact were not observed at gutters or downspouts. It is Nelson's opinion that the observed indentations do not affect the function or service life of the flashing. Nelson's opinions related to the mechanical units are included in a separate report.*

*Nelson did not observe any pattern of discrete, circular distress to the roof membranes coincident with appreciable burnish marks. Nelson observed the EPDM membrane roofing throughout the subject structure, including detailed evaluation at sample areas and at roof cores. There were no fractures, punctures, or permanent deformation of the EPDM membrane roofing related to hail impact from the May 27, 2020, hail event. Nelson did observe slight indentations and fractures at the facer sheet of the underlying ISO board consistent with hail impact; however, this does not affect the function of the insulation or the integrity of the roof system. Nelson also observed fractures in the ISO board facer sheet at areas that did not have coincident burnish marks. Therefore, it is Nelson's opinion that hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membrane or of the roof system at the subject structure. It is Nelson's further opinion that there are no openings in the building envelope at the subject structure related to hail impact from the May 27, 2020, storm event.*

www.englemartin.com

RLI_000077



1000312890
Page 3

## CONCLUSIONS

*Based on observed conditions, testing performed, weather data, review of available documentation, and analysis; Nelson concludes the following:*

- *Recent hail at the site has been on the order of 1 1/4" to 1 1/2" in diameter, maximum, with the majority of the hail being on the order of 1/2" in diameter or smaller. This recent hail is attributed to the May 27, 2020, storm event.*
- *Hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membranes or of the roof system at the subject structure.*
- *The subject structure has not been damaged by wind from the May 27, 2020, storm event.*
- *There are no openings in the building envelope at the subject structure related to hail impact or wind from the May 27, 2020, storm event.*

\*\*\*

Additionally, we have secured Nelson's Binder of Report 2 which discusses the evaluation of the mechanical equipment. The Report outlines the following Conclusions And Recommendations. Please refer to the full enclosed report for additional information.

## CONCLUSIONS AND RECOMMENDATIONS:

*Based on observations and analysis, Nelson is of the following opinions related to the mechanical equipment at the subject structure:*

- *Coil distress consistent with hailstone impacts on or around the reported date of loss was visible on exposed north, east, and west-facing coil surfaces on eight units;*
- *Coil distress consistent with hail stone impacts on exposed south-facing coil surfaces can be attributed to one or more hail events prior to the date of loss;*
- *On eight of the units, coil distress that can be attributed to a hail event on or around the reported date of loss can be repaired by straightening the bent and flattened fins on the distressed coils;*
- *On five of the units, the coil distress can be attributed to one or more hail events prior to the date of loss and is considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended;*

www.englemartin.com

RLI_000078



1000312890
Page 4

- *Based on the limited extent of the hail distress, there has been negligible, if any, reduction in unit cooling capacity and negligible, if any, increases in unit condensing pressure and corresponding mechanical and thermal stresses that can be attributed to hailstone impacts;*
- *The limited indentations on one of the GVs and EFs covers related to hail stone impacts occurred from a hail event on or before the date of loss. These indentations have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.*

**Building Consultant:**

JS Held was retained on behalf of your office to assist with the adjustment of this claim. We have provided JS Held with copies of the engineering Reports for analysis.

**INVESTIGATION AND ADJUSTMENT:**

Upon your receipt and review of this report, we request that you please contact our office to discuss further handling. In the interim, we will diary our file 30 days.

**PLAN OF ACTION:**

1. Diary status 30 days
2. Await contact and further instructions from your office
3. As you advise

Upon receipt and review of this report, should you have any questions or additional handling instructions, please contact our office. Otherwise, our subsequent report will follow in due course.

Report Prepared By:

**ENGLE MARTIN & ASSOCIATES**

Stephen C. Klink II, AIC
National General Adjuster
San Antonio, Texas Office
sklink@englemartin.com
M: 210.992.6326

www.englemartin.com
RLI_000079



1000312890
Page 5


**<u>Enclosures:</u>**

1. Nelson Binder Report 01
2. Nelson Binder Report 02

www.englemartin.com

RLI_000080

N E L S O N

# Storm Distress Evaluation

**PROJECT FILE NO.**
28939

**CLAIM NO.**
00489674

**STRUCTURE IDENTIFICATION**
Beka One, LLC
903 Bitters Road
San Antonio, Texas 78216

**PREPARED FOR**
Stephen Klink
Engle Martin & Associates
45 NE Loop 410, Suite 690
San Antonio, Texas 78216

**1-877-850-8765**
**www.nelsonforensics.com**

RLI_000081



December 21, 2020

Stephen Klink
Engle Martin & Associates
45 NE Loop 410, Suite 690
San Antonio, Texas 78216


| File: | Beka One, LLC | Nelson File No.: | 28939 |
| | 903 Bitters Road | Claim No.: | 00489674 |
| | San Antonio, Texas 78216 | Date of Loss: | 5/27/2020 |

Dear Mr. Klink:

Nelson Forensics, LLC is pleased to submit this report for the above-referenced file. By signature below, this report was authored by and prepared under the direct supervision of the undersigned professionals.

Please contact us if you have any questions regarding this report.

With kindest regards,

**NELSON FORENSICS, LLC**
Texas Certificate of Registration F-17167


Stewart M. Verhulst, M.S., P.E., RRC
Vice President

Aubrey Smading, M.S., P.E.
Project Director

Nelson: Report1-28939.doc.

# REPORT

REPORT

RLI_000083

## INTRODUCTION

### GENERAL INFORMATION

| | |
|---|---|
| Date of Investigation: | November 23, 2020 |
| Present at Investigation: | Stewart Verhulst, P.E. (Nelson Forensics, LLC)<br>Aubrey Smading, P.E. (Nelson Forensics, LLC)<br>Laura Schulte, P.E. (Nelson Forensics, LLC)<br>Representatives of Empire Roofing |
| Testing Performed: | Roof condition survey<br>Roof coring<br>Laboratory analysis of roof membrane samples |

### AUTHORIZATION AND PURPOSE

Nelson Forensics, LLC (Nelson) was authorized by Mr. Stephen Klink with Engle Martin & Associates (client) to evaluate the commercial shopping center structure located at 903 Bitters Road in San Antonio, Texas (subject structure), and determine the extent of distress to the roof and exterior related to wind and hail on the reported date of loss.

### SCOPE OF INVESTIGATION

Nelson conducted a visual evaluation of the subject structure's exterior and roof, during which Nelson graphically and photographically documented general site conditions and observed distress. Testing performed as part of this evaluation consisted of a roof condition survey, roof coring, and laboratory analysis of roof membrane samples.

This report was not prepared for use in a real estate transaction. It was prepared for the purpose and for the client as indicated above. Any and all usage or reliance upon this report by parties other than the client is expressly prohibited.

### DESCRIPTION OF STRUCTURE

The subject structure was a one-story commercial building serving as a shopping center. The exterior of the structure consisted of concrete tilt-up panels, partially clad with brick veneer. The roof of the subject structure consisted of six (6) roof sections with ethylene propylene diene monomer (EPDM) roof coverings. Based on available documentation, the structure was constructed in approximately 1986 (Bexar AD 2020). An aerial image of the structure with roof sections indicated by Nelson's nomenclature is provided in **Figure 1** for reference. Neither design nor construction documentation was available for review at the time of this writing.

RLI_000084

Storm Distress Evaluation
December 21, 2020
Page 2

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 1.** Aerial image of the subject structure, dated December 8, 2018, indicating roof sections – Annotation by Nelson (Google LLC 2020)

RLI_000085

Storm Distress Evaluation
December 21, 2020
Page 3

Project Name: Beka One, LLC
Nelson File No.: 28939

## OBSERVATIONS

Photographic documentation and other field-obtained data related to the structure are being maintained in Nelson's file. Select photographs are included within the body of this report and may be presented for information only or for a general representation of the condition of the structure. Nelson observed the following relevant to the scope of this assignment:

### SITE AND EXTERIOR

- ❑ Isolated circular indentations with coincident burnish marks in the top surfaces of signage attached to the structure (**Figure 2**).

- ❑ Burnish marks with no coincident indentations measuring up to 3/4" in diameter at electrical cabinets (**Figure 3**). Burnish marks indicated a slight north-to-south directionality.

- ❑ No circular indentations in gutters or downspouts.

- ❑ Irregularly-shaped deformations at ground level in a portion of the downspouts (**Figure 4**).

- ❑ No pattern of circular distress at the painted exterior walls.

- ❑ Deteriorated sealant and displaced signage at the Miss Ellie's Pizza sign (Suite 301) (**Figure 5**).

- ❑ No displacement of signage framing or attachment.



**Figure 2.** Circular indentation with coincident burnish mark in top surface of signage



**Figure 3.** Burnish marks with no coincident indentations at electrical cabinet

RLI_000086

Storm Distress Evaluation
December 21, 2020
Page 4

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 4.** Irregularly-shaped deformations at ground level of downspouts



**Figure 5.** Deteriorated sealant and displaced signage at Suite 301

## ROOF

- Burnish marks at the surfaces of the roof membranes measuring up to 7/8" across, with no coincident tears or distress to the membrane (**Figure 6** and **Figure 7**).

- Isolated fractures in the roof membranes with no coincident burnish marks (**Figure 8**). The fracture edges were typically aged/deteriorated, and multiple fractures were angular in shape (**Figure 9**). Fractures were most frequently observed at Roof Section 1, and were very isolated at the remaining roof sections.

- Isolated surface-level gouges that did not penetrate through the membranes (**Figure 10**).

- Slices and angular gouges in the membranes at isolated locations (**Figure 11**).

- Burnish marks typically measuring less than 1/2" across, with isolated burnish marks measuring up to 1" across, and not coincident with indentations at rooftop units (RTUs) (**Figure 12** and **Figure 13**). Burnish marks indicated a slight north-to-south directionality.

- Slight indentations coincident with burnish marks at one RTU with metal housing with a thickness that measured 22-gauge, located on Roof Section 3 (**Figure 14**).

- Burnish marks at other metal surfaces, measuring up to 1 1/4" across.

- Circular indentations measuring up to 3/4" in diameter, with no coincident burnish marks, in the metal cap flashing (**Figure 15**).

RLI_000087

Storm Distress Evaluation
December 21, 2020
Page 5

Project Name: Beka One, LLC
Nelson File No.: 28939

❑ Circular indentations measuring up to 1" in diameter in light-gauge vent hoods, with no coincident burnish marks (**Figure 16**).

❑ Circular deformations in condenser coil fins measuring up to 1" in diameter (**Figure 17**).

❑ Remedial guards for the coil fins at some RTUs.

❑ Isolated unadhered membrane patches, with dirt and debris below the patches (**Figure 18**).

❑ Deterioration and separations at membrane patches and curb flashing (**Figure 19**).

❑ No displacement of the roof membrane or appurtenances.



**Figure 6.** Burnish mark at membrane with no coincident distress



**Figure 7.** Burnish mark at membrane with no coincident distress



**Figure 8.** Fracture in membrane with no coincident burnish mark



**Figure 9.** Close up view of **Figure 8**

RLI_000088

Storm Distress Evaluation
December 21, 2020
Page 6

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 10.** Surface-level gouge with no penetration of membrane



**Figure 11.** Angular gouges in membrane



**Figure 12.** Burnish mark measuring 3/4" in diameter with no coincident indentation



**Figure 13.** Burnish mark measuring 1/2" in diameter with no coincident indentation



**Figure 14.** Circular indentation coincident with burnish mark at RTU with 22-gauge thick metal housing



**Figure 15.** Circular indentation at metal cap flashing

RLI_000089

Storm Distress Evaluation
December 21, 2020
Page 7

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 16.** Circular indentations in light-gauge vent hood



**Figure 17.** Circular deformations in condenser coil fins



**Figure 18.** Unadhered membrane patch with debris under patch



**Figure 19.** Deterioration and separation at curb flashing

RLI_000090

Storm Distress Evaluation
December 21, 2020
Page 8

Project Name: Beka One, LLC
Nelson File No.: 28939

## TESTING PERFORMED

### ROOF MEMBRANE CONDITION SURVEY

Nelson performed a roof membrane condition survey by selecting and evaluating five representative sample areas at the roof of the subject structure, in addition to observations throughout the roof sections at the subject structure. The approximate locations of the sample areas are indicated in **Figure 20**, below.



**Figure 20.** Aerial image of subject structure indicating sample area locations – Annotation by Nelson (Google LLC 2020)

RLI_000091

Storm Distress Evaluation
December 21, 2020
Page 9

Project Name: Beka One, LLC
Nelson File No.: 28939

The sample areas were chosen to represent the general condition of the roof membranes. Within the sample areas, the top surface of the roof membrane was evaluated for evidence of distress potentially consistent with hailstone impact. Such distress may include discrete circular/semi-circular fractures or indentations. Nelson also evaluated the membrane surface for fracturing or punctures, regardless of cause. The purpose of the evaluations was to identify distress marks or locations on the membrane that were potentially struck by hailstones, and to identify locations where the membrane could be further evaluated via roof coring.

**Table 1,** below, lists the representative sample areas and summarizes the observed distress within the sample areas. The fracture observed at Sample Area #1 did not have a coincident burnish mark, was angular in shape, and had an appearance consistent with aging and weathering at the fracture edges (**Figure 9**).

**Table 1.** Summary of Roof Membrane Condition Survey

| Sample Area | Area Surveyed | Areas of Distress Potentially Consistent with Hail Impact | Total Fractures or Punctures |
|---|---|---|---|
| SA #1 | 1000 ft.$^2$ | 0 | 1 |
| SA #2 | 1000 ft.$^2$ | 0 | 0 |
| SA #3 | 900 ft.$^2$ | 0 | 0 |
| SA #4 | 900 ft.$^2$ | 0 | 0 |
| SA #5 | 900 ft.$^2$ | 0 | 0 |

## ROOF MEMBRANE CORING

Roof membrane coring was performed at a total of six (6) locations at the roof of the subject structure, where 12"x12" membrane samples were extracted for laboratory testing. Cores were extracted at locations of burnish marks or distress at the surface of the roof membrane identified as potentially consistent with hailstone impact. The roof coring was performed by Empire Roofing and was observed and documented by Nelson. The approximate core locations are indicated in **Figure 21**, on the following page.

Coring revealed that the roofing assembly consisted of an EPDM membrane, over 1 1/2" polyisocyanurate insulation (ISO board), over a steel deck (**Figure 22**). Remnants of perlite were observed within the deck flutes. The conditions observed at the individual core locations and the substrate moisture conditions are summarized in **Table 2**. Nelson used a Protimeter™ Surveymaster™ to assess the moisture condition of the ISO board substrate at a portion of the coring locations. The relative values provided by the Surveymaster™ can be used to determine if a material is in a dry, damp, or wet state. The meter measures the electrical impedance properties of the tested materials to infer moisture conditions and does not directly measure the amount of moisture in the tested materials.

RLI_000092

Storm Distress Evaluation
December 21, 2020
Page 10

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 21.** Aerial image of subject structure indicating core locations – Annotation by Nelson (Google LLC 2020)

RLI_000093

**Table 2.** Summary of Observations and Moisture Conditions at Coring Locations

| Coring Location | Observations / Moisture Assessment |
|---|---|
| Core #1 | A burnish mark at the membrane surface, with a slight indentation in the ISO board below the burnish mark (**Figure 23**). The ISO board indicated a date of 2002. No fracture to the membrane was observed. There was no evidence of moisture and the substrate was dry to the touch. |
| Core #2 | A burnish mark at the membrane surface, with a fracture measuring 7/8" across at the facer sheet of the ISO board below the burnish mark (**Figure 24**). An adjacent fracture to the ISO board with no coincident burnish mark at the membrane was also observed. There was no evidence of moisture and the substrate was dry to the touch. The facer sheet of the ISO board did exhibit a stain, located at the edge of the sample, away from the area of interest. |
| Core #3 | A burnish mark at the membrane surface, with a fracture measuring 5/8" across at the facer sheet of the ISO board below the burnish mark (**Figure 25**). No fracture or deformation was observed at the membrane. There was no evidence of moisture and the substrate was dry to the touch. |
| Core #4 | A burnish mark at the membrane surface, with a circular deformation in the ISO board below the burnish mark. No fracture or deformation was observed at the membrane. There was no evidence of moisture and the substrate was dry to the touch. |
| Core #5 | A burnish mark at the membrane surface, with a fracture at the facer sheet of the ISO board below the burnish mark. An additional fracture was observed at the facer sheet that was not coincident with any marking at the membrane. There was no evidence of moisture and the substrate was dry to the touch. |
| Core #6 | An angular slice/gouge in the membrane and puncturing of the membrane, with no coincident burnish marks (**Figure 26**). A fracture and staining at the ISO board were observed coincident with the membrane distress (**Figure 27**). There was dark staining at the ISO board, but the substrate was dry to the touch. No moisture was detected with a Protimeter in search mode. Some surface corrosion was observed on the roof deck. |

RLI_000094

Storm Distress Evaluation
December 21, 2020
Page 12

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 22.** Roofing assembly



**Figure 23.** Slight indentation in ISO board at Core #1



**Figure 24.** Fracture in facer sheet of ISO board at Core #2



**Figure 25.** Fracture in facer sheet of ISO board at Core #3



**Figure 26.** Membrane surface at Core #6



**Figure 27.** Fracture and staining of ISO board at Core #6

RLI_000095

## LABORATORY ANALYSIS OF ROOF MEMBRANE SAMPLES

Nelson visually evaluated the EPDM membrane samples from the roof core locations within a laboratory setting for evidence of permanent deformations consistent with hail impact. As discussed previously, the core locations were chosen during Nelson's site visit at areas of interest (AOIs) with burnish marks or other distress for further evaluation. There was no fracturing of the EPDM and there was no evidence of permanent deformation at the membrane at the AOIs (**Figures 28** through **33**). The cuts/slices and the puncturing of the membrane at Core sample #6 are consistent with mechanical impact or interaction and are not related to hail impact.



**Figure 28.** Core sample #1. No deformation at the area of interest.



**Figure 29.** Core sample #2. No deformation at the area of interest.



**Figure 30.** Core sample #3. No deformation at the area of interest.



**Figure 31.** Core sample #4. No deformation at the area of interest.

RLI_000096

Storm Distress Evaluation
December 21, 2020
Page 14

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 32.** Core sample #5. No deformation at the area of interest.



**Figure 33.** Core sample #6. No deformation at the area of interest. Multiple cuts/slices in the membrane.

RLI_000097

Storm Distress Evaluation
December 21, 2020
Page 15

Project Name: Beka One, LLC
Nelson File No.: 28939

## TECHNICAL BACKGROUND

### TYPICAL HAIL DAMAGE TO ROOFING SYSTEMS

The impact energy from a hailstone is a function of multiple variables, including hail size and density, the velocity at the time of impact, and the angle of impact. The larger the hailstone and the faster it is moving at impact, the greater momentum and kinetic energy it has, increasing the probability that it will cause damage to an impacted object. The angle at which the hailstone impacts a surface affects the magnitude of the impact force. Hail that impacts perpendicular to a roof surface is generally more damaging than hail that impacts at an angle because angled impacts deliver more of a glancing blow. Because the terminal velocity of hailstones is higher for larger hailstone sizes, the impact energy increases significantly with increases in hailstone size.

The vast majority of hailstorms contain hailstones that are relatively small (less than 1" diameter). These small hailstones can cause damage to crops and property, but would not be expected to cause damage to the majority of roof systems. Hail impact typically manifests as a concave indentation or burnish mark at the surface of the impacted material.

A burnish mark (commonly referred to as a "splash" or "spatter" mark) results when an object, such as a hailstone, removes the exterior layer, algae, dirt, oxidation, or film on the surface of a material. This leaves a localized clean area amongst the weathered or dirty surface. Such burnish marks associated with hail events commonly result in a freckled or mottled appearance on the impacted surface. Additionally, the shape of the burnish marks can indicate the directionality of hailstone impacts on a surface. With the passage of time, burnish marks become less distinct as the surface of the material naturally weathers.

In addition to appearing on roofing materials themselves, burnish marks are frequently seen on exposed metal surfaces, such as flashing, vent hoods, and equipment cabinets. Painted surfaces and siding can show burnish marks as well, depending on the characteristics of the surface. The absence of burnish marks on a painted surface is not a definitive indication that no hail has occurred (Noon 2001).

### Hail Sizing

Evaluation of indentations, burnish marks, and the nature of impact-related distress (or the lack thereof) throughout a given site provides useful information that can be used to estimate the size and characteristics of hail that has occurred at the site.

RLI_000098

As a rule of thumb, indentations in typical metal panel roofing and/or cap flashing (most commonly 24 or 26 gauge thickness) are on the order of one-half the size of the impacting hailstone (Noon 2001, Crenshaw and Koontz 2002). Different types and thickness of metals may exhibit differing indentation measurements for a given hailstone impact. Factors such as the angle of impact and the impacted surface's support conditions will also affect the depth and diameter of indentations. Additionally, the physical characteristics of the hail can affect the appearance and nature of indentations in a given surface.

## WIND DAMAGE

The flow of wind around a building creates a variety of pressures on the building surfaces. Wind flowing toward a building surface creates positive pressure, acting toward the surface. Wind flowing away from, or separating from, a building surface creates negative pressure (suction), acting away from the surface (ASCE 2017, ASCE 2014). These pressures result in wind forces (also commonly referred to as "wind loads") imposed on building components and systems.

As wind flows over abrupt changes in building geometry, the flow will separate from the building, creating negative (suction) pressures at, and in the vicinity of, these zones. Depending on the geometry of a specific building, the highest negative pressures often occur near the windward edge of the roof; near a hip, ridge, or peak of the roof; or near a corner of the building. Damage to exterior elements of a building due to high winds is most commonly initiated at these high pressure zones.

Wind damage to a structure is a function of the severity of the wind forces and the condition of the building, including the type and quality of construction, and the extent to which the building has been maintained. For typical construction, the first expected damage associated with high winds is damage to susceptible architectural elements or appurtenances at the exterior or roof, followed by damage to (or loss of) the roof covering. With increasing wind speeds/forces, damage would then progress to other exterior architectural elements (e.g. veneer, windows, and doors), and then to structural components and systems.

Wind-borne debris travels with substantial kinetic energy and momentum, and has the potential to cause impact damage to building components. Debris impact can cause damage ranging from minor abrasions to breaches in the exterior cladding and building envelope, to localized structural damage at impacted areas (ASCE 2014).

Damage that creates openings in the building envelope (generally the roof or exterior walls) may allow water penetration into the interior.

RLI_000099

## SINGLE-PLY THERMOSET MEMBRANES

Thermoset membranes, such as ethylene propylene diene monomer (EPDM), consist of flexible sheet materials that are used in one-ply or one-layer configurations as low-slope roof membranes. Thermoset membranes are composed of chemically cross-linked polymers, meaning the membrane material is cured or vulcanized. Once cured, thermoset materials can only be bonded to like materials with an adhesive once they are fully cured because new molecular linkages cannot be formed. EPDM roofs are typically mechanically fastened to their substrate, fully adhered to their substrate, or installed in a loose-laid application with rock ballast over the membrane (NRCA 2019).

Typical distress of EPDM membranes includes failed seams and accidental punctures. EPDM membranes may also experience distress related to membrane shrinkage. Loose-laid ballasted and mechanically fastened systems are more susceptible to shrinkage than adhered systems.

RLI_000100

Storm Distress Evaluation
December 21, 2020
Page 18

Project Name: Beka One, LLC
Nelson File No.: 28939

## WEATHER DATA

Nelson reviewed historical weather data to provide insight into the history of hail and wind events in the vicinity of the subject site and to supplement on-site observations. The information included public information maintained and made available by the National Oceanic and Atmospheric Administration (NOAA) in addition to site-specific weather estimates obtained from a third-party forensic weather service.

Reported weather events and/or estimates may not be directly comparable to those actually experienced at the site. Weather can vary from site-to-site during a given storm, and site-specific investigation is important to determine the impact of a weather event at a given site.

### HAIL WEATHER DATA

#### NOAA Reported Hail Events

Nelson queried historical weather data published by NOAA to identify documented reports of hail in the vicinity of the subject site. Sources of the NOAA weather data included the National Centers for Environmental Information (NCEI) and the National Weather Service's (NWS) Storm Prediction Center (SPC). Nelson limited the data query to reports of hail 0.75" in diameter and larger within a radius of approximately five miles from the subject site during the time period of January 1, 2009, through November 23, 2020 (the date of Nelson's site visit). A summary of the results of the NOAA data query is included in **Table 3**. The distances listed in the table were calculated based on the event latitudes and longitudes provided in the individual hail reports.

As shown in **Table 3**, Nelson's hail query yielded 46 reports of hail on 12 distinct dates meeting the aforementioned search criteria. On the reported date of loss (May 27, 2020), the closest report of hail to the subject site measured 1.25" in diameter, 2.4 miles from the subject site. The closest report of hail to the subject site in the time period queried was on February 10, 2009, with hail measuring 1.75" in diameter reported 0.5 miles from the subject site.

RLI_000101

**Table 3.** Summary of Reported Hail Events from January 1, 2009, through November 23, 2020 (NOAA/NCEI 2020, NOAA/SPC 2020)

| Date | Reported Hailstone Size (in.) | Distance to Site (miles) |
|---|---|---|
| 2/10/2009 | 1.75 | 0.5 |
| 2/10/2009 | 1.00 | 3.6 |
| 2/10/2009 | 1.75 | 0.8 |
| 2/10/2009 | 1.00 | 4.4 |
| 2/10/2009 | 1.25 | 4.5 |
| 2/10/2009 | 1.00 | 0.7 |
| 2/10/2009 | 1.00 | 2.4 |
| 2/3/2012 | 1.00 | 3.9 |
| 2/3/2012 | 1.00 | 3.9 |
| 5/11/2012 | 1.00 | 3.6 |
| 3/10/2013 | 1.00 | 3.0 |
| 3/10/2013 | 1.25 | 2.4 |
| 3/10/2013 | 1.00 | 3.0 |
| 3/10/2013 | 1.25 | 1.9 |
| 3/31/2013 | 1.00 | 3.2 |
| 3/31/2013 | 1.00 | 3.7 |
| 3/31/2013 | 1.00 | 4.5 |
| 4/2/2013 | 1.00 | 4.9 |
| 4/7/2014 | 0.88 | 3.3 |
| 4/7/2014 | 0.88 | 4.0 |
| 4/7/2014 | 0.88 | 4.4 |
| 4/12/2016 | 1.50 | 3.9 |
| 4/12/2016 | 2.00 | 2.4 |
| 4/12/2016 | 3.00 | 4.8 |
| 4/12/2016 | 1.50 | 4.4 |
| 4/25/2016 | 1.00 | 2.6 |
| 4/25/2016 | 1.00 | 2.6 |
| 4/25/2016 | 1.50 | 2.6 |
| 4/29/2016 | 1.75 | 2.5 |
| 4/29/2016 | 1.75 | 2.5 |
| 4/29/2016 | 1.00 | 0.9 |
| 4/29/2016 | 1.00 | 2.2 |
| 4/29/2016 | 1.75 | 3.5 |
| 2/19/2017 | 1.00 | 3.6 |
| 5/27/2020 | 1.50 | 4.5 |
| 5/27/2020 | 1.00 | 3.1 |
| 5/27/2020 | 1.25 | 4.1 |
| 5/27/2020 | 1.00 | 3.7 |
| 5/27/2020 | 1.75 | 3.6 |
| 5/27/2020 | 1.00 | 2.6 |
| 5/27/2020 | 1.75 | 2.6 |
| 5/27/2020 | 1.25 | 2.4 |
| 5/27/2020 | 2.00 | 2.6 |
| 5/27/2020 | 2.00 | 3.2 |
| 5/27/2020 | 1.00 | 4.4 |
| 5/27/2020 | 2.00 | 4.7 |

RLI_000102

### Site-specific Hail Verification Report

Nelson ordered a "Hail Verification Report" for the site from CoreLogic Weather Verification Services (CoreLogic). The report provides the estimated maximum hailstone size at and within one, three, and 10 miles of the subject site for storm events subsequent to January 1, 2009, with hail at least 0.75" in diameter estimated to have occurred within three miles of the site. The report does not quantify estimates of hail less than 0.75" in diameter for any qualifying storm event. The estimated maximum hailstone sizes are based on a proprietary algorithm and are not a direct measurement of actual hailstones that fell at the subject site. The report was generated on December 1, 2020, and provides reports inclusive of November 29, 2020. A copy of the report is provided in the **Appendix** of this report.

CoreLogic estimates that qualifying hail occurred at the site on five (5) dates in the time period considered. The largest hail events reported by CoreLogic at the subject site measured 1.3" in diameter and occurred on May 27, 2020 (the reported date of loss), and February 10, 2009. Hail measuring 1.8" in diameter was estimated to have occurred within one mile of the subject site on the reported date of loss. CoreLogic also estimated hail measuring 1" in diameter at the subject site on April 12, 2016, with hail measuring 1.6" in diameter estimated to have occurred within one mile of the subject site on that date.

### WIND WEATHER DATA

### NOAA Reported Wind Events

Nelson queried historical weather data published by NOAA to identify documented reports of elevated wind speeds in the vicinity of the subject site. Sources of the NOAA weather data included the National Centers for Environmental Information (NCEI) and the National Weather Service's (NWS) Storm Prediction Center (SPC). Nelson limited the data query to reports of wind speeds of 58 mph and higher within a radius of approximately five miles from the subject site during the time period of January 1, 2009, through November 23, 2020 (the date of Nelson's site visit). A summary of the results of the NOAA data query is included in **Table 4**. The distances listed in the table were calculated based on the event latitudes and longitudes provided in the individual wind reports.

RLI_000103

Storm Distress Evaluation
December 21, 2020
Page 21

Project Name: Beka One, LLC
Nelson File No.: 28939

**Table 4.** Summary of Reported Wind Events from January 1, 2009, through November 23, 2020
(NOAA/NCEI 2020, NOAA/SPC 2020)

| Date | Reported Wind Speed (mph) | Distance to Site (miles) |
|---|---|---|
| 7/26/2010 | 65 | 2.9 |
| 2/19/2017 | 61 | 4.7 |
| 2/19/2017 | 61 | 4.7 |
| 5/27/2020 | 65 | 4.6 |

As shown in **Table 4**, Nelson's wind query yielded four (4) wind events meeting the aforementioned criteria. The highest reported wind speed was 65 mph, reported 2.9 miles from the subject site on July 26, 2010, and 4.6 miles from the subject site on May 27, 2020 (the reported date of loss).

**Site-specific Wind Verification Report**

Nelson ordered a "Wind Verification Report" for the site from CoreLogic. The report provides the estimated wind speed at and within one, three, and 10 miles of the subject site for storm events subsequent to January 1, 2009, with wind speeds of at least 58 mph estimated to have occurred within three miles of the site. The estimated maximum wind speeds are based on a proprietary algorithm and are not a direct measurement of actual wind speeds at the subject site. The report was generated on December 1, 2020, and provides reports inclusive of November 29, 2020. A copy of the report is provided in the **Appendix** of this report.

The highest wind speed reported by CoreLogic at the subject site occurred on July 26, 2010, with an estimated wind speed of 70 mph. On the reported date of loss, May 27, 2020, CoreLogic estimated wind speeds up to 64 mph at the subject site.

RLI_000104

Storm Distress Evaluation
December 21, 2020
Page 22

Project Name: Beka One, LLC
Nelson File No.: 28939

## REVIEW OF AERIAL IMAGERY

Nelson reviewed available historical aerial imagery of the subject structure obtained from Google Earth (Google LLC 2020). Available image dates from Google Earth ranged from January 6, 1995, to April 25, 2020. Nelson noted that the roof coverings at the subject structure were replaced between September 27, 2002 (**Figure 34**), and April 26, 2003 (**Figure 35**).



**Figure 34.** Aerial image of the subject structure, dated September 27, 2002 (Google LLC 2020)



**Figure 35.** Aerial image of the subject structure, dated April 26, 2003 (Google LLC 2020)

RLI_000105

Storm Distress Evaluation
December 21, 2020
Page 23

Project Name: Beka One, LLC
Nelson File No.: 28939

## ANALYSIS

### HAIL ANALYSIS

Based on the weather data reported by CoreLogic, hail measuring 1.3" in diameter was estimated to have occurred at the subject site on the reported date of loss, May 27, 2020. Additionally, hail measuring 1" and 1.3" in diameter was estimated to have occurred at the subject site on April 12, 2016, and February 10, 2009, respectively.

The majority of the observed burnish marks at the subject site, at the roof membranes and at metal surfaces, measured on the order of 1/2" in diameter and smaller. However, Nelson observed burnish marks measuring up to 1 1/4" in diameter at metal surfaces at the site. Nelson did not observe distress to the roof membranes coincident with the burnish marks.

Burnish marks coincident with circular indentations at metal surfaces were limited to one RTU unit housing, metal appurtenances, and the top surfaces of signage. Nelson also observed circular indentations at metal cap flashing and light gauge vent hoods, with no appreciable coincident burnish marks. Indentations consistent with hail impact were not observed at gutters or downspouts. **It is Nelson's opinion that the observed indentations do not affect the function or service life of the flashing.** Nelson's opinions related to the mechanical units are included in a separate report.

Based on the conditions observed at the site, it is Nelson's opinion that recent hail at the site has been on the order of 1 1/4" to 1 1/2" in diameter, maximum, with the majority of the hail being on the order of 1/2" in diameter or smaller. Based on the available weather data, this recent hail occurred during the May 27, 2020, hail event (the reported date of loss).

Nelson did not observe any pattern of discrete, circular distress to the roof membranes coincident with appreciable burnish marks. Nelson observed the EPDM membrane roofing throughout the subject structure, including detailed evaluation at sample areas and at roof cores. There were no fractures, punctures, or permanent deformation of the EPDM membrane roofing related to hail impact from the May 27, 2020, hail event. Nelson did observe slight indentations and fractures at the facer sheet of the underlying ISO board consistent with hail impact; however, this does not affect the function of the insulation or the integrity of the roof system. Nelson also observed fractures in the ISO board facer sheet at areas that did not have coincident burnish marks. **Therefore, it is Nelson's opinion that hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membrane or of the roof system at the subject structure. It is Nelson's further opinion that there are no openings in the building envelope at the subject structure related to hail impact from the May 27, 2020, storm event.**

RLI_000106

Storm Distress Evaluation
December 21, 2020
Page 24

Project Name: Beka One, LLC
Nelson File No.: 28939

## WIND ANALYSIS

The National Weather Service issues a "*severe thunderstorm warning*" or a "*high wind warning,*" as appropriate, when wind gusts reach 58 mph or greater (NWS Definitions 2020). A "*severe thunderstorm*" is defined by the National Weather Service as "*a thunderstorm that produces a tornado, winds of at least 58 mph (50 knots), and/or hail at least 1" in diameter*" (NWS 2020). According to CoreLogic, maximum wind gusts at the property have reached the "*severe thunderstorm*" threshold on four occasions since January 1, 2009 (the time period queried), including on the reported date of loss.

Nelson did not observe any detached or displaced exterior appurtenances or wind-created openings at the subject roof. According to available aerial imagery, the subject roofs are approximately 17 years old. This is generally consistent with the apparent age of the ISO board, as Nelson observed stamps indicating that it was manufactured in 2002. Isolated locations of deterioration and separations at membrane patches and curb flashing are attributed to long-term deterioration and exposure to ultraviolet (UV) radiation over the life of the roof, and are not related to elevated wind forces. The punctures and slices observed at the EPDM roof membrane were aged and weathered in appearance and did not exhibit a pattern of abrasion across the roof surface consistent with recent wind-borne debris. **It is Nelson's opinion that the subject structure has not been damaged by wind from the May 27, 2020, storm event. It is Nelson's further opinion that there are no openings in the building envelope at the subject structure related to wind from the May 27, 2020, storm event.**

RLI_000107

Storm Distress Evaluation
December 21, 2020
Page 25

Project Name: Beka One, LLC
Nelson File No.: 28939

## CONCLUSIONS

Based on observed conditions, testing performed, weather data, review of available documentation, and analysis; Nelson concludes the following:

- ❑ Recent hail at the site has been on the order of 1 1/4" to 1 1/2" in diameter, maximum, with the majority of the hail being on the order of 1/2" in diameter or smaller. This recent hail is attributed to the May 27, 2020, storm event.

- ❑ Hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membranes or of the roof system at the subject structure.

- ❑ The subject structure has not been damaged by wind from the May 27, 2020, storm event.

- ❑ There are no openings in the building envelope at the subject structure related to hail impact or wind from the May 27, 2020, storm event.

RLI_000108

Storm Distress Evaluation
December 21, 2020
Page 26

Project Name: Beka One, LLC
Nelson File No.: 28939

## LIMITATIONS

The items observed and documented in this report are intended to be representative of the condition of the exterior and roofing at the subject structure. No attempt has been made to document the condition of every structural and nonstructural element. Only visible items were observed and documented.

This document is the rendering of a professional service, the essence of which is the provision of advice, judgment, opinion, or professional skill.

This report was prepared in order to document distress observed at the subject structure. The opinions presented herein are based on site observations, field information and measurements taken, written and verbal information, and experience, where applicable. No complete review of this structure's conformance to current or previously applicable building codes was performed. However, specific items that may be at issue with the applicable building code requirements may be noted.

This report should not be construed as an assessment of total damages to the structure at the time of site observation. In addition to the observed and documented items of distress, hidden defects may exist that were not readily visible. Also, some damaged areas may have been previously repaired and, unless otherwise noted, were not visible at the time of observation. However, these areas may experience future distress. No representation, guarantee, or warranty as to the future performance of this structure is made, intended, or implied.

This report has been prepared for the purpose of evaluating a claim. Additional construction documents prepared by a design professional may be required and are beyond the scope of this assignment.

In the event that additional information becomes available that could affect the conclusions reached in this investigation, this office reserves the right to review, and, if required, change the opinions presented herein.

This report has been prepared for exclusive use of the client and its representatives. No unauthorized re-use or reproduction of this report, in part or whole, shall be permitted without prior written consent.

Alteration of this document in any way by anyone other than the professionals whose seals appear on the document, in either hard copy or electronic form, is strictly prohibited and may constitute a violation of state and/or federal laws.

RLI_000109

## REFERENCES

Crenshaw, V., & Koontz, J. D. 2002. "Hail: Sizing it Up!" *Western Roofing Magazine*, May/June 2002.

Google LLC. 2020. "Google Earth" (Software). Current Version.

National Oceanic and Atmospheric Administration (NOAA) / National Centers for Environmental Information (NCEI). 2020. "Storm Events Database." Accessed December 2020. http://www.ncdc.noaa.gov/stormevents/.

National Oceanic and Atmospheric Administration (NOAA) / National Weather Service (NWS) / Storm Prediction Center (SPC). 2020. "Storm Reports." Accessed December 2020. http://www.spc.noaa.gov/climo/.

National Roofing Contractors Association (NRCA). 2019. *The NRCA Roofing Manual: Membrane Roof Systems.* Rosemont, IL: NRCA.

National Weather Service (NWS Definitions). 2020. *Definitions, Thresholds, Criteria for Warnings, Watches and Advisories.* Accessed December 2020. https://www.weather.gov/ctp/wwaCriteria.

Noon, Randal K., 2001. *Forensic Engineering Investigation.* Boca Raton, FL: CRC Press.

Bexar Appraisal District (Bexar AD). 2020. "Property Search." Accessed December 2020. http://www.bcad.org/.

RLI_000110

# APPENDIX

APPENDIX

RLI_000111



**Weather Verification Services**

# Hail Verification Report

| Claim or Reference # | 00489674 ALS 28939 |
|---|---|
| Insured/Property Owner | Beka One, LLC |
| Coordinates | Latitude 29.563111, Longitude -98.478901 |
| Date Range | Jan 01, 2009 to Nov 29, 2020 |
| Report Generated | December 1st, 2020 at 00:15:08 UTC |

## Storm Events

| Date | Estimated Maximum Hail Size | | | |
|---|---|---|---|---|
| | At Location | Within 1 mi / 1.61 km | Within 3 mi / 4.83 km | Within 10 mi / 16.09 km |
| May 27, 2020 | 1.3 in / 3.3 cm | 1.8 in / 4.57 cm | 2.1 in / 5.33 cm | 2.1 in / 5.33 cm |
| Feb 19, 2017 | – | – | 0.75 in / 1.91 cm | 0.9 in / 2.29 cm |
| Apr 29, 2016 | 0.9 in / 2.29 cm | 1 in / 2.54 cm | 1.4 in / 3.56 cm | 1.6 in / 4.06 cm |
| Apr 25, 2016 | – | 0.8 in / 2.03 cm | 1.3 in / 3.3 cm | 2.6 in / 6.6 cm |
| Apr 12, 2016 | 1 in / 2.54 cm | 1.6 in / 4.06 cm | 2.3 in / 5.84 cm | 3.8 in / 9.65 cm |
| Apr 2, 2013 | – | – | 0.9 in / 2.29 cm | 1 in / 2.54 cm |
| Mar 9, 2013 | 0.8 in / 2.03 cm | 1 in / 2.54 cm | 1.1 in / 2.79 cm | 1.1 in / 2.79 cm |
| May 11, 2012 | – | – | 1 in / 2.54 cm | 1 in / 2.54 cm |
| Feb 3, 2012 | – | – | 0.75 in / 1.91 cm | 1.5 in / 3.81 cm |
| May 12, 2011 | – | – | 0.8 in / 2.03 cm | 1.5 in / 3.81 cm |
| Mar 31, 2009 | – | 0.75 in / 1.91 cm | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm |
| Feb 10, 2009 | 1.3 in / 3.3 cm | 1.4 in / 3.56 cm | 1.4 in / 3.56 cm | 1.4 in / 3.56 cm |

• Hail dates begin at 6am CST on the indicated day and end at 6am CST the following day.

• Dash "–" indicates 0.75 in / 1.91 cm or larger hail was detected within 3 mi / 4.83 km, but not at location.

• Hail sizes being reported within this report start at 0.75 in / 1.91 cm and increase in 0.1 in / 0.25 cm increments; rounded to the nearest 0.1 in / 0.25 cm.

• This report contains hail events between Jan 01, 2009 and Nov 29, 2020.

# Important Legal Notice and Disclaimer

THIS REPORT AND THE CORRESPONDING DATA IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND ONLY FOR INTERNAL USE BY THE INITIAL PURCHASER/END-USER RECIPIENT HEREOF. NOTWITHSTANDING THE FOREGOING, SUCH PURCHASER/END-USER MAY SHARE THIS REPORT WITH THE OWNER OF THE PROPERTY THAT IS THE SUBJECT OF THE REPORT. CORELOGIC, INC. AND/OR ITS SUBSIDIARIES OR AFFILIATES ("CORELOGIC") DO NOT ASSUME, AND EXPRESSLY DISCLAIM LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE USE OF, OR ANY DECISIONS BASED ON OR IN RELIANCE ON, THIS REPORT AND THE CORRESPONDING DATA

THIS REPORT AND THE CORRESPONDING DATA ARE FURNISHED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, ACCURACY, COMPLETENESS, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE (EVEN IF THAT PURPOSE IS KNOWN TO CORELOGIC). SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO THE USER. IN THAT EVENT, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO NINETY (90) DAYS FROM THE DATE OF THE REPORT AND TO THE DOLLAR AMOUNT OF THE REPORT.

THE CONTENTS OF THIS REPORT ARE PROTECTED BY APPLICABLE COPYRIGHT AND OTHER INTELLECTUAL PROPERTY LAWS AND MAY INCLUDE PROPRIETARY OR OTHER CONTENT OF THIRD PERSONS. NO PERMISSION IS GRANTED TO COPY, DISTRIBUTE, MODIFY, POST OR FRAME ANY TEXT, GRAPHICS, OR USER INTERFACE DESIGN OR LOGOS INCLUDED IN THIS REPORT. ALL USERS OF THIS REPORT AGREE TO HOLD HARMLESS CORELOGIC AND ITS AFFILIATES, EQUITY HOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES AND SUPPLIERS OF THIRD PARTY CONTENT FROM ANY USE OR MISUSE, MISAPPLICATION, ALTERATION OR UNAUTHORIZED DISCLOSURE OF THIS REPORT.

THIS NOTICE AND DISCLAIMER IS INTENDED TO FUNCTION IN HARMONY WITH THE CORELOGIC TERMS OF USE AVAILABLE ON THE WEATHER VERIFICATION SERVICES WEBSITE. IN THE EVENT OF ANY CONFLICT BETWEEN THE TWO DOCUMENTS, THE CORELOGIC TERMS OF USE SHALL GOVERN.

### Scan to Verify Authenticity



*The original contents of this report are stored online in the original state provided by CoreLogic. Scan this QR Code and it will take you to a link to view the data and verify its authenticity.*

RLI_000113



Weather Verification Services

# Wind Verification Report

| Claim or Reference # | 00489674 ALS 28939 |
|---|---|
| Insured/Property Owner | Beka One, LLC |
| Coordinates | Latitude 29.563168, Longitude -98.478651 |
| Date Range | Jan 01, 2009 to Nov 29, 2020 |
| Report Generated | December 1st, 2020 at 00:18:45 UTC |

## Storm Events

| Date | Estimated Maximum Windspeed | | | |
|---|---|---|---|---|
| | At Location | Within 1 Miles | Within 3 Miles | Within 10 Miles |
| May 27, 2020 | 64 MPH | 64 MPH | 65 MPH | 66 MPH |
| May 24, 2020 | 54 MPH | 57 MPH | 63 MPH | 70 MPH |
| Jun 6, 2019 | 57 MPH | 65 MPH | 71 MPH | 72 MPH |
| Feb 19, 2017 | 62 MPH | 68 MPH | 73 MPH | 79 MPH |
| Dec 12, 2015 | 56 MPH | 58 MPH | 59 MPH | 60 MPH |
| Sep 10, 2015 | 48 MPH | 52 MPH | 60 MPH | 66 MPH |
| Jun 17, 2015 | 57 MPH | 58 MPH | 58 MPH | 59 MPH |
| Jun 12, 2014 | 49 MPH | 53 MPH | 61 MPH | 65 MPH |
| Apr 29, 2013 | 53 MPH | 58 MPH | 61 MPH | 67 MPH |
| May 11, 2012 | -- | 50 MPH | 65 MPH | 69 MPH |
| Sep 2, 2010 | 41 MPH | 45 MPH | 59 MPH | 69 MPH |
| Aug 24, 2010 | 57 MPH | 60 MPH | 61 MPH | 61 MPH |
| Jul 26, 2010 | 70 MPH | 70 MPH | 71 MPH | 71 MPH |
| Jun 2, 2010 | 66 MPH | 66 MPH | 68 MPH | 72 MPH |

• Wind dates begin at 6am CST on the indicated day and end at 6am CST the following day.
• Dash "--" indicates 58 MPH or higher wind was detected within 3 miles, but winds at location were less than 40 MPH.
• Report contains all wind events where winds of 58 MPH or greater were detected within 3 miles of the location.
• Wind speeds being reported within this report represent 3-second wind gusts at 10 meters; starting at 40 MPH and increasing in 1 MPH increments.

©2020 CoreLogic Spatial Solutions LLC          wvs.corelogic.com | (888) 929-4245 | Wind Verification Technology 1.0

RLI_000114

• This report contains wind events between Jan 01, 2009 and Nov 29, 2020.

# Important Legal Notice and Disclaimer

THIS REPORT AND THE CORRESPONDING DATA IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND ONLY FOR INTERNAL USE BY THE INITIAL PURCHASER/END-USER RECIPIENT HEREOF. NOTWITHSTANDING THE FOREGOING, SUCH PURCHASER/END-USER MAY SHARE THIS REPORT WITH THE OWNER OF THE PROPERTY THAT IS THE SUBJECT OF THE REPORT. CORELOGIC, INC. AND/OR ITS SUBSIDIARIES OR AFFILIATES ("CORELOGIC") DO NOT ASSUME, AND EXPRESSLY DISCLAIM LIABILITY FOR ANY LOSS OR DAMAGE RESULTING FROM THE USE OF, OR ANY DECISIONS BASED ON OR IN RELIANCE ON, THIS REPORT AND THE CORRESPONDING DATA

THIS REPORT AND THE CORRESPONDING DATA ARE FURNISHED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY, ACCURACY, COMPLETENESS, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE (EVEN IF THAT PURPOSE IS KNOWN TO CORELOGIC). SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO THE USER. IN THAT EVENT, ANY IMPLIED WARRANTIES ARE LIMITED IN DURATION TO NINETY (90) DAYS FROM THE DATE OF THE REPORT AND TO THE DOLLAR AMOUNT OF THE REPORT.

THE CONTENTS OF THIS REPORT ARE PROTECTED BY APPLICABLE COPYRIGHT AND OTHER INTELLECTUAL PROPERTY LAWS AND MAY INCLUDE PROPRIETARY OR OTHER CONTENT OF THIRD PERSONS. NO PERMISSION IS GRANTED TO COPY, DISTRIBUTE, MODIFY, POST OR FRAME ANY TEXT, GRAPHICS, OR USER INTERFACE DESIGN OR LOGOS INCLUDED IN THIS REPORT. ALL USERS OF THIS REPORT AGREE TO HOLD HARMLESS CORELOGIC AND ITS AFFILIATES, EQUITY HOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, CONTRACTORS, AGENTS, REPRESENTATIVES AND SUPPLIERS OF THIRD PARTY CONTENT FROM ANY USE OR MISUSE, MISAPPLICATION, ALTERATION OR UNAUTHORIZED DISCLOSURE OF THIS REPORT.

THIS NOTICE AND DISCLAIMER IS INTENDED TO FUNCTION IN HARMONY WITH THE CORELOGIC TERMS OF USE AVAILABLE ON THE WEATHER VERIFICATION SERVICES WEBSITE. IN THE EVENT OF ANY CONFLICT BETWEEN THE TWO DOCUMENTS, THE CORELOGIC TERMS OF USE SHALL GOVERN.

### Scan to Verify Authenticity



*The original contents of this report are stored online in the original state provided by CoreLogic. Scan this QR Code and it will take you to a link to view the data and verify its authenticity.*



*Printed on post-consumer recycled stock.*

**1-877-850-8765**

**www.nelsonforensics.com**

**Telaclaim®** - *Online request for professional services.*

RLI_000117

N E L S O N

# Mechanical Equipment Hail Distress Evaluation

**PROJECT FILE NO.**
28939

**CLAIM NO.**
00489674

**STRUCTURE IDENTIFICATION**
Beka One, LLC
903 Bitters Road
San Antonio, Texas 78216

**PREPARED FOR**
Stephen Klink
Engle Martin & Associates
45 NE Loop 410, Suite 690
San Antonio, Texas 78216

**1-877-850-8765**
www.nelsonforensics.com

RLI_000118



December 22, 2020

Stephen Klink
Engle Martin & Associates
45 NE Loop 410, Suite 690
San Antonio, Texas 78216

File:     Beka One, LLC
          903 Bitters Road
          San Antonio, Texas 78216

| Nelson File No.: | 28939 |
|---|---|
| Claim No.: | 00489674 |
| Date of Loss: | 5/27/2020 |

Dear Mr. Klink:

Nelson Forensics, LLC is pleased to submit this report for the above-referenced file. By signature below, this report was authored by and prepared under the direct supervision of the undersigned professional.

Please contact us if you have any questions regarding this report.

With kindest regards,

**NELSON FORENSICS, LLC**
Texas Certificate of Registration F-17167



Laura C. Schulte, P.E.
Project Director

Gregory G. Schober, M.S., P.E.
Technical Director
(Reviewing Engineer)

Nelson: Report2-28939.doc.

*Your Questions. Our People. Expert Solutions.*

APPX 211

RLI_000119

# REPORT

REPORT

RLI_000120

Mechanical Equipment Hail Distress Evaluation                    Project Name: Beka One, LLC
December 22, 2020                                                        Nelson File No.: 28939
Page 1

## INTRODUCTION

### GENERAL INFORMATION

Date of Investigation:                              November 23, 2020

Nelson Representative Present at Investigation:     Laura C. Schulte, P.E.

### AUTHORIZATION AND PURPOSE

Nelson Forensics, LLC (Nelson) was authorized by Mr. Stephen Klink with Engle Martin & Associates (client) to evaluate the mechanical equipment at the subject structure and determine the following:

1.  Does the equipment exhibit distress that can be attributed to hail on or around the reported date of loss?

2.  If hail distress exists, what is the recommended repair for each coil surface?

### SCOPE OF INVESTIGATION

Nelson conducted an on-site visual evaluation of the mechanical equipment at the subject structure and photographically documented the observed condition of the condenser coils. Nelson also performed limited fin straightening on selected coils.

This report was not prepared for use in a real estate transaction. It was prepared for the purpose and for the client as indicated above. Any and all usage or reliance upon this report by parties other than the client is expressly prohibited.

RLI_000121

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 2

Project Name: Beka One, LLC
Nelson File No.: 28939

## OBSERVATIONS

The subject structure was a one-story multi-tenant retail building. An aerial image of the structure is provided in **Figure 1**. The equipment was not uniformly labeled, so for the purpose of discussion, Nelson assigned unit reference ID numbers as shown in **Figure 1**, and references these ID numbers in this report. In **Figure 1**, the units are identified in red. Photographs of every mechanical unit are included in the **Photographs** section of this report. Additional photographs are presented in the body of this report to illustrate specific conditions.

The mechanical equipment included rooftop package units (RTUs), split-system condensing units (CUs), evaporative coolers (ECs), exhaust fans (EFs), and two gravity ventilators (GV). The units were represented by a variety of manufacturers and the serial numbers on the units indicated manufacturing dates ranging from 1995 to 2018.

The condenser coils included round tube plate fin (RTPF), spiny fin, and folded microchannel. Condenser coil surfaces on individual units were oriented in one, two, three, or four cardinal directions depending on the unit design. Individual coil shapes and construction varied by unit and included flat slab, "G", "L", "U", and "V" shapes. The majority of the units were provided with hail guards, including hooded, steel wire, punched steel, and louvered. Other coils were fully exposed.

Coil fin indentation distress consistent with hailstone impacts was visible on exposed coil surfaces facing north, south, east, and west. Burnish marks were observed on painted surfaces facing north, east, and west. Faded burnish marks were observed on painted surfaces facing south.

Coil fin indentations on exposed north-facing surfaces included instances of flattened and crushed fins consistent with more direct hailstone impacts. However, the coil fin indentations on exposed coil surfaces on south, east, and west-facing surfaces generally consisted of discrete instances of bent and flattened fins consistent with hailstone glancing blows. These indentation patterns were consistent with hail originating from the north.

Condenser coils on multiple units also exhibited distress unrelated to hailstone impacts. Large areas of flattened coil fins were consistent with mechanical (non-hail) abrasions and inconsistent with the discrete indentations generally attributed to hailstone impacts.

The GV and two of the EFs had indentations on their aluminum housing covers. The PF, the ECs, and the remainder of the EFs did not exhibit distress that can be attributed to a hail event.

Nelson's observations for each unit are provided in **Table 1** in the **Conclusions and Recommendations** section of this report.

RLI_000122

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 3

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 1:** Aerial image of the subject site, dated November 22, 2019 – Annotated by Nelson (Google LLC 2020)

RLI_000123

## ANALYSIS

### CONDENSER COIL ASSESSMENT

Nelson evaluated condenser coil hail distress and the age of the units to determine, to the extent possible, the timeframe over which the most recent hail event occurred.  A **north-facing** condenser coil manufactured in 2015 exhibited hail impact distress limited to less than 5% of its coil surface (**Figure 2**).  Based on Weather Data discussed in Nelson Report 1 dated December 21, 2020, and observed burnish marks, this distress can be attributed to a hail event on the date of loss.  Any additional distress greater than 5% on a north-facing coil occurred prior to the date of loss and is considered pre-existing (**Figure 3**).



**Figure 2:** Unit 50 north (2015)



**Figure 3:**  Unit 15 north (1995)

RLI_000124

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 5

Project Name: Beka One, LLC
Nelson File No.: 28939

Two **south-facing** condenser coils manufactured in 2017 (**Figures 4** and **5**) exhibited hail impact distress limited to less than 5% of their coil surfaces. Based on Weather Data discussed in Nelson Report 1 dated December 21, 2020, and observed faded burnish marks, this distress can be attributed to one or more hail events prior to the date of loss.



**Figure 4:** Unit 21 south (2017)



**Figure 5:** Unit 36 south

An **east-facing** condenser coil manufactured in manufactured in 2015 exhibited hail impact distress limited to less than 1% of its coil surface (**Figure 6**). Based on Weather Data discussed in Nelson Report 1 dated December 21, 2020, and observed burnish marks, this distress can be attributed to a hail event on the date of loss. Any additional distress greater than 1% on an east-facing coil occurred prior to the date of loss and is considered pre-existing (**Figure 7**).




**Figure 6:** Unit 57 east (2015)



**Figure 7:** Unit 28 east (1995)

RLI_000125

A **west-facing** condenser coil manufactured in 2017 exhibited hail impact distress limited to less than 1% of its coil surface (**Figure 8**). Based on Weather Data discussed in Nelson Report 1 dated December 21, 2020, and observed burnish marks, this distress can be attributed to a hail event on the date of loss. Any additional distress greater than 1% on a west-facing coil occurred prior to the date of loss and is considered pre-existing (**Figure 9**).



**Figure 8:** Unit 21 west (2017)



**Figure 9:** Unit 28 west (1995)

## CONDENSER COIL HAIL DISTRESS

The RTUs and CUs at the subject structure are air-cooled direct-expansion (DX) units. The refrigerant condenser coils are cross flow heat exchangers whose purpose is to transfer the heat of compression from the refrigerant gas to the ambient air and to condense and subcool the refrigerant. The heated refrigerant flows inside the coil tubes and the ambient air flows across the tubes and the external fins. The fins create a large heat transfer surface area to minimize the thermal resistance between the tubes and the ambient airstream.

### Condenser Coil Performance

The driving force for the heat transfer between the heated refrigerant and the ambient air in a refrigerant condenser coil is the temperature differential between the two fluids (the air and the refrigerant); the amount of heat transferred is considered proportional to the difference between the temperature of the air passing across the coil and the saturated condensing temperature of the refrigerant (ASHRAE 2008). The amount of heat transferred is non-linear with respect to the volume of air passing across the coil.

The non-linearity is due to the fact that the temperature differential between the heated refrigerant and the cooler ambient air is greatest under low airflow conditions, which yields a relatively large heat transfer rate. The majority of the heat exchange occurs at a small

RLI_000126

percentage of the design cooling airflow because the temperature differential is greater at reduced airflow. As the airflow across the coil increases, the fluid temperature differential decreases and the heat transfer rate drops off asymptotically as the refrigerant stream approaches the limiting temperature, which in the case of an air-cooled condenser coil, is approximately the temperature of the ambient air.

For example, a 20% reduction in airflow from the design condition will not result in a corresponding 20% decrease in heat transfer. The actual decrease will be considerably less because the temperature differential at the 80% airflow condition is not appreciably greater than the 100% airflow (design) condition and remains considerably less than the temperature differential at, for example, a 50% airflow condition.

**Effect of Hailstone Impacts**

If a coil is damaged by hailstone impacts such that a portion of the fins are bent but the tubes remain intact, the unit can still perform with negligible loss of cooling capacity. The primary reasons include:

- The relationship between the percent of design heat exchange and the percent of design cooling airflow is non-linear, as discussed above;

- Bending multiple discrete areas of fins on the face of the coil will alter the flow pattern of the air across and through the external fins, but will not eliminate it in the damaged areas. The bent fins represent an obstruction to the airflow at the face of the coil, but the coil has depth and the coil face area represents a small fraction of the coil's total heat transfer surface area (the fins on an RTPF or microchannel condenser coil are typically 1-2" deep). Because the bent fins are located on the face of the coil, air will flow around and behind the surface obstruction and regain contact with a portion of the fins behind the surface obstruction. Since the air will find alternate routes across the fin surfaces, a coil with 20% of its face area obstructed, for example, does not lose 20% of its total heat transfer surface or 20% of its heat transfer capacity; the actual loss will be considerably less.

The variables influencing the performance curve of a coil that has experienced hail damage are complex, interrelated, and not easily modeled mathematically. Empirical data has been developed to quantify the specific relationship between condenser coil fin indentations and air-conditioner performance (Sitzmann, et al. 2007). This empirical data is consistent with the non-linear relationship between the percent of design heat exchange capacity and the percent of design cooling airflow, as discussed above. Nelson considers the results of this study when determining the effect of hailstone impacts on a unit's cooling capacity and related mechanical and thermal stresses.

RLI_000127

## Unit Cooling Capacity

The empirical data has shown that when the condenser coil fin indentation distress is limited to 41% or less of the coil's face area, the loss of cooling capacity is negligible (Sitzmann, et al. 2007). The data further shows that the cooling capacity first drops appreciably when indentation distress covers 60% of the total fin area and decreases incrementally, and reaches only a 27% reduction in cooling capacity when the indentation distress covers 100% of the coil's face area. Based on this data, Nelson is of the opinion that when observed condenser coil hail indentations (which are mechanically similar to the fin indentations modeled in the study) are limited to less than 60% of the coil's total face area, the unit cooling capacity is not appreciably affected.

Based on the limited extent of the hail distress on the coil surfaces at the subject structure, it is Nelson's opinion that there has been a negligible, if any, decrease in unit cooling capacity related to the hail indentations that can be attributed to a recent hail event.

## Unit Mechanical and Thermal Stress

A direct relationship exists between a compressor's thermal and mechanical stress and its refrigerant condensing (head) pressure; a higher condensing pressure results in higher thermal and mechanical stresses. Conversely, an inverse relationship exists between a unit's condensing pressure and its cooling capacity; an increase in condensing pressure results in a decrease in cooling capacity. As discussed above, Sitzmann, et al. have shown that when the coil fin indentation distress is limited to 41% or less of a coil's face area, the loss of cooling capacity is negligible, and the cooling capacity first drops appreciably when indentation distress covers 60% of the fin area. Based on the relationship between cooling capacity and condensing pressure, this data indicates that the condensing pressure and corresponding mechanical and thermal stresses are not appreciably affected when coil fin indentations are limited to less than 60%.

Based on Nelson's estimation of the extent of the hail distress on the subject coil surfaces, it is Nelson's opinion that there have been negligible, if any, increases in condensing pressure and corresponding mechanical and thermal stresses that can be related to recent hail impact distress.

## Condenser Coil Repair

Multiple variables influence the reparability of a coil that has experienced hail damage:

- The extent, or density, of indentations on a coil surface. A coil surface that exhibits a limited number of indentations is typically a better candidate for repair than a coil that exhibits indentations over its entire surface.

RLI_000128

- ❑ The characteristics of the indentations. Fins that have been bent or folded are generally easy to repair by straightening, while fins that have been crushed are typically not easily repaired.

- ❑ Coil design and construction. A microchannel coil uses folded fins instead of the plate fins in an RTPF coil. A microchannel coil is generally more resistant to hail impact than an RTPF coil because the folded fins are sandwiched between, and partially protected by, the multiple rows of closely-spaced horizontal microchannel extrusions. However, when the folded fins on a microchannel coil are bent, they can be more difficult to straighten.

- ❑ The material condition of the fins. Fins that are newer and/or materially sound are more easily repaired by straightening than fins that exhibit corrosion and/or brittleness. Fin corrosion and brittleness are generally the result of the coil being located in a marine/coastal environment or of having been subjected to chemical-based coil cleaning.

- ❑ Pre-existing mechanical damage. Pre-existing fin damage such as improper prior fin combing (evidenced by bunching and tearing of fins) or areas of flattened fins caused by mechanical impacts/abrasions or high-pressure power washing can limit the reparability of hailstone indentations superimposed on these damaged areas.

The effectiveness of conventional fin repair methods to restore unit performance has been studied and quantified for typical RTPF condenser coils (Sitzmann, et al. 2007). Where condenser coil hail damage consists of flattened and bent fins, Sitzmann, et al. have shown that the coil can be repaired and the unit's pre-loss performance can be restored by straightening of the individual bent and flattened fins. The purpose of coil fin straightening is to restore both the coil's pre-loss heat transfer surface exposure and the cooling airflow across the coil. Nelson considers these variables and the results of this study when developing its repair recommendations related to hail distress.

Based on the extent and characteristics of the observed hail indentations on the subject coils, and considering the mechanical condition of the coil fins, it is Nelson's opinion that the hail damage on eight of the affected coils can be repaired and the units' pre-loss condition restored by straightening of the individual bent and flattened fins. Nelson successfully straightened representative instances of bent fins with a plastic instrument (**Figures 10** thru **21**). In Nelson's opinion, there is no performance-based reason for condenser coil or unit replacement related to the hailstone impacts on these units. The units with coils that can be repaired by fin straightening are identified in **Table 1** in the **Conclusions and Recommendations** section of this report.

RLI_000129

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 10

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 10:** Unit 15 north-facing coil, before straightening



**Figure 11:** Unit 15 north-facing coil, after straightening



**Figure 12:** Unit 15 east-facing coil, before straightening



**Figure 13:** Unit 15 east-facing coil, after straightening



**Figure 14:** Unit 21 south-facing coil, before straightening



**Figure 15:** Unit 21 south-facing coil, after straightening

RLI_000130

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 11

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 16:** Unit 36 south-facing coil, before straightening



**Figure 17:** Unit 36 south-facing coil, after straightening



**Figure 18:** Unit 41 north-facing coil, before straightening



**Figure 19:** Unit 41 north-facing coil, after straightening



**Figure 20:** Unit 50 north-facing coil, before straightening



**Figure 21:** Unit 50 north-facing coil, after straightening

RLI_000131

Nelson does not recommend combing of multiple rows of distressed fins on an RTPF coil with a fin combing tool without first straightening the individual fins, as this process can cause bunching and tearing of the individual fins and result in a loss of heat transfer capacity. In Nelson's experience, the bent and flattened fins must first be individually straightened, which can be time consuming.

On five units, the observed hail indentations on exposed coil surfaces can be attributed to one or more hail events prior to the date of loss and are considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended.


## OTHER MECHANICAL EQUIPMENT

Nelson observed limited indentations on one of the GVs and two of the EF aluminum housing covers that are consistent with hail stone impacts (**Figures 22** through **24**). The housing cover serves as a protective shield for the fan motor; the observed indentations related to hail have not distorted or created openings in the housings that would compromise their shielding function, affect fan operation, or reduce the equipment service life. Nelson is of the opinion that the observed indentations related to hail stone impacts have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.



**Figure 22:** Unit 13



**Figure 23:** Unit 27

RLI_000132

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 13

Project Name: Beka One, LLC
Nelson File No.: 28939



**Figure 24:** Unit 29

RLI_000133

## CONCLUSIONS AND RECOMMENDATIONS

Based on observations and analysis, Nelson is of the following opinions related to the mechanical equipment at the subject structure:

❑ Coil distress consistent with hailstone impacts on or around the reported date of loss was visible on exposed north, east, and west-facing coil surfaces on eight units;

❑ Coil distress consistent with hail stone impacts on exposed south-facing coil surfaces can be attributed to one or more hail events prior to the date of loss;

❑ On eight of the units, coil distress that can be attributed to a hail event on or around the reported date of loss can be repaired by straightening the bent and flattened fins on the distressed coils;

❑ On five of the units, the coil distress can be attributed to one or more hail events prior to the date of loss and is considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended;

❑ Based on the limited extent of the hail distress, there has been negligible, if any, reduction in unit cooling capacity and negligible, if any, increases in unit condensing pressure and corresponding mechanical and thermal stresses that can be attributed to hailstone impacts;

❑ The limited indentations on one of the GVs and EFs covers related to hail stone impacts occurred from a hail event on or before the date of loss. These indentations have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.

A summary of Nelson's unit observations and repair recommendations is provided in **Table 1** below. Nelson's repair recommendations are limited to distress that can be attributed to a hail event considered recent, based on the distress data and the age of the equipment. Recommendations for distress considered pre-existing, or distress unrelated to hail are beyond the scope of Nelson's assignment and are not included.

RLI_000134

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 15

Project Name: Beka One, LLC
Nelson File No.: 28939

## Table 1 – Unit Observations and Repair Recommendations

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---------|------|--------------|---------------|----------|----------------------------------|
| 1 | York | XP090E09U2KAA5A | N1F4789019 | 2014 | Expanded metal mesh and hooded hail guards<br>North coil face: <25% hail distress<br>South coil face: No hail distress<br>Total coil distress: <15% hail distress<br>**Straighten bent fins** |
| 2 | Greenheck | GB-14-3X-QD | 85104064 | – | Exhaust fan<br>No hail indentations<br>**No repair recommendations** |
| 3 | – | – | – | – | Exhaust fan<br>No hail indentations<br>**No repair recommendations** |
| 4 | Rheem | WA1448BJ1NA | W501911330 | 2019 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 5 | Rheem | 13AJM60A01 | 803W311003431 | 2010 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 6 | Goodman | GSC130601DC | 1412253568 | 2014 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 7 | York | XP090E09U2KAA5A | N1F4789018 | 2014 | Expanded metal mesh hail guard<br>North coil face: <5% hail distress<br>South coil face: No hail distress<br>Total coil distress: <5% hail distress<br>**Straighten bent fins** |
| 8 | York | XP090E09U2KAA5A | N1F4789020 | 2014 | Expanded metal mesh and hooded hail guards<br>North coil face: <5% hail distress<br>South coil face: No hail distress<br>Total coil distress: <5% hail distress<br>**Straighten bent fins** |
| 9 | Goodman | GSC130601DC | 07****9876 | 2007 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 10 | Ruud | UAKA-060CAS | 4991M289806675 | 1998 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 11 | Frigiking | FD350A | – | – | Evaporative cooler<br>No hail distress<br>**No repair recommendations** |
| 12 | JennFan | JXB15752 | – | 1998 | Exhaust fan<br>No hail indentations<br>**No repair recommendations** |

RLI_000135

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 16

Project Name: Beka One, LLC
Nelson File No.: 28939

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---|---|---|---|---|---|
| 13 | - | - | - | - | Exhaust fan<br>Limited hail indentations<br>**No repair recommendations** |
| 14 | Frigiking | FD350A | - | - | Evaporative cooler<br>No hail distress<br>**No repair recommendations** |
| 15 | Carrier | 38CKB048510 | 1895E17950 | 1995 | Steel wire hail guard<br>North coil face: <25% hail distress<br>South coil face: <1% hail distress<br>East coil face: <25% hail distress (pre-existing)<br>West coil face: <1% hail distress<br>Total coil distress: <15% hail distress<br>**Straighten bent fins** |
| 16 | Payne | PA13PR048-L | 1715X71712 | 2015 | Steel wire hail guard<br>North coil face: No hail distress<br>South coil face: No hail distress<br>East coil face: No hail distress<br>West coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 17 | Trane | 4TTA3048D3000CA | 1411202R3F | 2014 | Louvered hail guards<br>Spiny fin coil<br>No hail distress<br>**No repair recommendations** |
| 18 | Trane | 4TTA3048D3000CA | 1411206T3F | 2014 | Louvered hail guards<br>Spiny fin coil<br>No hail distress<br>**No repair recommendations** |
| 19 | Carrier | - | - | - | Expanded metal mesh hail guard<br>South coil face: <5% hail distress (pre-existing)<br>East coil face: <25% hail distress (pre-existing)<br>Total coil distress: <15% hail distress<br>**No repair recommendations** |
| 20 | BDP | 558DEX060000AAAA | 0398G21424 | 1998 | Expanded metal mesh hail guard<br>North coil face: <25% hail distress<br>East coil face: <25% hail distress (pre-existing)<br>West coil face: <1% hail distress<br>Total coil distress: <25% hail distress<br>**Straighten bent fins** |

RLI_000136

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 17

Project Name: Beka One, LLC
Nelson File No.: 28939

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---|---|---|---|---|---|
| 21 | Carrier | 50KC-A06A2A6A0A0A0 | 4517C81398 | 2017 | No hail guards<br>South coil face: <5% hail distress (pre-existing)<br>West coil face: <1% hail distress<br>Total coil distress: <5% hail distress<br>**No repair recommendations** |
| 22 | Carrier | 50DJ008600 | – | - | Expanded metal mesh hail guard<br>South coil face: <5% hail distress (pre-existing)<br>East coil face: <5% hail distress (pre-existing)<br>Total coil distress: <5% hail distress<br>**No repair recommendations** |
| 23 | Carrier | – | – | – | Steel wire hail guard<br>South coil face: <5% hail distress (pre-existing)<br>East coil face: <25% hail distress (pre-existing)<br>Total coil distress: <15% hail distress<br>**No repair recommendations** |
| 24 | York | ZF090C00B4A1AAA1A1 | N1K7118735 | 2017 | Expanded metal mesh and hooded hail guards<br>Microchannel coil<br>East coil face: <1% hail distress<br>West coil face: No hail distress<br>Total coil distress: <1% hail distress<br>**No repair recommendations** |
| 25 | York | ZF060C00N4AAA4A | N1L5108851 | 2015 | Expanded metal mesh and hooded hail guards<br>Microchannel coil<br>North coil face: <1% hail distress<br>South coil face: <1% hail distress<br>West coil face: No hail distress<br>Total coil distress: <1% hail distress<br>**No repair recommendations** |
| 26 | York | ZF120C00D4A1AAA1A1 | N1G6832915 | 2016 | Expanded metal mesh and hooded hail guards<br>Microchannel coil<br>East coil face: No hail distress<br>West coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 27 | Loren Cook | 80C2B | – | – | Exhaust fan<br>Limited hail indentations<br>**No repair recommendations** |

RLI_000137

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 18

Project Name: Beka One, LLC
Nelson File No.: 28939

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---|---|---|---|---|---|
| 28 | Trane | TTA090D400AA | 10063L89AD | 2010 | Punched steel hail guards<br>North coil face: <25% hail distress<br>East coil face: No hail distress<br>West coil face: <1% hail distress<br>Total coil distress: <10% hail distress<br>**Straighten bent fins** |
| 29 | Loren Cook | 20PR | – | - | Gravity ventilator<br>Limited hail indentations<br>**No repair recommendations** |
| 30 | Rheem | RACA13060ACT000AA | F451601463 | 2016 | Louvered hail guards<br>Microchannel coil<br>No hail distress<br>**No repair recommendations** |
| 31 | Rheem | RACA13060ACT000AA | F461601578 | 2016 | Louvered hail guards<br>Microchannel coil<br>No hail distress<br>**No repair recommendations** |
| 32 | Rheem | RLKN-B072CL | F421600614 | 2016 | Louvered hail guards<br>Microchannel coil<br>No hail distress<br>**No repair recommendations** |
| 33 | - | – | – | - | Exhaust fan<br>No hail indentations<br>**No repair recommendations** |
| 34 | Rheem | RACA13060ACT000AA | F501600795 | 2016 | Louvered hail guards<br>Microchannel coil<br>No hail distress<br>**No repair recommendations** |
| 35 | Rheem | RLKN-B072CL | F111700944 | 2017 | Louvered hail guards<br>Microchannel coil<br>No hail distress<br>**No repair recommendations** |
| 36 | Hoshizaki | URC-22F | G02498G | 2017 | Condensing unit<br>No hail guard<br>South coil face: <5% hail distress (pre-existing)<br>**No repair recommendations** |
| 37 | Gibson | – | – | - | Condensing unit<br>Punched steel hail guard<br>No hail distress<br>**No repair recommendations** |
| 38 | Goodman | GSX130611AB | 1412067357 | 2014 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 39 | Goodman | GSC130603BB | 1404009834 | 2014 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |

RLI_000138

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 19

Project Name: Beka One, LLC
Nelson File No.: 28939

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---|---|---|---|---|---|
| 40 | Goodman | GSX130611AB | 1412067293 | 2014 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 41 | - | - | - | - | Condensing unit<br>Steel wire hail guard<br>North coil face: <5% hail distress<br>South coil face: <5% hail distress (pre-existing)<br>East coil face: <1% hail distress<br>Total coil distress: <5% hail distress<br>**Straighten bent fins** |
| 42 | York | YCE48B21SA | W1N6253951 | 2016 | Punched steel hail guard<br>No hail distress<br>**No repair recommendations** |
| 43 | York | ZE060C00A2A1A BA1A1A | N1M6152847 | 2016 | Expanded metal mesh and hooded hail guards<br>Microchannel coil<br>North coil face: No hail distress<br>East coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 44 | Ameristar | 4TCA4042A1000 AA | 19345FA0FV | 2019 | Expanded metal mesh hail guards<br>Microchannel coil<br>North coil face: No hail distress<br>East coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 45 | Trane | GBC048A3ELB03 0 | 19452285PA | 2019 | Punched steel hail guards<br>Microchannel coil<br>South coil face: No hail distress<br>East coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 46 | Rheem | RRNL-B048CK10E | 2G7412ADAAF 241102706 | 2011 | Louvered hail guards<br>No hail distress<br>**No repair recommendations** |
| 47 | Trane | GBC048A3ELB03 0 | 19353268PA | 2019 | Punched steel hail guards<br>Microchannel coil<br>South coil face: No hail distress<br>East coil face: No hail distress<br>Total coil distress: No hail distress<br>**No repair recommendations** |
| 48 | Ventilation Direct | VXB16 | - | 2015 | Exhaust fan<br>No hail distress<br>**No repair recommendations** |
| 49 | Ventilation Direct | VXB16 | - | 2015 | Exhaust fan<br>No hail distress<br>**No repair recommendations** |

RLI_000139

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 20

Project Name: Beka One, LLC
Nelson File No.: 28939

| Unit ID | Mfg. | Model Number | Serial Number | Unit Age | Observations and Recommendations |
|---|---|---|---|---|---|
| 50 | Emerson | – | – | 2015 | Condensing unit<br>No hail guard<br>North coil face: <5% hail distress<br>**Straighten bent fins** |
| 51 | Manitowoc | JC0995-261 | 1120100197 | 2015 | Condensing unit<br>No hail guard<br>No hail distress<br>**No repair recommendations** |
| 52 | Ventilation Direct | VA2-G12 | – | 2015 | Makeup air fan<br>No hail distress<br>**No repair recommendations** |
| 53 | Lennox | KGA120S4BH3Y | 5615J07803 | 2015 | Punched steel hail guards<br>Microchannel coil<br>North coil face: <5% hail distress<br>South coil face: No hail distress<br>East coil face: No hail distress<br>Total coil distress: <5% hail distress<br>**No repair recommendations** |
| 54 | Lennox | KGA180S4BS2Y | 5615J02159 | 2015 | No hail guard<br>Microchannel coil<br>West coil face: <1% hail distress<br>East coil face: No hail distress<br>Total coil distress: <1% hail distress<br>**No repair recommendations** |
| 55 | – | – | – | – | Exhaust fan<br>No hail distress<br>**No repair recommendations** |
| 56 | Heatcraft | MOH021L62CF | T15K16975 | 2015 | Condensing unit<br>Hooded hail guard<br>Microchannel coil<br>West coil face: <1% hail distress<br>**No repair recommendations** |
| 57 | Heatcraft | MOH015X62CFMT | T15K09667 | 2015 | Condensing unit<br>No hail guard<br>Microchannel coil<br>East coil face: <1% hail distress<br>**No repair recommendations** |
| 58 | – | – | – | – | Gravity ventilator<br>No hail distress<br>**No repair recommendations** |

RLI_000140

## LIMITATIONS

The items observed and documented in this report are intended to be representative of the mechanical equipment at the subject structure as related to Nelson's scope of work. No attempt has been made to document the condition of each and every mechanical element. Only visible items were observed and documented. Unless noted otherwise, equipment operation and testing was not performed by Nelson.

This document is the rendering of a professional service, the essence of which is the provision of advice, judgment, opinion, or professional skill.

This report was prepared in order to document mechanical unit hail distress observed at the subject structure and to evaluate an alleged claim. The opinions presented herein are based on site observations, field information and measurements taken, written and verbal information, and experience and analysis, where applicable. No complete review of this structure's conformance to current or previously applicable building codes was performed.

This report should not be construed as an assessment of total damages to the mechanical equipment at the time of site observation. In addition to the observed and documented items of distress, hidden defects may exist that were not readily visible. Also, some damaged components may have been previously repaired and, unless otherwise noted, were not visible at the time of observation. However, these components may experience future distress. No representation, guarantee, or warranty as to the future performance of the mechanical equipment is made, intended, or implied.

In the event that additional information becomes available that could affect the conclusions reached in this investigation, this office reserves the right to review, and, if required, change some or all of the opinions presented herein.

This report has been prepared for exclusive use of the client and its representatives. No unauthorized re-use or reproduction of this report, in part or whole, shall be permitted without prior written consent.

Alteration of this document in any way by anyone other than the professional whose seal appears on the document, in either hard copy or electronic form, is strictly prohibited and may constitute a violation of state and/or federal laws.

RLI_000141

Mechanical Equipment Hail Distress Evaluation
December 22, 2020
Page 22

Project Name: Beka One, LLC
Nelson File No.: 28939

# REFERENCES

American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc. (ASHRAE). 2008. 2008 ASHRAE Handbook - HVAC Systems and Equipment. Atlanta: ASHRAE.

Building Intelligence Center (BIC).  Accessed December 2020.
http://www.buildingcenter.org/content/hvac-production-dateage

Google Earth.  Accessed December 2020.

Sitzmann, Matthew J., Frank K. Lu, Steve R. Smith. *Hail Effects on Air-Conditioner Performance*.   Proceedings  of  the  2007  ASME  International  Mechanical  Engineering Congress and Exposition (IMECE).  November 2007.  Seattle: IMECE.

RLI_000142

# PHOTOGRAPHS

PHOTOGRAPHS

RLI_000143

**Claim No.: 00489674**

**Photo Sheet 1**



1. Unit 1 northeast (x92).



2. Unit 1 north (x93).



3. Unit 1 southwest (x97).

**NELSON FORENSICS**

APPX 236

**Project: Beka One, LLC**
**File No: 28939**

RLI_000144

**Claim No.: 00489674**



4. Unit 2 northeast (x05).



5. Unit 2 southwest (x06).



6. Unit 3 northeast (x10).

**NELSON FORENSICS**

APPX 237

**Project: Beka One, LLC
File No: 28939**

RLI_000145

**Claim No.: 00489674**

**Photo Sheet 3**



7. Unit 3 southwest (x11).



8. Unit 4 northeast (x14).



9. Unit 4 southwest (x15).

**NELSON FORENSICS**

APPX 238

**Project: Beka One, LLC**
**File No: 28939**

RLI_000146

**Claim No.: 00489674**

**Photo Sheet 4**



10. Unit 5 northeast (x20).



11. Unit 5 southwest (x21).



12. Unit 6 northeast (x26).

**NELSON FORENSICS**

APPX 239

**Project: Beka One, LLC**
**File No: 28939**

RLI_000147

**Claim No.: 00489674**



13. Unit 6 southwest (x27).



14. Unit 7 northeast (x35).



15. Unit 7 north (x36).

**Claim No.: 00489674**

**Photo Sheet 6**

16. Unit 7 southwest (x38).



17. Unit 8 northeast (x45).



18. Unit 8 north (x46).



**Claim No.: 00489674**



19. Unit 8 southwest (x48).



20. Unit 9 northeast (x59).



21. Unit 9 southwest (x60).

**Project: Beka One, LLC**
**File No: 28939**

RLI_000150

**Claim No.: 00489674**

**Photo Sheet 8**



22. Unit 10 northeast (x66).



23. Unit 10 southwest (x67).



24. Unit 11 northeast (x71).

**NELSON FORENSICS**

APPX 243

**Project: Beka One, LLC**
**File No: 28939**

RLI_000151

**Claim No.: 00489674**



25. Unit 11 southwest (x72).



26. Unit 12 northeast (x75).



27. Unit 12 southwest (x76).

**NELSON FORENSICS**

APPX 244

**Project: Beka One, LLC**
**File No: 28939**

RLI_000152

**Claim No.: 00489674**

28. Unit 13 northeast (x80).



29. Unit 13 southwest (x81).



30. Unit 14 northeast (x84).



**NELSON FORENSICS**

APPX 245

**Project: Beka One, LLC**
**File No: 28939**

RLI_000153

**Claim No.: 00489674**

**Photo Sheet 11**



31. Unit 14 southwest (x85).



32. Unit 15 northeast (x88).



33. Unit 15 southwest (x89).

**NELSON FORENSICS**

APPX 246

**Project: Beka One, LLC**
**File No: 28939**

RLI_000154

**Claim No.: 00489674**

**Photo Sheet 12**



34. Unit 15 south (x93).





35. Unit 15 west (x95).



36. Unit 15 north (x98).

**Claim No.: 00489674**

**Photo Sheet 13**



37. Unit 15 east (x01).



38. Unit 16 northeast (x04).



39. Unit 16 southwest (x05).

**Claim No.: 00489674**

**Photo Sheet 14**



40. Unit 16 south (x08).



41. Unit 16 east (x09).



42. Unit 16 north (x10).

**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000157

**Claim No.: 00489674**

**Photo Sheet 15**



43. Unit 16 west (x11).



44. Unit 17 northeast (x12).



45. Unit 17 southwest (x13).

**Claim No.: 00489674**



**46.** Unit 18 northeast (x17).



**47.** Unit 18 southwest (x18).



**48.** Unit 19 northeast (x25).

**Claim No.: 00489674**



49. Unit 19 southwest (x26).



50. Unit 19 south (x27).



51. Unit 19 east (x29).

**NELSON FORENSICS**

APPX 252

**Project: Beka One, LLC**
**File No: 28939**

RLI_000160

**Claim No.: 00489674**

**Photo Sheet 18**



52. Unit 20 northeast (x39).



53. Unit 20 southwest (x40).



54. Unit 20 east (x44).

**Claim No.: 00489674**



55. Unit 20 north (x46).



56. Unit 20 west (x48).



57. Unit 21 northeast (x50).

**Claim No.: 00489674**

**Photo Sheet 20**



58. Unit 21 southwest (x51).



59. Unit 21 west (x52).



60. Unit 21 south (x53).

**NELSON FORENSICS**

APPX 255

**Project: Beka One, LLC**
**File No: 28939**

RLI_000163

**Claim No.: 00489674**

61. Unit 22 northeast (x57).



62. Unit 22 southwest (x58).



63. Unit 22 south (x59).



**NELSON FORENSICS**

APPX 256

**Project: Beka One, LLC**
**File No: 28939**

RLI_000164

**Claim No.: 00489674**

**Photo Sheet 22**



**64.** Unit 22 east (x61).



**65.** Unit 23 northeast (x66).



**66.** Unit 23 southwest (x67).

**Claim No.: 00489674**



67. Unit 23 south (x68).



68. Unit 23 east (x71).



69. Unit 24 northeast (x85).

**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000166

**Claim No.: 00489674**

**Photo Sheet 24**

70. Unit 24 southwest (x86).



71. Unit 24 east (x89).



72. Unit 25 northeast (x92).



**NELSON FORENSICS**

APPX 259

Project: Beka One, LLC
File No: 28939

RLI_000167

**Claim No.: 00489674**

**Photo Sheet 25**



73. Unit 25 southwest (x93).



74. Unit 25 west (x94).



75. Unit 25 south (x96).

**NELSON FORENSICS**

APPX 260

Project: Beka One, LLC
File No: 28939

RLI_000168

**Claim No.: 00489674**

**Photo Sheet 26**



76. Unit 25 north (x98).



77. Unit 25 top (x00).



78. Unit 26 northeast (x02).

**NELSON FORENSICS**

APPX 261

**Project: Beka One, LLC**
**File No: 28939**

RLI_000169

**Claim No.: 00489674**

**Photo Sheet 27**

79. Unit 26 southwest (x03).



80. Unit 26 west (x04).



81. Unit 27 northeast (x09).



**NELSON FORENSICS**

APPX 262

**Project: Beka One, LLC**
**File No: 28939**

RLI_000170

**Claim No.: 00489674**



82. Unit 27 southwest (x10).



83. Unit 28 northeast (x16).



84. Unit 28 southwest (x17).

**NELSON FORENSICS**

Project: Beka One, LLC
File No: 28939

RLI_000171

**Claim No.: 00489674**

**Photo Sheet 29**



85. Unit 28 west (x20).



86. Unit 28 north (x22).



87. Unit 28 east (x24).

**Claim No.: 00489674**

88. Unit 29 northeast (x26).



89. Unit 29 southwest (x27).



90. Unit 30 northwest (x31).



**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000173

**Claim No.: 00489674**

**Photo Sheet 31**



91. Unit 30 northeast (x32).



92. Unit 30 southwest (x33).



93. Unit 31 northeast (x38).

**NELSON FORENSICS**

APPX 266

**Project: Beka One, LLC**
**File No: 28939**

RLI_000174

**Claim No.: 00489674**

Photo Sheet 32



94. Unit 31 southwest (x39).



95. Unit 32 northeast (x43).



96. Unit 32 southwest (x44).

**Claim No.: 00489674**

97. Unit 33 northeast (x49).



98. Unit 33 southwest (x50).



99. Unit 34 northeast (x53).



**NELSON FORENSICS**

APPX 268

Project: Beka One, LLC
File No: 28939

RLI_000176

**Claim No.: 00489674**

**Photo Sheet 34**



100. Unit 34 southwest (x54).



101. Unit 35 northeast (x59).



102. Unit 35 southwest (x60).

**NELSON FORENSICS**

APPX 269

**Project: Beka One, LLC**
**File No: 28939**

RLI_000177

**Claim No.: 00489674**

**Photo Sheet 35**

103. Unit 35 top (x62).



104. Unit 36 northeast (x64).



105. Unit 36 southwest (x65).



**Claim No.: 00489674**

106. Unit 36 south (x66).



107. Unit 37 northeast (x72).



108. Unit 37 southwest (x73).



**Claim No.: 00489674**



109. Unit 38 northeast (x77).



110. Unit 38 southwest (x78).



111. Unit 39 northeast (x82).

**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000180

**Claim No.: 00489674**



112. Unit 39 southwest (x83).



113. Unit 40 northeast (x87).



114. Unit 40 southwest (x88).

**NELSON FORENSICS**

APPX 273

**Project: Beka One, LLC**
**File No: 28939**

RLI_000181

**Claim No.: 00489674**

**Photo Sheet 39**



115. Unit 41 northeast (x92).



116. Unit 41southwest (x93).



117. Unit 41 south (x96).

**NELSON FORENSICS**

APPX 274

**Project: Beka One, LLC**
**File No: 28939**

RLI_000182

**Claim No.: 00489674**



118. Unit 41 east (x98).



119. Unit 41 north (x00).



120. Unit 42 northeast (x04).

**Claim No.: 00489674**

121. Unit 42 southwest (x05).



122. Unit 43 northeast (x10).



123. Unit 43 southwest (x11).



**NELSON FORENSICS**

Project: Beka One, LLC
File No: 28939

RLI_000184

**Claim No.: 00489674**



124. Unit 43 east (x14).



125. Unit 43 north (x15).



126. Unit 44 northeast (x26).

**Claim No.: 00489674**

**Photo Sheet 43**



127. Unit 44 southwest (x27).



128. Unit 44 east (x28).



129. Unit 44 north (x29).

Claim No.: 00489674

130. Unit 45 northeast (x32).



131. Unit 45 southwest (x33).



132. Unit 45 south (x35).



**NELSON FORENSICS**

APPX 279

Project: Beka One, LLC
File No: 28939



RLI_000187

**Claim No.: 00489674**

**Photo Sheet 45**



133. Unit 45 east (x37).



134. Unit 46 northeast (x40).



135. Unit 46 southwest (x41).

**Claim No.: 00489674**

136. Unit 47 northeast (x47).



137. Unit 47 southwest (x48).



138. Unit 47 south (x51).



**Claim No.: 00489674**



139. Unit 47 east (x53).



140. Unit 48 northeast (x55).



141. Unit 48 southwest (x56).

**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000190

**Claim No.: 00489674**



142. Unit 49 northeast (x60).



143. Unit 49 southwest (x62).



144. Unit 50 northeast (x64).

**Claim No.: 00489674**



145. Unit 50 southwest (x65).



146. Unit 50 north (x67).



147. Unit 51 northeast (x71).

**Claim No.: 00489674**

**Photo Sheet 50**

148. Unit 51 southwest (x72).



149. Unit 52 northeast (x76).



150. Unit 52 southwest (x78).



**NELSON FORENSICS**

**Project: Beka One, LLC
File No: 28939**

RLI_000193

**Claim No.: 00489674**

**Photo Sheet 51**

151. Unit 53 northeast (x80).



152. Unit 53 southwest (x81).



153. Unit 53 south (x85).



**Claim No.: 00489674**

154. Unit 53 east (x87).



155. Unit 53 north (x89).



156. Unit 54 northeast (x91).



**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000195

**Claim No.: 00489674**



157. Unit 54 southwest (x92).



158. Unit 54 west (x93).



159. Unit 55 northeast (x02).

**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000196

**Claim No.: 00489674**

160. Unit 55 southwest (x03).



161. Unit 56 northeast (x05).



162. Unit 56 southwest (x06).



**NELSON FORENSICS**

**Project: Beka One, LLC**
**File No: 28939**

RLI_000197

**Claim No.: 00489674**



163. Unit 56 west (x09).



164. Unit 57 northeast (x10).



165. Unit 57 southwest (x11).

**Claim No.: 00489674**

Photo Sheet 56



166. Unit 57 east (x14).



167. Unit 58 northeast (x16).



168. Unit 58 southwest (x17).



*Printed on post-consumer recycled stock.*

# 1-877-850-8765
## www.nelsonforensics.com

**Telaclaim®** - *Online request for professional services.*

RLI_000200



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

**RLI INSURANCE COMPANY**

January 28, 2021

***Send Via Certified Mail* 9214 8969 0099 9790 1636 9007 54 *Return Receipt***
Beka One, LLC
Valcor Commercial Real Estate
Attention: Bardia Baheri
1723 N Loop 1604 E Ste 204
San Antonio, TX 78232

|  |  |  |
|---|---|---|
| RE: | Insured: | Beka One, LLC |
|  | Claim #: | 00489674 |
|  | Policy #: | RKA0300001 |
|  | Incident Date: | 05/27/20 |
|  | Type of Loss: | Hail Loss |
|  | Loss Location: | 903 E. Bitters Road, |
|  |  | San Antonio, TX 78216 |

## PLEASE REF OUR CLAIM # AND POLICY # ON ALL CORRESPONDENCE

Dear Mr. Baheri;

We are writing in regards to the above captioned claim. RLI Insurance Company (hereinafter "RLI"), received a claim from Beka One, LLC for hail damage. This claim has been reported under RLI Commercial Property Policy Number RKA0300001 with effective dates of March 7, 2020 to March 7, 2021. The date of loss was reported as May 27, 2020. We received notice of this loss on October 16, 2020.

To assist with our investigation, we engaged independent adjusting firm Engle Martin and Associates. Stephen Klink, National General Adjuster, inspected your property on October 30, 2020. We also engaged Stewart M. Verhulst, M.S., P.E., with Nelson Forensics (Nelson) to determine the extent of distress to the roof and exterior related to wind and hail on the reported date of loss. On November 23, 2020, Mr. Verhulst inspected the property. Based on observed conditions, testing performed, weather data, review of available documentation, and analysis; Nelson concludes the following:

- Recent hail at the site has been on the order of 1 1/4" to 1 1/2" in diameter, maximum, with the majority of the hail being on the order of 1/2" in diameter or smaller. This recent hail is attributed to the May 27, 2020, storm event.
- Hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membranes or of the roof system at the subject structure.
- The subject structure has not been damaged by wind from the May 27, 2020, storm event.
- There are no openings in the building envelope at the subject structure related to hail impact or wind from the May 27, 2020, storm event.



EXHIBIT
**A-5**

RLI_000219

Beka One, LLC
January 28, 2021
Page 2

**RLI INSURANCE COMPANY**

A copy of Nelson's report is enclosed.

Based on the investigation of your claim and a review of your policy, we provide you with the following determination. In addition to the terms and conditions set forth by the underlying policy, below are certain policy provisions set forth by the Mt. Hawley policy. Please refer to your policy for the full text.

The Causes of Loss – Special Form states the following:

**B. Exclusions**

    2. We will not pay for loss or damage caused by or resulting from any of the following:

        d.(1) Wear and tear;
          (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

    3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

        c. Faulty, inadequate or defective:
            (1) Planning, zoning, development, surveying, siting;
            (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
            (3) Materials used in repair, construction, renovation or remodeling; or
            (4) Maintenance;

**C. Limitations**

    The following limitations apply to all policy forms and endorsements, unless otherwise stated.

    1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

        a. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

RLI_000220

Beka One, LLC
January 28, 2021
Page 3

RLI INSURANCE COMPANY

    (1)  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    (2)  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

*** ***

Please review Limitations on Coverage for Roof Surfacing and/or Buildings and Structures Endorsement Form RPR 322 (06/16) for the following:

    C. The following applies with respect to loss or damage by wind and/or hail to a building or structure identified in the Schedule as being subject to this Paragraph C:

    We will not pay for cosmetic damage to the building or structure, including roof surfacing, caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, denting, pitting or other superficial damage that altered the appearance of the building or structure, but such damage does not prevent the building or structure from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

    If windows or doors are damaged to the extent that they do not function as a barrier to the entrance of elements we will pay for damage to those windows or doors to the extent they are covered elsewhere in the policy. Payment of loss to windows or doors does not affect other provisions of this endorsement.

*** ***

The hail from storm event on the May 27, 2020 has not compromised the function or service life of the EPDM roof membrane or of the roof system of the covered building. There are no openings in the building envelope related to hail impact from storm event on the May 27, 2020. Puncture/cuts of roof membrane that were identified were consistent with mechanical impacts and were not related to hail. Therefore, we must decline coverage for the cosmetic damage to the building.

Engle Martin will complete an estimate for condenser coil repair based upon Nelson's Mechanical Equipment Hail Distress Evaluation to determine if repairs will exceed the wind/hail deductible. A copy of Nelson's report is enclosed.

If there is additional information that you believe RLI should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

Based on the foregoing, we must regretfully inform you that we are unable to provide coverage under the above-referenced policy for your claim. If there is additional information that you

RLI_000221

Beka One, LLC
January 28, 2021
Page 4

**RLI INSURANCE COMPANY**

believe RLI should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

We finally refer you to the Texas Changes Endorsement that states the following:

### B. Legal Action Against Us
1. The **Legal Action Against** Us Commercial Property Condition is replaced by the following, except as provided in B.2. below:
   **Legal Action Against Us**
   a. Except as provided in Paragraph b., no one may bring a legal action against us under this Coverage Part unless:
      (1) There has been full compliance with all of the terms of this Coverage Part; and
      (2) The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.
   b. With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:
      (1) There has been full compliance with all the terms of this Coverage Part; and
      (2) The action is brought within the earlier of the following:
         (a) Two years and one day from the date we accept or reject the claim; or
         (b) Three years and one day from the date of the loss or damage that is the subject of the claim.

Please be advised that we are not waiving our rights to assert any and all other rights or defenses under the policy or applicable law. This partial declination is made without prejudice to any defenses or rights that RLI Insurance Company may have and without waiver of any of the terms, conditions, or provisions of this policy of insurance.

This letter is based on the facts as presently determined after our investigation. If any additional facts should become known, which may affect coverage, RLI Insurance Company reserves its right to reevaluate our position.

If you have any questions, please contact me at 800-444-0406 ex. 5883 or Shawn.garner@rlicorp.com

Respectfully,

Shawn Garner
Director Property Claims

RLI_000222

**To:**     Shawn Garner[Shawn.Garner@rlicorp.com]
**From:**   Klink, Stephen
**Sent:**   Tue 2/2/2021 9:21:10 PM
**Subject:** RE: Claim #00489674, Beka One, LLC - EM File 1000312890
<u>21.02.01-20110780-Beka One, LLC-Detailed Estimate.pdf</u>

Shawn,

Please find the attached detailed repair estimate from JS Held for combing the coil fins and replacing three exhaust vents on the roof. The repairs have been estimated based on the recommendations made in the EFI Global report. The estimate totals 2,730.05.

At your convenience, please advise if you would like our office to draft a letter to the insured to be sent to your office for review and consideration or if your office will be handling the letter.

Thanks,

Stephen Klink, AIC
*National General Adjuster*
Engle Martin & Associates
San Antonio, Texas
O: 210.253.7854 | M: 210.992.6326 | TF: 800.818.5619
sklink@englemartin.com

Mailing Address
5565 Glenridge Connector | Suite 900
Atlanta, Georgia 30342
www.englemartin.com

*Connect with us:*



NOTICE: This communication is strictly confidential. If you are not an intended recipient, then any review, use or distribution of it, and/or any action taken or not taken in reliance upon it, is unauthorized, strictly prohibited and may be unlawful. Instead, please immediately notify the sender by return email and then delete this communication and its attachments from your system. Click here to read our Point of Collection Policy.

---

**From:** Klink, Stephen <sklink@englemartin.com>
**Sent:** Monday, December 7, 2020 1:03 PM
**To:** claimhelp@rlicorp.com
**Cc:** Central Reports <centralreports@englemartin.com>
**Subject:** RE: Claim #00489674, Beka One, LLC - EM File 1000312890

Shawn,

We anticipate receipt of the engineering report withing the next 7-10 days. Please diary your file 14 days in the interim and contact our office if you would like to discuss.

Stephen Klink, AIC
*National General Adjuster*
Engle Martin & Associates
San Antonio, Texas
O: 210.253.7854 | M: 210.992.6326 | TF: 800.818.5619
sklink@englemartin.com

EXHIBIT
**A-6**

RLI_000231

**EXHIBIT 1**

**Mailing Address**
5565 Glenridge Connector | Suite 900
Atlanta, Georgia 30342
www.englemartin.com

*Connect with us:*



NOTICE: This communication is strictly confidential. If you are not an intended recipient, then any review, use or distribution of it, and/or any action taken or not taken in reliance upon it, is unauthorized, strictly prohibited and may be unlawful. Instead, please immediately notify the sender by return email and then delete this communication and its attachments from your system. Click here to read our Point of Collection Policy.

RLI_000232

**JS|HELD**    **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

| | |
|---|---|
| Insured: | Beka One, LLC |
| Property: | 903 Bitters Road |
| | San Antonio, TX 78216 |

| | |
|---|---|
| Claim Rep.: | Stephen Klink |
| Company: | Engle Martin |

| | | | |
|---|---|---|---|
| Estimator: | Josh Shields | Cellular: | (713) 705-0241 |
| Company: | JS Held | E-mail: | jshields@jsheld.com |

**Claim Number:** 00489674        **Policy Number:** RKA0300001        **Type of Loss:** Hail

| | | | |
|---|---|---|---|
| Date Contacted: | 11/13/2020 | | |
| Date of Loss: | 5/27/2020 | Date Received: | 11/13/2020 |
| Date Inspected: | 12/4/2020 | Date Entered: | 2/1/2021 8:44 PM |

| | |
|---|---|
| Price List: | TXSA8X_FEB21 |
| | Restoration/Service/Remodel |
| Estimate: | 20110780_BEKA_ONE |

RLI_000233

 **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

This estimate is based on a site inspection completed by Josh Shields and on 12/4/2020. This opinion of probable cost is based on the level of detail of "as-built" conditions provided to us by site inspections. We have not been provided any plans for this complex, nor is the demolition complete at this time.

General Building Description: Commercial retail strip center

Cause of damage: Hail

Scope recap: Hail stones reportedly up to a maximum of 1.5" in diameter caused dents in some metal roof mounted vents and cooling fins on roof top HVAC units. Repairs recommendations related to the a/c coils are based on the findings as reported in the EFI Global report.

The following items are not included in this estimate and should only be considered on an as incurred basis:

- Permit fees
- Engineering fees
- Architectural fees
- Code upgrades

This opinion reflects J.S. Held's assumption of the pre-loss configuration. The pricing contemplates the use of contemporary materials of "like, kind and quality". Furthermore, this evaluation is governed by the following assumptions and exclusions.

Assumptions:
- Access given by insured
- Field Measurements
- Information and documentation received and reviewed to date

This estimate is subject to review by the Insurance Carrier(s) per contract/policy terms and conditions. J.S. Held recommends that all costs that are anticipated to be part of the claim are submitted for review prior to executing contracts. To the extent that repair costs proceed on a time and materials basis, we recommend that that the adjustment team monitor these repairs and that the insured keep appropriate records, sign in sheets and documentation of these repairs.

This document is prepared for the adjustment team. Reliance upon this document are for the sole use of the intended recipients. J.S. Held LLC reserves the right to change their opinion should further information become available following the preparation of this presentation.

**Period of restoration will be 1 month from the beginning of repairs.**

RLI_000234

JS|HELD  **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

### 20110780_BEKA_ONE
### HVAC Repairs

#### Unit 1

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 1. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |
| Straighten bent coil fins on large commercial roof top HVAC unit. | | | | | |
| Totals: Unit 1 | | | | 23.36 | 306.56 |

#### Unit 7

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 2. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |
| Straighten bent coil fins on large commercial roof top HVAC unit. | | | | | |
| Totals: Unit 7 | | | | 23.36 | 306.56 |

#### Unit 8

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 3. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |
| Straighten bent coil fins on large commercial roof top HVAC unit. | | | | | |
| Totals: Unit 8 | | | | 23.36 | 306.56 |

#### Unit 13

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 4. R&R Gravity roof ventilator - 18" | 1.00 EA | 7.20 | 278.55 | 23.57 | 309.32 |
| Totals: Unit 13 | | | | 23.57 | 309.32 |

#### Unit 15

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 5. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |

**APPX 301**

RLI_000235

**JS|HELD** **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

### CONTINUED - Unit 15

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| Straighten bent coil fins on large commercial roof top HVAC unit | | | | | |
| Totals: Unit 15 | | | | 23.36 | 306.56 |

### Unit 20

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 6. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |
| Straighten bent coil fins on large commercial roof top HVAC unit | | | | | |
| Totals: Unit 20 | | | | 23.36 | 306.56 |

### Unit 27

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 7. R&R Gravity roof ventilator - 18" | 1.00 EA | 7.20 | 278.55 | 23.57 | 309.32 |
| Totals: Unit 27 | | | | 23.57 | 309.32 |

### Unit 28

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 8. HVAC Technician - per hour | 3.00 HR | 0.00 | 94.40 | 23.36 | 306.56 |
| Straighten bent coil fins on large commercial roof top HVAC unit | | | | | |
| Totals: Unit 28 | | | | 23.36 | 306.56 |

### Unit 29

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 9. R&R Power attic vent cover only - metal | 1.00 EA | 10.03 | 76.06 | 7.10 | 93.19 |
| Totals: Unit 29 | | | | 7.10 | 93.19 |

### Unit 41

RLI_000236

**JS|HELD** **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

### CONTINUED - Unit 41

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 10. Comb/straighten a/c cond. fins - w/out trip charge - Large | 1.00 EA | 0.00 | 94.40 | 7.79 | 102.19 |
| Totals: Unit 41 | | | | 7.79 | 102.19 |

### Unit 50

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | TOTAL |
|---|---|---|---|---|---|
| 11. Comb and straighten a/c condenser fins - w/out trip charge | 1.00 EA | 0.00 | 70.83 | 5.84 | 76.67 |
| Totals: Unit 50 | | | | 5.84 | 76.67 |
| Total: HVAC Repairs | | | | **208.03** | **2,730.05** |
| Line Item Totals: 20110780_BEKA_ONE | | | | **208.03** | **2,730.05** |

RLI_000237

JS|HELD   **J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

## Summary for Structure

| | |
|---|---:|
| Line Item Total | 2,522.02 |
| Comm. Rpr/Remdl Tax | 208.03 |
| **Replacement Cost Value** | **$2,730.05** |
| **Net Claim** | **$2,730.05** |

Josh Shields

APPX 304

RLI_000238

# JS|HELD  J.S. Held, LLC

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

## Recap by Room

**Estimate: 20110780_BEKA_ONE**

**Area: HVAC Repairs**

| | | |
|---|---|---|
| Unit 1 | 283.20 | 11.23% |
| Unit 7 | 283.20 | 11.23% |
| Unit 8 | 283.20 | 11.23% |
| Unit 13 | 285.75 | 11.33% |
| Unit 15 | 283.20 | 11.23% |
| Unit 20 | 283.20 | 11.23% |
| Unit 27 | 285.75 | 11.33% |
| Unit 28 | 283.20 | 11.23% |
| Unit 29 | 86.09 | 3.41% |
| Unit 41 | 94.40 | 3.74% |
| Unit 50 | 70.83 | 2.81% |
| **Area Subtotal:  HVAC Repairs** | **2,522.02** | **100.00%** |
| **Subtotal of Areas** | **2,522.02** | **100.00%** |
| **Total** | **2,522.02** | **100.00%** |

APPX 305

RLI_000239

**JS HELD   J.S. Held, LLC**

110 Cypress Station Dr.
Suite 155
Houston, TX 77090

## Recap by Category

| Items | Total | % |
|---|---|---|
| GENERAL DEMOLITION | 24.43 | 0.89% |
| HEAT, VENT & AIR CONDITIONING | 1,864.43 | 68.29% |
| ROOFING | 633.16 | 23.19% |
| Subtotal | 2,522.02 | 92.38% |
| Comm. Rpr/Remdl Tax | 208.03 | 7.62% |
| Total | 2,730.05 | 100.00% |

RLI_000240

**MH™**

**MT. HAWLEY
INSURANCE COMPANY**

CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P  800-444-0406
F  866-692-6796
RLICORP.COM

February 11, 2021

**Send Certified Mail 92148969009997901637111067 Return Receipt Requested**

Beka One, LLC
Valcor Commercial Real Estate
Attention: Bardia Baheri
1723 N Loop 1604 E STE 204
San Antonio, TX 78232

RE:    Insured:        Beka One, LLC
       Claim #:        00489674
       Policy #:       RKA0300001
       Incident Date:  05/27/20
       Type of Loss:   Hail Loss
       Loss Location:  903 E. Bitters Road, San Antonio, TX 78216

**PLEASE REF OUR CLAIM # AND POLICY # ON ALL CORRESPONDENCE**

Dear Mr. Baheri;

We are writing in regards to the above captioned claim. RLI Insurance Company (hereinafter "RLI"), received a claim from Beka One, LLC for hail damage. This claim has been reported under RLI Commercial Property Policy Number RKA0300001 with effective dates of March 7, 2020 to March 7, 2021. The date of loss was reported as May 27, 2020. We received notice of this loss on October 16, 2020. We have previously sent you a letter in regards to our investigation of the roof portion of your claim. Please refer to our January 28, 2021 correspondence for questions as it relates to the roof.

To assist with our investigation, we engaged independent adjusting firm Engle Martin and Associates. Stephen Klink, National General Adjuster, inspected your property on October 30, 2020 with Mr. Mike Hiser with Empire Roofing. Mr. Klink observed splatter marks on air conditioning covers. To further assist with our investigation, we engaged Laura C. Schulte, P.E., with Nelson Forensics (Nelson) to determine the extent of distress to the mechanical equipment related to hail on the reported date of loss and recommended repairs for any hail distress to each coil surface. On November 23, 2020, Ms. Schulte inspected the property. Based on observations and analysis, Nelson is of the following opinions related to the mechanical equipment at the subject structure:

- Coil distress consistent with hailstone impacts on or around the reported date of loss was visible on exposed north, east, and west-facing coil surfaces on eight units;
- Coil distress consistent with hail stone impacts on exposed south-facing coil surfaces can be attributed to one or more hail events prior to the date of loss;
- On eight of the units, coil distress that can be attributed to a hail event on or around the reported date of loss can be repaired by straightening the bent and flattened fins on the distressed coils;



EXHIBIT
**A-7**

RLI_000244

MT. HAWLEY
INSURANCE COMPANY

- On five of the units, the coil distress can be attributed to one or more hail events prior to the date of loss and is considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended;
- Based on the limited extent of the hail distress, there has been negligible, if any, reduction in unit cooling capacity and negligible, if any, increases in unit condensing pressure and corresponding mechanical and thermal stresses that can be attributed to hailstone impacts;
- The limited indentations on one of the GVs and EFs covers related to hail stone impacts occurred from a hail event on or before the date of loss. These indentations have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.

A copy of Nelson's report has been provided.

Based on the investigation of your claim and a review of your policy, we provide you with the following determination. In addition to the terms and conditions set forth by the underlying policy, below are certain policy provisions set forth by the Mt. Hawley policy. Please refer to your policy for the full text.

Please refer to the Commercial Property Conditions which state in pertinent part:

### H. POLICY PERIOD, COVERAGE TERRITORY
Under this Coverage Part:
1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

\*\*\* \*\*\*

Next, please refer to the Windstorm Or Hail Percentage Deductible which states in part:

**SCHEDULE**

| Premises Number | Building | Windstorm Or Hail Deductible Percentage |
|---|---|---|
| 1 | 1 | 1% |

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

...

B. Calculation Of The Deductible – Specific Insurance Other than Builders' Risk
   1. Property Not Subject To Value Reporting Forms

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

\*\*\* \*\*\*

RLI_000245

MT. HAWLEY
INSURANCE COMPANY

As noted above, some of the damages to the equipment had occurred prior to the policy period. We are unable to compensate you for damages that had occurred prior to the policy with us.

J.S. Held completed an estimate for mechanical equipment repairs based upon Nelson's Mechanical Equipment Hail Distress Evaluation. Their estimate totaled $2,730.05. A copy of J.S. Held's estimate is enclosed. The Windstorm or Hail deductible is 1% of building limit of $5,495,040 which is $54,950. The damage is less than the deductible.

If there is additional information that you believe RLI should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

We finally refer you to the Texas Changes Endorsement that states the following:

**B. Legal Action Against Us**

1. The **Legal Action Against** Us Commercial Property Condition is replaced by the following, except as provided in B.2. below:

   **Legal Action Against Us**

   **a.** Except as provided in Paragraph b., no one may bring a legal action against us under this Coverage Part unless:

   **(1)** There has been full compliance with all of the terms of this Coverage Part; and

   **(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

   **b.** With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

   **(1)** There has been full compliance with all the terms of this Coverage Part; and

   **(2)** The action is brought within the earlier of the following:

   **(a)** Two years and one day from the date we accept or reject the claim; or

   **(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

Please be advised that we are not waiving our rights to assert any and all other rights or defenses under the policy or applicable law. This letter is made without prejudice to any defenses or rights that RLI Insurance Company may have and without waiver of any of the terms, conditions, or provisions of this policy of insurance.

This letter is based on the facts as presently determined after our investigation. If any additional facts should become known, which may affect coverage, RLI Insurance Company reserves its right to reevaluate our position.

If you have any questions, please contact me at 800-444-0406 ex. 5883 or Shawn.garner@rlicorp.com

Respectfully,

Shawn Garner
Director Property Claims

RLI_000246

**To:** 'Needham Rice & Assoc'[needham.rice@gmail.com]
**Cc:** Bardia Baheri[bardiabaheri@gmail.com]
**From:** Carlos Cagadas
**Sent:** Sat 11/20/2021 2:38:03 AM
**Subject:** RE: Claim # 00489674 Beka One
Estimate #1055 - Integrity Solutions Mechanical LLC.pdf
Report.pdf
RE: Claim # 00489674 Beka One

Dear Ms. Needham,

This acknowledges receipt of the newly received information per your 11/12/21 email.  This is the first communication we have received from your office since we sent you the attached 7/1/2021 email.

We will review the newly received information and then follow up with your office.

Sincerely,

Carlos Cagadas, CPCU, AIC
Claim Director
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL  60607
Phone:  (312) 675-4161

**From:** Needham Rice & Assoc <needham.rice@gmail.com>
**Sent:** Friday, November 12, 2021 11:41 AM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>; Bardia Baheri <bardiabaheri@gmail.com>
**Subject:** Claim # 00489674 Beka One

Mr. Cagadas,
Please find attached a report and an estimate from Integrity Solutions Mechanical LLC for the HVAC's on the property in San Antonio located on Bitters Rd on the above claim. Once this is reviewed by you, I would like to request a new inspection at the property.
Sophia

--
needham.rice@gmail.com



PA License # 2310186
Julie Needham
Sophia K Needham
Robert Rice

**If you are not the intended recipient, please contact the sender and delete this e-mail, any attachments and all copies.**

**RLI Correspondence Tracking Token: Please do not alter or remove**



**EXHIBIT**
**A-8**

RLI_000547

[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**

RLI_000548

 **INTEGRITY SOLUTIONS MECHANICAL LLC**

Estimate #1055

DRAFT

**Needham Rice & Associates LLC**
903 Bitters Road / San Antonio, Texas 78216
3143937315

Sent on
Not sent yet

### Units- 21,36,41,50 Labor

Straighten out lightly damage coil- 1hr per



| QTY. | UNIT PRICE | TOTAL |
|------|-----------|-------|
| 4 | $81.00 | $324.00 |

### Unit-1 scope/ labor/ parts

Circuit A condenser coil replacement including:
Recover all freon on circuit A, remove damaged condenser coil and filter drier, Install new filter drier and New YORK OEM condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon. Remove bad condenser fan motor and blade, install new OEM motor and blade from manufacture. After all repairs are complete we will check operations and return to service.



| QTY. | UNIT PRICE | TOTAL |
|------|-----------|-------|
| 1 | $6,593.70 | $6,593.70 |

### Unit-7 scope/ labor/ parts

RLI_000549

Circuit A condenser coil replacement including:
Recover all freon on circuit A, remove damaged condenser coil and filter drier, Install new filter drier and New York OEM condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon.
Remove bad condenser fan motor and blade, install new OEM motor and blade from manufacture. After all repairs are complete we will check operations and return to service.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $6,579.75 | $6,579.75 |

### Unit- 8 scope/ labor/ parts

Circuit A condenser coil replacement including:
Recover all freon on circuit A, remove damaged condenser coil and filter drier, Install new filter drier and New YORK OEM condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon. After all repairs are complete we will check operations and return to service.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $4,450.00 | $4,450.00 |

### Unit-15 Replacement/ Scope/ Labor/ Equipment

4 tons 16 SEER Full System Replacement
Install 4 ton, 16 seer, r-410A American Standard full system including high efficiency Condensing Unit, Evaporator Coil, and Furnace with high efficiency electronic control module blower. Flush copper line set with R-11 flush, install new drain pan, safety float switch, ball valve for easy maintenance of condensate drain, new Pro Series Honeywell programmable thermostat. R-8 Insulated sheet metal Plenum and transition if applicable. New slab for outdoor unit, Recover freon and dispose of old equipment, Clean debris and start up included.



10 year Manufacturer Warranty on parts, coils and compressor,
2 year Labor Warranty

| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $10,642.50 | $10,642.50 |

RLI_000550

## Unit-19 Replacement/ Scope/ Labor/ Equipment

Project: New installation of a complete 7.5-ton RTU unit Carrier or better



Integrity Solutions Mechanical LLC will provide labor and material necessary to complete the below scope of work:
• Provide safe work plan before starting work
• Labor installation all equipment includes 7.5-ton RTU. Using require equipment specs on from manufacture.
• Provide labor and crane equipment to lift new condenser on roof and new stand curb to set.
• Connect all new electrical connections to new disconnect outside and inside thermostat
• Instillation of new electrical heater kit.
• 1 lot lined straight ductwork & fitting
• Duct seal, duct wrap material & hanger material for ductwork
• 1 lot pipe & fittings
• Flex materials install
• Duct wrap material
• Labor inclusion plumbing for drain operations.
• New Thermostats
• Perform start up and operations
• Clean and remove and trash made from installation.

Warranty
Compressor: Limited five years in non-residential installations. All other covered components limited one year in non-residential installations
Air Handler: All covered components limited one-year, High Performance Economizers (optional) - Limited five years.

| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $16,402.50 | $16,402.50 |

## Unit-20 Scope/ Labor/ Parts

Unit 20 condenser coil replacement including:
Recover all freon on circuit, remove damaged condenser coil and filter drier, Install new filter

RLI_000551

drier and New after market condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon. After all repairs are complete we will check operations and return to service.
Unit is dated 1998 will have to out source with a vendor and manufacture the new coil. Lead time will be 1-3 weeks.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $6,207.75 | $6,207.75 |

### Unit-22 Replacement/ Scope/ Labor/ Equipment

Project: New installation of a complete 7.5-ton RTU unit Carrier or better



Integrity Solutions Mechanical LLC will provide labor and material necessary to complete the below scope of work:
• Provide safe work plan before starting work
• Labor installation all equipment includes 7.5-ton RTU. Using require equipment specs on from manufacture.
• Provide labor and crane equipment to lift new condenser on roof and new stand curb to set.
• Connect all new electrical connections to new disconnect outside and inside thermostat
• Instillation of new electrical heater kit.
• 1 lot lined straight ductwork & fitting
• Duct seal, duct wrap material & hanger material for ductwork
• 1 lot pipe & fittings
• Flex materials install
• Duct wrap material
• Labor inclusion plumbing for drain operations.
• New Thermostats
• Perform start up and operations
• Clean and remove and trash made from installation.

Warranty
Compressor: Limited five years in non-residential installations. All other covered components limited one year in non-residential installations

RLI_000552

Air Handler: All covered components limited one-year, High Performance Economizers (optional) - Limited five years.

| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $16,402.50 | $16,402.50 |

### Unit-23 Replacement/ Scope/ Labor/ Equipment

Project: New installation of a complete 7.5-ton RTU unit Carrier or better



Integrity Solutions Mechanical LLC will provide labor and material necessary to complete the below scope of work:
• Provide safe work plan before starting work
• Labor installation all equipment includes 7.5-ton RTU. Using require equipment specs on from manufacture.
• Provide labor and crane equipment to lift new condenser on roof and new stand curb to set.
• Connect all new electrical connections to new disconnect outside and inside thermostat
• Instillation of new electrical heater kit.
• 1 lot lined straight ductwork & fitting
• Duct seal, duct wrap material & hanger material for ductwork
• 1 lot pipe & fittings
• Flex materials install
• Duct wrap material
• Labor inclusion plumbing for drain operations.
• New Thermostats
• Perform start up and operations
• Clean and remove and trash made from installation.

Warranty
Compressor: Limited five years in non-residential installations. All other covered components limited one year in non-residential installations
Air Handler: All covered components limited one-year, High Performance Economizers (optional) - Limited five years.

| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $16,402.50 | $16,402.50 |

RLI_000553

### Unit-26 Parts/Labor

Unit 26 door repair replacement of all OEM parts and door from manufacture.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $429.00 | $429.00 |

### Unit-28 Scope/ Labor/ Parts

Unit-28 Condenser coil replacement including:
Recover all freon on circuit, remove damaged condenser coil and filter drier, Install new filter drier and New Trane OEM condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon. After all repairs are complete we will check operations and return to service.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $4,279.66 | $4,279.66 |

### Unit-53 Scope/ Labor/ Parts

Unit-53 Condenser coil micro-channel replacement including:
Recover all freon on circuit, remove damaged condenser coil and filter drier, Install new filter drier and New Lennox OEM micro-channel condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum down system to recommended 500 microns after passing we will re charge recovered freon. After all repairs are complete we will check operations and return to service.



| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $6,902.62 | $6,902.62 |

### Unit-54 Scope/ Labor/ Parts

Unit-54 Condenser coil micro-channel replacement including:
Recover all freon on circuit, remove damaged condenser coil and filter drier, Install new filter drier and New Lennox OEM micro-channel condenser coil from manufacture. Leak check circuit with dry nitrogen and ensure system is seal with bubbles and leak detector after will vacuum



RLI_000554

down system to recommended 500 microns after passing we will re charge recovered freon.
After all repairs are complete we will check operations and return to service.

| QTY. | UNIT PRICE | TOTAL |
|---|---|---|
| 1 | $6,476.62 | $6,476.62 |

| Subtotal | $102,093.10 |
|---|---|
| Total | $102,093.10 |

This quote on all the above repairs, replacement, and work, are based on building inspection done on 10-28-2021.

Location: 903 Bitters Rd. San Antonio TX. 78216

Reason for quote: Hail Damage on 5/27/2020

Inclusions:
• Taxes
• Labor, after approval integrity can provide each unit a break down before or after completion of work.
• Crane cost and any lifting equipment
• Permitting Fees through county/ state if required
• Equipment some parts and equipment including condenser coils may have multiple day lead time due to inventory and availability from vendors.

ISM Exclusions:
• Any work outside above scope
• Demo of any exiting equipment
• Load side electrical connection to disconnect.
• Existing mechanical, refrigeration issues present not related.

RLI_000555

NOTE: All work performed during regular business hours and after hours if necessary.

Can begin 1 week after approval

Let us know when you're ready to schedule, any questions please contact us. Thank you!

Regulated By The Texas Dept. Of Licensing & Regulation PO Box 12157,Austin,Tx,78711 1-800-803-9202
Taxes included with Price. Customer has the right to cancel at any time but 3 days before. Late fees will be applied for any future late invoices. Integrity solutions does not warranty drain lines or water damage unless we install the entire new drain line, from coil to termination.

**Contact Integrity Solutions Mechanical LLC**

3050 Post Oak Boulevard, 510, Houston, Texas 77056
7133460940    jjackson@isolutionm.com

Created with getjobber.com

RLI_000556



## Information:

HVAC company: *Integrity Solutions Mechanical LLC.*    Date of inspection: *10/28/2021*

Technician: *Jason Jackson*    Authorization from: *Needham Rice Assoc.*

Location: 903 Bitters Rd. San Antonio TX. 78216

## Purpose and Scope:

Investigate, evaluate, and make recommendations on all hail damage made on *5/27/2020* to all HVAC and refrigeration equipment on property refer to **page 3** to show picture of properties roof equipment in question.

On each equipment measure hail damage, located and the level of damage. Evaluate the mechanical equipment and refrigeration operations determine if hail damage caused, causing and or can cause future damage to the HVAC system and equipment.

Create a full recommendation and estimate on each equipment with details as into why recommendations are needed. **See Table1**

## Observation / Affected equipment:

Observed on the 6 sectional roof top mechanical equipment included package units (RTUs), split units condensing units (CUs), Wilkin cooler units, exhaust fans (EFs), vent-hoods.

RLI_000557

Units with the hail damage that will be under the recommendations 1,7,8,15,19-23,26,28,36,41,50,53,54

Found highly extensive condenser coil damage to multiple units. See page 4 pictures. Most of the coil damage found are either permanent too far damaged to straighten out or attempting to straighten will cause further damage and will not return to proper heat transfer conditions that is required.

Also found condenser fan motors and blades damaged due to hail dropping into the open grid fan section causing the fan blade to be off balance and over time damaging motors bearings.

Found several other with low hail damage and possible to use proper combing coil tool to strain out coil fins.

The remainder units not listed either had no hail damage or wasn't affected.

## Condenser coil assessment:

Hail damage found on condenser coils has extensive damage and will increase corrosion and this begins deteriorating the composition of the condenser coil, it weakens its integrity, making the fins difficult to straighten through traditional methods.  The present damage and permanent conditions accelerate the corrosion of an outdoor coil, and drastically affect the ability to transfer heat allowing the high-pressure gas to condense to liquid form which is a vital part of the refigerant process. As seen in pictures below you can see irreversible damage and if attempted to straighten will cause more damage. Found damage on micro channel coils as well see below pictures these style makes them more difficult to repair, should the damage be severe enough to bend the fins. And unlike traditional coils, microchannel coils cannot be combed, and would generally require replacement under comparable damage scenarios.

RL_000558



RLI_000559



Unit-1 size reference



Unit-28



Unit- 8



Unit-53

RLI_000560



Unit-23



Unit-54



Unit-19



Unit-28

RLI_000561

## Mechanical performance:

If a condenser becomes damaged, less heat transfer can take place if less heat rejection is created with an air-cooled condenser due to fouling or bent fins, the heat will start to accumulate in the condenser, making the condensing temperature rise. Once the condensing temperature starts to rise, there will come a point at the condensing temperature increases and the temperature relationship isn't great enough to reject heat from the condenser. With a damage condenser the system will run inefficiently because of the higher condensing temperature and pressure, causing high compression ratios.

The compressor's discharge temperature will also run hotter because of the higher condensing temperature and pressure, which will cause a higher compression ratio. The compressor will have to put more energy in compressing the suction pressure vapors to the higher condensing or discharge pressure. This added energy is reflected in higher discharge temperatures and higher amperage draws. When there is a high compression ratio with compressors, the volumetric efficiency will be lowered, the over all performance will be affected.

## Conclusions and Recommendations:

Found enough hail damage to recommend coil replacement straighten them will cause further damage and will affect the overall performance and will not return the unit to pre-loss condition, the coil should be restored to its original state before the hail occurred. Also recommend replacement on some, due to the extensive hail damage to coil. The age of equipment the parts and coils to make repairs are discontinued and no longer made. Also, in keeping up with EPA regulations discontinued R-22 equipment will need to replace with r-410 equipment.

RLI_000562

# Table 1 - Unit Observation Major repair list

| Unit ID | Mfg. | Unit Age | Type of Unit | Avg Damage (sq ft) | Coil Size(sq ft) | Coil Damage % | Recommendations/Comments |
|---------|------|----------|--------------|--------------------|--------------------|----------------|---------------------------|
| 1 | York | 2014 | Pkg/RTU | 3.5 | 12 | 30% | After full observation I found major damage to circuit A with about 30% hail damage. Found no damage on coils for circuit B. Found Condenser fan motor for circuit A bearings grinding this was due to fan blade being bent from Hail damage. Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil, motor and motor blade not replace this caused further damage to compressor fan motor and the efficiency of manufacture original operations |
| 7 | York | 2014 | Pkg/RTU | 3.0 | 12 | 26% | After full observation I found major damage to circuit A with about 26% hail damage. Found no damage on coils for circuit B. Found no structural damage or exterior damage. Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil this will cause further damage to compressor and the efficiency of manufacture original operations. |
| 8 | York | 2014 | Pkg/RTU | 2.5 | 12 | 22% | After full observation I found major damage to circuit A with about 22% hail damage. Found no damage on coils for circuit B. Found Condenser fan motor for circuit A bearings grinding this was due to fan blade being bent from Hail damage. Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil, motor and motor blade not replace this will caused further damage to compressor fan motor and the efficiency of manufacture original operations. |

RL11_000563

| Unit ID | Mfg. | Unit Age | Type of Unit | Avg Damage(sq ft) | Coil Size(sq ft) | Coil Damage % | Recommendations/Comments |
|---|---|---|---|---|---|---|---|
| 15 | Carrier | 1995 | Condenser unit | 7.5 | 18 | 42% | List of issues found Condenser coil saver hail damage, will cause further is attempted to straighten Compressor is damaged and the head pressure is at 300-320psi normal pressures are between 200-275psi this due to hail damaged to coil and not allowing the condenser to condense refigerant properly. Recommend replacing entire condenser, due to the age and the EPA regulations discontinued R-22 equipment. We will have to replace the entire HVAC system this will also include inside air handler and furnace. |
| 19 | Carrier | 1992 | Pkg/RTU | 12.0 | 26 | 46% | Equipment is too old to replace coils and is a discontinued R-22 unit and parts are no longer available to replace. Will Quote for a replacement. |
| 20 | Payne/BDB | 1998 | Pkg/RTU | 7.0 | 13.2 | 53% | After full observation I found major damage to circuit A with about 53% hail damage. Found no damage on coils. Found no structural damage or exterior damage Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil this will cause further damage to compressor and the efficiency of manufacture original operations. Recommend replacing coils |
| 21 | Carrier | 2017 | Pkg/RTU | 0.5 | 10 | 5% | Straighten coils with comb |
| 22 | Carrier | unknown | Pkg/RTU | 14.0 | 26 | 54% | Equipment is too old to replace coils and is a discontinued R-22 unit and parts are no longer available to replace. Will Quote for a replacement. |
| 23 | Carrier | unknown | Pkg/RTU | 10.0 | 26 | 38% | Equipment is too old to replace coils and is a discontinued R-22 unit and parts are no longer available to replace. Will Quote for a replacement. |
| 26 | York | 2016 | Pkg/RTU | 0.0 | 14 | 0% | Found access door panel for compressor section damaged and laying on roof. Recomend door and hardware replacement. |
| 28 | Trane | 2010 | Condenser unit | 12.5 | 19 | 66% | After full observation I found major damage to circuit A with about 66% hail damage. Found no damage on coils. Found no structural damage or exterior damage Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil this will cause further damage to compressor and the efficiency of manufacture original operations. Recommend replacing coils |

RLI_000564

| Unit ID | Mfg. | Unit Age | Type of Unit | Avg Damage(sq ft) | Coil Size(sq ft) | Coil Damage % | Recommendations/Comments |
|---------|------|----------|--------------|-------------------|------------------|---------------|--------------------------|
| 36 | Hoshizaki | 2017 | Condenser unit | 0.5 | 11 | 5% | Straighten coils with comb |
| 41 | Payne | Unknown | Condenser unit | 0.5 | 12 | 4% | Straighten coils with comb |
| 50 | Emerson | 2015 | Condenser unit | 0.4 | 8 | 5% | Straighten coils with comb |
| 53 | Lennox | 2015 | Pkg/RTU | 8.0 | 28 | 29% | After full observation I found major damage to circuit A with about 29% hail damage. Found no damage on coils. Found no structural damage or exterior damage Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil this will cause further damage to compressor and the efficiency of manufacture original operations. Recommend replacing coils |
| 54 | Lennox | 2015 | Pkg/RTU | 5 | 28 | 18% | After full observation I found major damage to circuit A with about 18% hail damage. Found no damage on coils. Found no structural damage or exterior damage Straighten fins will not return to proper conditions will cause further damage if attempting to straighten out. If coil this will cause further damage to compressor and the efficiency of manufacture original operations. Recommend replacing coils |

RLI₉000565

RLI_000566

**To:**     'Needham Rice & Assoc'[needham.rice@gmail.com]
**Cc:**     'Bardia Baheri'[bardiabaheri@gmail.com]
**From:**   Carlos Cagadas
**Sent:**   Thur 12/9/2021 7:09:59 PM
**Subject:** RE: Claim # 00489674 Beka One
Estimate #1055 - Integrity Solutions Mechanical LLC.pdf
Estimate.pdf
Nelson Binder of Report 02.pdf

Dear Ms. Needham,

This is a follow up to my 11/19/2021 email below.  We are reviewing the new information and I also forwarded it to JS Held for review as they prepared the loss estimate which was the basis of our below deductible determination.  I will update you once JS Held has completed its review of the new information provided by your office.

In the meantime, please advise if the attached estimate for $102,093.10 constitutes the amount of loss presented for this claim.  Please be advised that the scope of repairs per the JS Held estimate is based on the attached report by Nelson Forensics.  The estimate by Integrity Solutions Mechanical LLC includes units that we did not identify as having covered damage.  Additionally, the scope of repairs is different than what is recommended by Nelson.

Because it is in the process of assessing the company's claim, RLI reserves its rights under the policy.  Neither our communications with you nor our investigation should be construed to waive, and is not intended to be a waiver of, those rights under the policy or at law.  All such rights are expressly reserved.

Please let me know if you have any questions.

Sincerely,


Carlos Cagadas, CPCU, AIC
Claim Director
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL  60607
Phone:  (312) 675-4161

---

**From:** Carlos Cagadas
**Sent:** Friday, November 19, 2021 8:38 PM
**To:** 'Needham Rice & Assoc' <needham.rice@gmail.com>
**Cc:** Bardia Baheri <bardiabaheri@gmail.com>
**Subject:** RE: Claim # 00489674 Beka One

Dear Ms. Needham,

This acknowledges receipt of the newly received information per your 11/12/21 email.  This is the first communication we have received from your office since we sent you the attached 7/1/2021 email.

We will review the newly received information and then follow up with your office.

Sincerely,


EXHIBIT
A-9

RLI_000819

Carlos Cagadas, CPCU, AIC
Claim Director
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL 60607
Phone: (312) 675-4161

**From:** Needham Rice & Assoc <needham.rice@gmail.com>
**Sent:** Friday, November 12, 2021 11:41 AM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>; Bardia Baheri <bardiabaheri@gmail.com>
**Subject:** Claim # 00489674 Beka One

Mr. Cagadas,
Please find attached a report and an estimate from Integrity Solutions Mechanical LLC for the HVAC's on the property in San Antonio located on Bitters Rd on the above claim. Once this is reviewed by you, I would like to request a new inspection at the property.
Sophia


--
needham.rice@gmail.com



PA License # 2310186
Julie Needham
Sophia K Needham
Robert Rice

**If you are not the intended recipient, please contact the sender and delete this e-mail, any attachments and all copies.**

  **RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**
  **RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**

**To:**     Robert Montoux[RMontoux@jsheld.com]
**Cc:**     Carlos Cagadas[Carlos.Cagadas@rlicorp.com]
**From:**   Gabriel Gonzalez
**Sent:**   Thur 1/6/2022 9:48:54 PM
**Subject:** RE: 903 Bitters Rd. San Antonio TX-Comparative Estimate

Received. I've passed it along to the proper channels that can help you out with this. Someone should be reaching out soon.

Thank you for the consideration.


Gabe Gonzalez
Lead Estimator
D: 210-672-6690
F: 210-494-9526
11403 Jones Maltsberger
San Antonio, Texas 78216



---

**From:** Robert Montoux <RMontoux@jsheld.com>
**Sent:** Thursday, January 6, 2022 3:33 PM
**To:** Gabriel Gonzalez <GabrielG@freundenterprises.com>
**Cc:** Carlos.Cagadas@rlicorp.com
**Subject:** 903 Bitters Rd. San Antonio TX-Comparative Estimate

Good afternoon Gabriel,

Thank you for speaking with me today regarding the hail damaged condenser units and RTU's located at 903 Bitters Rd, San Antonio, Texas. As discussed, I am reaching out about receiving a comparative estimate for this loss to help determine correct scope and pricing based off the engineer and contractor reports. Attached are the reports and estimates to compare.

Thank you again and please reach out with any questions.

Robert Montoux | Consultant I

J.S. Held LLC
11122 Wurzbach Road, Suite 206, San Antonio, TX 78230
Office 210-243-2363 | Mobile 210-243-2363
vcard | email | jsheld.com



The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately. J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**EXHIBIT A-10**

RLI_001040

**To:**    Robert Montoux[RMontoux@jsheld.com]
**From:**  Tom Freund
**Sent:**  Thur 1/27/2022 12:25:54 AM
**Subject:** 903 Bitters

.......
;;;;;;;
<span style="background:gray">CAUTION EXTERNAL</span>

Robert:
First, I must apologize for my delay in responding. Once I finally sit down to get you my thoughts I am interrupted with issues that take a considerable amount of time to resolve.
Let me preface my approach to this request.
I first read the report by Nelson Forensics to acquire a baseline of engineered findings. I believe their findings to be thorough and to the point. I believe from what I read and ultimately saw that all units can be addressed with fin combing/straightening and that no equipment is in need of replacement or major repair due to the qualifying event. Any of the relief hoods and exhaust fans, in my opinion, are a non-factor and should not be considered for any repair or replacement.
I made a site visit and observed only, I purposely did not touch or troubleshoot any of the units at this location. I did this so that you and I can keep an arms distance from any potential further claims or accusations.
I state this <u>not knowing</u> the specifics of the current operation of the units shown on page #3 but considering this review initiated in 2020, that any borderline systems would have reared its inability to serve the tenants by now.
The pricing provided by Integrity Solutions Mechanical is opportunistic considering the age of the equipment and the situation but I understand the reasoning behind the proposal. That being said, I believe that the property owner should start the process of budgeting the replacement of systems for anything 10+ year and older; especially anything that utilizes R-22 refrigerant. A systematic and proactive approach will provide dividends on the long run. Also, if the roof is being considered for replacement or re-capping, I suggest that 4x4's be eliminated for equipment supports and equipment rails be considered in the long term.
I wanted to keep my thoughts brief and to the point. I think that we can comb out the existing fins for about $325.00 per unit but if you want an operational audit then the price might jump up closer to $600.00
If you need something more "official" from me just let me know and I can work something up.
Again I'm sorry for the delay in getting back to you and hope faith has not been lost in our organization.



**Thomas Freund**
Principal
Office: 210-494-1691 x 102
Direct: 210-672-6681
Email : Tom@freundenterprises.com
11403 Jones Maltsberger Rd.
San Antonio, TX 78216
www.comfort-air.com

*Disclaimer: The content of this email is confidential and intended for the recipient specified in the message only. It is strictly forbidden to share any part of this message with any third party without the written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion to ensure such an error does not occur in the future.*
*Regulated by the Texas State Board of Plumbing Examiners; Texas Master Plumbing License M-41299, Patrick Freund. P.O. Box 4200, Austin, Texas 78765-4200 Phone - 512-458-2145;*
*Regulated by The Texas Department of Licensing and Regulation, TACA 0146C; P.O. Box 12157, Austin, Texas 78711, 1-800-803-9202, 512-463-6599, www.tdlr.texas.gov*



RLI_001054

**To:**    Carlos Cagadas[Carlos.Cagadas@rlicorp.com]
**Cc:**    Rebecca Perez[rperez@jsheld.com]
**From:**  Robert Montoux
**Sent:**  Thur 2/3/2022 6:40:42 PM
**Subject:**  RE: Claim # 00489674 Beka One
<u>22.02.02-ComfortAir Estimate.pdf</u>

Carlos,

I've attached Comfort-Air's comparable estimate.

Thank you,

Robert Montoux | Consultant I
J.S. Held LLC
11122 Wurzbach Road, Suite 206, San Antonio, TX 78230
Office 210-243-2363 | Mobile 210-243-2363
<u>vcard</u> | <u>email</u> | <u>jsheld.com</u>

 JS|HELD

The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately. J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

---

**From:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Sent:** Wednesday, February 2, 2022 11:40 AM
**To:** Robert Montoux <RMontoux@jsheld.com>
**Cc:** Rebecca Perez <rperez@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

<span style="background-color:#595959;color:white">CAUTION EXTERNAL</span>

Hi Robert,

Per our call, please address the following:

    1.  Add back unit 13, 27, and 29 that address the gravity roof ventilator and vent repairs to your estimate.
    2.  Please review the engineer report and add in a combing for units 24, 25, 53.  Let me know if you agree.
    3.  Please obtain an actual estimate from Comfort-Air.
    4.  Who did Comfort-Air coordinate its inspection with? Please get me the details.


Thank you,

Carlos Cagadas, CPCU, AIC
Claim Director



EXHIBIT
A-12

RLI_001084

RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL 60607
Phone: (312) 675-4161

---

**From:** Robert Montoux <RMontoux@jsheld.com>
**Sent:** Thursday, January 27, 2022 11:32 AM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Cc:** Rebecca Perez <rperez@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

Good morning Carlos,

I received feedback from Comfort-Air Engineering, the local mechanical contractor in San Antonio. Please see the attached notes regarding claim #00489674-Beka One. As previously discussed with Nelson Engineering and now with Comfort-Air, it is my belief that J.S. Held's original estimate was accurate. No further scope is needed besides combing out the fins on the units that were hit with hail correlating to the loss date of 05/27/20. After review of the photos and Nelson report, I also added combing to all units that were hit from the related hailstorm and did not include units that had pre-existing hail damages. I update the estimate to match Comfort-Air's combing price of $325 per unit for the larger commercial units and added 6 more units for combing that were hit by the related hailstorm (19, 21, 36, 54, 56, and 57). Integrity Mechanical Solutions also had combing for units 21 and 36 in their estimate. I've attached the updated detailed estimate for your review.

If you have any questions or comments upon review, please don't hesitate to contact me.

Thank you,

Robert Montoux | Consultant I
J.S. Held LLC
11122 Wurzbach Road, Suite 206, San Antonio, TX 78230
Office 210-243-2363 | Mobile 210-243-2363
vcard | email | jsheld.com
JS|HELD

The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately.
J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

---

**From:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Sent:** Tuesday, January 25, 2022 5:09 PM
**To:** Robert Montoux <RMontoux@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

CAUTION EXTERNAL

Thank you

**From:** Robert Montoux <RMontoux@jsheld.com>
**Sent:** Tuesday, January 25, 2022 5:03 PM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Subject:** RE: Claim # 00489674 Beka One

Good afternoon Carlos,

I apologize for the wait. I reached out to the contractor this morning for an update and have not heard back. I will call again tomorrow to receive an update.

Thank you,

Robert Montoux | Consultant I
J.S. Held LLC
11122 Wurzbach Road, Suite 206, San Antonio, TX 78230
Office 210-243-2363 | Mobile 210-243-2363
vcard | email | jsheld.com



The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately. J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**From:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Sent:** Tuesday, January 25, 2022 4:48 PM
**To:** Robert Montoux <RMontoux@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

CAUTION EXTERNAL

Robert,

Please provide an update.

Thank you,

Carlos Cagadas, CPCU, AIC
Claim Director
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL  60607
Phone:  (312) 675-4161

**From:** Robert Montoux <RMontoux@jsheld.com>
**Sent:** Wednesday, January 12, 2022 11:53 AM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>

RLI_001086

**Subject:** RE: Claim # 00489674 Beka One

Carlos,

I just got off the phone with the local contractor that will be doing the comparative estimate and wanted to give you an update. They are currently reviewing the reports today. He said that if he can just do a desk review, he can have the comparative estimate back to me by the end of the week. However, if he needs to have a technician go out and inspect the property to determine scope then he'll let me know and I can coordinate reinspection with the PA.

Thank you,

Robert Montoux | Consultant I
J.S. Held LLC
11122 Wurzbach Road, Suite 206, San Antonio, TX 78230
Office 210-243-2363 | Mobile 210-243-2363
vcard | email | jsheld.com



The information contained in this communication is privileged and confidential, and is intended only for the use of the individual or entity named above and others who have been specifically authorized to receive it. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, or if any problems occur with transmission, please notify the sender immediately. J.S. Held and its affiliates and subsidiaries are not a certified public accounting firm and do not provide audit, attest, or any other public accounting services. J.S. Held is not a law firm and does not provide legal advice. All rights reserved.

**From:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Sent:** Tuesday, January 11, 2022 3:38 PM
**To:** Needham Rice & Assoc <needham.rice@gmail.com>
**Cc:** Robert Montoux <RMontoux@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

CAUTION EXTERNAL

Dear Ms. Needham,

Mr. Robert Montoux with JS Held is reviewing the information submitted by your office and will follow up with you should a re-inspection be necessary. At this time, we maintain our current position as outlined in our February 11, 2021 letter. As such, our current amount of loss falls below the deductible and no payment can be issued.

Please let me know if you have any questions.

Sincerely,

Carlos Cagadas, CPCU, AIC
Claim Director
Mt. Hawley Insurance Company
525 W. Van Buren St., Ste. 350
Chicago, IL 60607

RLI_001087

Phone:  (312) 675-4161

---

**From:** Needham Rice & Assoc <needham.rice@gmail.com>
**Sent:** Tuesday, January 11, 2022 3:02 PM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Subject:** Re: Claim # 00489674 Beka One

Mr. Cagadas,
We are still awaiting a date for the reinspection of the above claim from your company, please let us know when we can schedule.  Also, we have not received any funds regarding the HVAC systems, will you be releasing this soon?
Sophia.


--
needham.rice@gmail.com



PA License # 2310186
Julie Needham
Sophia K Needham
Robert Rice

**If you are not the intended recipient, please contact the sender and delete this e-mail, any attachments and all copies.**

 **RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**
 **RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**

RLI_001088



**Comfort-Air Engineering, Inc.**
**Primo Plumbing, Inc.**

11403 Jones-Maltsberger
San Antonio, Texas 78216
Phone (210) 494-1691
Fax (210) 494-9526
TACLA 146C / Patrick Freund M41299

## HVAC/Plumbing Pricing
### 903 Bitters
### 2/2/2022

### Scope:
*Plans & Specifications based upon narrative*
*Acknowledgement of ZERO addenda*

### HVAC Scope:

➢ Comb out condenser fins on the specified systems
➢ Replacement of specified exhaust fan
➢ Utilizing existing electrical whips
➢ Hoisting; as required

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #1*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #7*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #8*

**Base Price:**                     $ 5,065.00 (Plus State & Local Taxes)
*Unit #13 – Replacement of exhaust fan*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #15*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #19*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #20*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #21*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #24*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #25*

**Base Price:**                     $ 5,065.00 (Plus State & Local Taxes)
*Unit #27 – Replacement of exhaust fan*

**Base Price:**                     $ 325.00 (Plus State & Local Taxes)
*Unit #28*

**Price is valid for 30 days**
This bid is conditioned on the use of the AIA A401-1997 subcontract, and in the exclusion of any requirement to name additional insureds
or to waive rights of subrogation for claims against workman's compensation, employer's liability and commercial general liability
insurance.

Regulated by The Texas Department of Licensing and Regulation - PO Box 12157 - Austin, Texas 78711
(800)-803-9202 or (512)-463-6599 www.tdlr.texas.gov

Regulated by the Texas State Board of Plumbing Examiners PO Box 4200: Austin, TX 78765: (512) 936-5200: License M-41299






APPX 339

RLI_001089

| | |
|---|---|
| **Base Price:**<br>*Unit #36* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #41* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #50* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #53* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #54* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #56* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:**<br>*Unit #57* | $ 325.00 (Plus State & Local Taxes) |

## Exclusions (Where Applicable):

- ✓ Pre-existing conditions of affected equipment
- ✓ Roof carpentry; wood blocking
- ✓ Flashing(s) & counter flashing(s)
- ✓ Fire Protection Services
- ✓ Temporary Services
- ✓ Abatement Services
- ✓ Structural Services
- ✓ Painting Services
- ✓ Spoil Removal
- ✓ Rock sawing, cutting, and removal
- ✓ X-Ray Services
- ✓ Roof cutting and patching (Waterproofing)
- ✓ Roofing walk-pad protection and adhesives
- ✓ Tie-in(s) beyond Five Feet (5') of proposed structure
- ✓ Sheetrock or block wall patching
- ✓ Concrete work; formed or repair
- ✓ Barricade(s)
- ✓ Dumpster(s)
- ✓ After Hours Labor
- ✓ Taxes
- ✓ Prevailing scale wage and certified payroll
- ✓ Bonding

Respectfully Submitted,

Thomas Freund

Comfort-Air Engineering, Inc. / Primo Plumbing, Inc.
Page 2
903 Bitters

RLI_001090

**To:** 'Needham Rice & Assoc'[needham.rice@gmail.com]
**Cc:** 'Robert Montoux'[RMontoux@jsheld.com]
**From:** Carlos Cagadas
**Sent:** Tue 2/8/2022 4:32:59 PM
**Subject:** RE: Claim # 00489674 Beka One
2-11-2021 Letter to Insured.pdf
22.02.02-ComfortAir Estimate.pdf

Dear Ms. Needham,

We maintain our current position as outlined in our February 11, 2021 letter attached. Additionally, we have obtained an estimate from a local contractor that is able to complete the mechanical equipment repairs based upon Nelson's Mechanical Equipment Hail Distress Evaluation. The estimate totals $15,655. A copy of this estimate is attached. The Windstorm or Hail deductible is 1% of the building limit of $5,495,040 which is $54,950. As such, the covered damage is still less than the deductible.

If there is additional information that you believe RLI should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

Please be advised that we are not waiving our rights to assert any and all other rights or defenses under the policy or applicable law. This correspondence is made without prejudice to any defenses or rights that RLI Insurance Company may have and without waiver of any of the terms, conditions, or provisions of this policy of insurance.

This correspondence is based on the facts as presently determined after our investigation. If any additional facts should become known, which may affect coverage, RLI Insurance Company reserves its right to reevaluate our position.

Sincerely,

Carlos Cagadas, CPCU, AIC
Claim Director
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL 60607
Phone: (312) 675-4161

**From:** Carlos Cagadas
**Sent:** Tuesday, January 11, 2022 3:38 PM
**To:** 'Needham Rice & Assoc' <needham.rice@gmail.com>
**Cc:** 'Robert Montoux' <RMontoux@jsheld.com>
**Subject:** RE: Claim # 00489674 Beka One

Dear Ms. Needham,

Mr. Robert Montoux with JS Held is reviewing the information submitted by your office and will follow up with you should a re-inspection be necessary. At this time, we maintain our current position as outlined in our February 11, 2021 letter. As such, our current amount of loss falls below the deductible and no payment can be issued.

Please let me know if you have any questions.



EXHIBIT
**A-13** APX 341

Sincerely,

Carlos Cagadas, CPCU, AIC
Claim Director
Mt. Hawley Insurance Company
525 W. Van Buren St., Ste. 350
Chicago, IL  60607
Phone:  (312) 675-4161

---

**From:** Needham Rice & Assoc <needham.rice@gmail.com>
**Sent:** Tuesday, January 11, 2022 3:02 PM
**To:** Carlos Cagadas <Carlos.Cagadas@rlicorp.com>
**Subject:** Re: Claim # 00489674 Beka One

Mr. Cagadas,
We are still awaiting a date for the reinspection of the above claim from your company, please let us know when we can schedule.  Also, we have not received any funds regarding the HVAC systems, will you be releasing this soon?
Sophia.


--
needham.rice@gmail.com



PA License # 2310186
Julie Needham
Sophia K Needham
Robert Rice

**If you are not the intended recipient, please contact the sender and delete this e-mail, any attachments and all copies.**

**RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**
**RLI Correspondence Tracking Token: Please do not alter or remove**
[CHcJZnC01iCwFeY9yX3HhuNUlwnukV0uQv3+xD7MKI/kn6wJgkDL+HJXlsCtdIh6fLbj6fohuXA=]
**End of Token**

RLI_001098



**MH**

**MT. HAWLEY INSURANCE COMPANY**

CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

February 11, 2021

**Send Certified Mail 92148969009997901637111067 Return Receipt Requested**

Beka One, LLC
Valcor Commercial Real Estate
Attention: Bardia Baheri
1723 N Loop 1604 E STE 204
San Antonio, TX 78232

RE:    Insured:        Beka One, LLC
       Claim #:        00489674
       Policy #:       RKA0300001
       Incident Date:  05/27/20
       Type of Loss:   Hail Loss
       Loss Location:  903 E. Bitters Road, San Antonio, TX 78216

## PLEASE REF OUR CLAIM # AND POLICY # ON ALL CORRESPONDENCE

Dear Mr. Baheri;

We are writing in regards to the above captioned claim. RLI Insurance Company (hereinafter "RLI"), received a claim from Beka One, LLC for hail damage. This claim has been reported under RLI Commercial Property Policy Number RKA0300001 with effective dates of March 7, 2020 to March 7, 2021. The date of loss was reported as May 27, 2020. We received notice of this loss on October 16, 2020. We have previously sent you a letter in regards to our investigation of the roof portion of your claim. Please refer to our January 28, 2021 correspondence for questions as it relates to the roof.

To assist with our investigation, we engaged independent adjusting firm Engle Martin and Associates. Stephen Klink, National General Adjuster, inspected your property on October 30, 2020 with Mr. Mike Hiser with Empire Roofing. Mr. Klink observed splatter marks on air conditioning covers. To further assist with our investigation, we engaged Laura C. Schulte, P.E., with Nelson Forensics (Nelson) to determine the extent of distress to the mechanical equipment related to hail on the reported date of loss and recommended repairs for any hail distress to each coil surface. On November 23, 2020, Ms. Schulte inspected the property. Based on observations and analysis, Nelson is of the following opinions related to the mechanical equipment at the subject structure:

- Coil distress consistent with hailstone impacts on or around the reported date of loss was visible on exposed north, east, and west-facing coil surfaces on eight units;
- Coil distress consistent with hail stone impacts on exposed south-facing coil surfaces can be attributed to one or more hail events prior to the date of loss;
- On eight of the units, coil distress that can be attributed to a hail event on or around the reported date of loss can be repaired by straightening the bent and flattened fins on the distressed coils;

RLI_001099

MT. HAWLEY
INSURANCE COMPANY

- On five of the units, the coil distress can be attributed to one or more hail events prior to the date of loss and is considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended;
- Based on the limited extent of the hail distress, there has been negligible, if any, reduction in unit cooling capacity and negligible, if any, increases in unit condensing pressure and corresponding mechanical and thermal stresses that can be attributed to hailstone impacts;
- The limited indentations on one of the GVs and EFs covers related to hail stone impacts occurred from a hail event on or before the date of loss. These indentations have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.

A copy of Nelson's report has been provided.

Based on the investigation of your claim and a review of your policy, we provide you with the following determination. In addition to the terms and conditions set forth by the underlying policy, below are certain policy provisions set forth by the Mt. Hawley policy. Please refer to your policy for the full text.

Please refer to the Commercial Property Conditions which state in pertinent part:

### H. POLICY PERIOD, COVERAGE TERRITORY
Under this Coverage Part:
1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

*** ***

Next, please refer to the Windstorm Or Hail Percentage Deductible which states in part:

### SCHEDULE

| Premises Number | Building | Windstorm Or Hail Deductible Percentage |
|---|---|---|
| 1 | 1 | 1% |

The Windstorm or Hail Deductible, as shown in the Schedule and set forth in this endorsement, applies to covered loss or damage caused directly or indirectly by Windstorm or Hail. This Deductible applies to each occurrence of Windstorm or Hail.

...

B. Calculation Of The Deductible – Specific Insurance Other than Builders' Risk
1. Property Not Subject To Value Reporting Forms

   In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to 1%, 2%, 5% or 10% (as shown in the Schedule) of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

*** ***

RLI_001100

MT. HAWLEY
INSURANCE COMPANY

As noted above, some of the damages to the equipment had occurred prior to the policy period. We are unable to compensate you for damages that had occurred prior to the policy with us.

J.S. Held completed an estimate for mechanical equipment repairs based upon Nelson's Mechanical Equipment Hail Distress Evaluation. Their estimate totaled $2,730.05. A copy of J.S. Held's estimate is enclosed. The Windstorm or Hail deductible is 1% of building limit of $5,495,040 which is $54,950. The damage is less than the deductible.

If there is additional information that you believe RLI should consider in our coverage analysis, please either contact the undersigned or forward it to our attention.

We finally refer you to the Texas Changes Endorsement that states the following:

    **B. Legal Action Against Us**

    1. The **Legal Action Against** Us Commercial Property Condition is replaced by the following, except as provided in B.2. below:

       **Legal Action Against Us**

       **a.** Except as provided in Paragraph b., no one may bring a legal action against us under this Coverage Part unless:

          **(1)** There has been full compliance with all of the terms of this Coverage Part; and

          **(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

       **b.** With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

          **(1)** There has been full compliance with all the terms of this Coverage Part; and

          **(2)** The action is brought within the earlier of the following:

             **(a)** Two years and one day from the date we accept or reject the claim; or

             **(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

Please be advised that we are not waiving our rights to assert any and all other rights or defenses under the policy or applicable law. This letter is made without prejudice to any defenses or rights that RLI Insurance Company may have and without waiver of any of the terms, conditions, or provisions of this policy of insurance.

This letter is based on the facts as presently determined after our investigation. If any additional facts should become known, which may affect coverage, RLI Insurance Company reserves its right to reevaluate our position.

If you have any questions, please contact me at 800-444-0406 ex. 5883 or Shawn.garner@rlicorp.com

Respectfully,

Shawn Garner
Director Property Claims

RLI_001101



**Comfort-Air Engineering, Inc.**

**Primo Plumbing, Inc.**

11403 Jones-Maltsberger
San Antonio, Texas 78216
Phone (210) 494-1691
Fax (210) 494-9526
TACLA 146C / Patrick Freund M41299

## HVAC/Plumbing Pricing
### 903 Bitters
### 2/2/2022

### Scope:
*Plans & Specifications based upon narrative*
*Acknowledgement of ZERO addenda*

### HVAC Scope:

➢ Comb out condenser fins on the specified systems
➢ Replacement of specified exhaust fan
➢ Utilizing existing electrical whips
➢ Hoisting; as required

**Base Price:**
*Unit #1*                    $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #7*                    $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #8*                    $ 325.00 (Plus State & Local Taxes)

**Base Price:**                 **$ 5,065.00 (Plus State & Local Taxes)**
*Unit #13 – Replacement of exhaust fan*

**Base Price:**
*Unit #15*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #19*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #20*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #21*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #24*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**
*Unit #25*                   $ 325.00 (Plus State & Local Taxes)

**Base Price:**                 **$ 5,065.00 (Plus State & Local Taxes)**
*Unit #27 – Replacement of exhaust fan*

**Base Price:**
*Unit #28*                   $ 325.00 (Plus State & Local Taxes)

**Price is valid for 30 days**

This bid is conditioned on the use of the AIA A401-1997 subcontract, and in the exclusion of any requirement to name additional insureds
or to waive rights of subrogation for claims against workman's compensation, employer's liability and commercial general liability
insurance.

Regulated by The Texas Department of Licensing and Regulation - PO Box 12157 - Austin, Texas 78711
(800)-803-9202 or (512)-463-6599 www.tdlr.texas.gov

Regulated by the Texas State Board of Plumbing Examiners PO Box 4200;  Austin, TX  78765; (512) 936-5200;  License M-41299









APPX 346

RLI_001102

| | |
|---|---|
| **Base Price:** *Unit #36* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #41* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #50* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #53* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #54* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #56* | $ 325.00 (Plus State & Local Taxes) |
| **Base Price:** *Unit #57* | $ 325.00 (Plus State & Local Taxes) |

## Exclusions (Where Applicable):

- ✓ Pre-existing conditions of affected equipment
- ✓ Roof carpentry; wood blocking
- ✓ Flashing(s) & counter flashing(s)
- ✓ Fire Protection Services
- ✓ Temporary Services
- ✓ Abatement Services
- ✓ Structural Services
- ✓ Painting Services
- ✓ Spoil Removal
- ✓ Rock sawing, cutting, and removal
- ✓ X-Ray Services
- ✓ Roof cutting and patching (Waterproofing)
- ✓ Roofing walk-pad protection and adhesives
- ✓ Tie-in(s) beyond Five Feet (5') of proposed structure
- ✓ Sheetrock or block wall patching
- ✓ Concrete work; formed or repair
- ✓ Barricade(s)
- ✓ Dumpster(s)
- ✓ After Hours Labor
- ✓ Taxes
- ✓ Prevailing scale wage and certified payroll
- ✓ Bonding

Respectfully Submitted,

Thomas Freund

Comfort-Air Engineering, Inc. / Primo Plumbing, Inc.
Page 2
903 Bitters

RLI_001103

# ZMFFJ&H

ZERBE, MILLER, FINGERET, FRANK, JADAV & HUNZIKER, LLP
3009 POST OAK BOULEVARD, SUITE 1700
HOUSTON, TX 77056
TEL: 713.350.3529 | FAX: 713.350.3607

April 26, 2022

RECEIVED

MAY 1 6 2022

CLAIM DEPARTMENT

**Via CM/RRR:**
RLI Insurance Corporation
525 W. Van Buren St., Ste. 350
Chicago, IL 60607

Re:    Client/Insured        :    Beka One, LLC
       Claim No.(s)          :    00489674
       Policy No.            :    RKA0300001
       Property Address      :    903 E. Bitters Rd., San Antonio, TX 78216
       Actual Damages        :    $1,152,265.65
       Attorney's Fees       :    $15,000
       Total Net Demand      :    $1,167,265.65
       Expiration            :    61 Calendar Days

## FORMAL DTPA SETTLEMENT DEMAND &
## NOTICE UNDER TEXAS INSURANCE CODE CHAPTER 542A

Dear Sir or Madam Claims Administrator:

Please accept this letter as my client's formal demand for settlement under the Texas Deceptive Trade Practices Act, as well as proper notice pursuant to Chapter 542A of the Texas Insurance Code. As you know from previous communications, this law firm represents Beka One, LLC ("Beka One") regarding the above-referenced claim, as well as all damages related thereto. Please continue to direct all future communications accordingly. As RLI Insurance Company ("RLI") is also aware, our client sustained severe and increasing loss at its property because of a wind and hail storm that occurred on May 27, 2020.

In the aftermath, our client relied on its insurance company to help its recover and rebuild. However, contrary to RLI's representations to Beka One, RLI improperly adjusted the claim at issue, which resulted in our client not receiving the coverage it originally purchased. This demand has now become necessary in order to recover damages arising from RLI's unfair refusal to pay the insurance benefits represented by the specific insurance policy sold to our client. Accordingly, Beka One now seeks relief under Texas Common Law, the Deceptive Trade Practices Act, and all applicable provisions within the Texas Insurance Code.

**EXHIBIT**
**A-14**

SCANNED MAY 16 '22

RLI_001128

## BACKGROUND FACTS

RLI is fully aware of the circumstances surrounding this matter. Specifically on the date of incident, May 27, 2020, the property owned by Beka One suffered a severe and increasing loss to their property due to a hail and wind storm. However, knowing that the property was insured, our client believed that its insurer would stand by it in this difficult time. *See* **Exhibit 1.**

Beka One reported the loss to its Property as soon as it was discovered. After being informed of the damage caused to our client's property, RLI retained Engle Martin & Associates on or around October 16, 2020 as a third party adjuster for the claim. Shortly thereafter, Engle Martin & Associates authorized Nelson Forensics, LLC to evaluate the mechanical equipment at the subject structure and determine the intensity of the damage. On December 21, 2021, Nelson Forensics submitted a Storm Distress Evaluation and a Mechanical Equipment Hail Distress Evaluation to Engle Martin. *See* **Exhibit 2.**

On January 28, 2021, RLI sent a denial letter to Beka One, informing our client that the reports issued by Nelson Forensics indicated that the damage to the roof of the property was cosmetic in nature and therefore not covered under the policy. The letter further stated that Engle Martin would complete an estimate for condenser coil repair in order to see if it met the deductible, but no other part of damages to the Property would be estimated. *See* **Exhibit 3.**

Engle Martin subsequently retained J. S. Held to review and inspect the Property and provide an estimate of the mechanical damage. J. S. Held released this estimate on or about February 1, 2021 and estimated that replacing the damaged parts of the HVAC units would cost a total of $2,730.05. *See* **Exhibit 4.** Following this estimate, RLI sent another letter to Beka One, stating that J. S. Held's estimate valued the repairs as under the deductible, therefore it would not be tendering any payment. *See* **Exhibit 5.**

Plaintiff retained Cram Roofing Company to perform minimal repairs to the property on or around March 16, 2021. Cram Roofing repaired the front door window and tracked, located, and repaired multiple cuts/punctures and loose patches on the field of the roof and room five for a total of $690.09. *See* **Exhibit 6.**

Frustrated with the slow-moving claims process, Beka One retained the services of Needham Rice & Associates LLC on or about April 29, 2021 to assist with the claim process.

On or about August 25, 2021, Cram Roofing again worked on our client's Property. Temporary and permanent repairs were carried out to address issues with the voids on the base flashing membrane on the roof curbs and pitch pans, as well as punctures and cuts on the roof membrane. These repairs totaled $1,840.25. *See* **Exhibit 7.**

Integrity Solutions Mechanical LLC ("ISM") was later retained by Beka One to investigate and evaluate the Property damage as well as make recommendations regarding repairs to the HVAC and refrigeration equipment. On or about October 28, 2021, ISM released their report, which stated that enough hail damage was found to recommend full coil replacement versus

RLI_001129

attempting to repair the existing ones. *See* **Exhibit 8.** Based on this report, ISM also prepared an estimate totaling $102,093.10 to fix the damage. *See* **Exhibit 9.**

On or about January 11, 2022, Needham Rice sent an email to RLI, inquiring as to whether it intended to make a payment related to the HVAC systems. RLI responded on or about February 8, 2022, reiterating the position outlined in their previous denial letter that the loss amount was less than the deductible; therefore, it would still not be tendering payment. *See* **Exhibit 10.**

After experiencing repeated issued with two HVAC units in particular, Beka One retained Cool Planet Air to provide an estimate to fix the damage to those units. On or about February 9, 2022, Cool Planet Air provided their estimate in the amount of $23,675.36 to our client. *See* **Exhibit 11.**

On or about April 21, 2022, Needham Rice released an updated estimate of the damages to the property in the amount of $1,152,265.65. *See* **Exhibit 12.** This estimate reflected the total known damages to the property with updated pricing.

Beka One made a timely and complete claim and cooperated in every aspect of same. However, to date, it has not been provided with the coverage owed to it by RLI. This betrayal stands in stark contrast to the representation made by the carrier when the policy was purchased. In addition to the damage and associated property loss reflected in the previously provided estimates, our client has experienced significant emotional distress due to the claim handling by you. Such conduct exposes RLI to specify the causes of action under Texas Law.

## CAUSES OF ACTION

### A. TEXAS INSURANCE CODE - UNFAIR SETTLEMENT PRACTICES

The Texas Insurance Code expressly prohibits certain unfair settlement practices as they relate to claims by insured parties or beneficiaries of insurance policies. The clear nature of the same is to discourage insurers from taking advantage of policyholders such as the insured in the current matter. To this end, based upon the conduct of RLI to date, it has thus far committed the following prohibited practices:

1. Misrepresenting a material fact or policy provision relating to coverage;

2. Failing to make prompt, fair, and equitable settlement of a claim after the insurer's liability is established;

3. Failing to promptly provide a reasonable explanation of the basis for denial of a claim or for the offer of a compromise settlement; and

4. Refusing to pay a claim without conducting a reasonable investigation of the details of the claim.

RLI_001130

## B. TEXAS INSURANCE CODE - PROMPT PAYMENT OF CLAIMS

The Prompt Payment of Claims Statute set forth within the Texas Insurance Code, imposes certain deadlines for an insurance company to acknowledge, investigate, and then accept or reject a claim. Specifically, Texas Insurance Code §542.060(a) states, "[i]f an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18% a year as damages, together with reasonable attorney's fees."

Additionally, insurance companies must request from the claimant all items, statements, and forms that the insurance company reasonably believes will be required from the claimant. Multiple requests may be permitted when reasonably necessary, but multiple, incremental, and meaningless requests are an absolute violation of the statute. To this end, all reasonably necessary information has already been provided to RLI by the insured.

Should RLI repeatedly request irrelevant information despite having all pertinent and necessary items and statements, and still fail to fully evaluate the insured's claim, RLI will be in violation of the Texas Insurance Code, which prohibits insurers from repeatedly requesting information that has already been provided to them by their insured or is wholly irrelevant to their evaluation of the insured's claim, in an effort to extend the statutorily-prescribed 15-day acceptance/denial evaluation period.

Finally, RLI has made no offer to settle for an amount that reasonably reflects the objective value of the insured's loss. Moreover, no valid reason was ever given for the actions taken by RLI against the insured, as outlined above.

## C. DECEPTIVE TRADE PRACTICES ACT – VIOLATIONS OF THE TEXAS INSURANCE CODE

The conduct of RLI in this matter constitutes false, misleading and deceptive acts and practices in violation of the Texas Deceptive Trade Practices Act, specifically because of the following:

1. Unwarranted denial of full payment of insured's claim;
2. Failure to communicate pertinent information to the insured;
3. Failure to conduct a reasonable investigation of the claim;
4. Failure to deny or pay the claim within a reasonable period of time;
5. Failure to confirm or deny coverage within a reasonable period of time;
6. Failure to attempt to come to a fair and reasonable settlement when liability is clear;
7. Offering substantially less money to settle than the true value of the claim;
8. Failure to promptly provide a reasonable explanation for denial of a claim;
9. Failure to enter into any negotiations for settlement of the claim; and/or
10. Failure to respond to a time-limit demand.

RLI_001131

Additionally, RLI knowingly and intentionally engaged in unfair settlement practices by performing a substandard and unreasonable investigation of our client's claim through the use of biased or unqualified claim adjusters. Under Texas law, each and every violation of Chapter 541 of the Texas Insurance Code, amounts to a violation of §17.50(a)(4) of the Deceptive Trade Practices Act.

## D. TEXAS LAW - BREACH OF CONTRACT

It is without dispute that Beka One entered into a valid and enforceable written insurance contract pursuant to the laws of Texas. The contract outlined obligations to be performed by both the insured and RLI, including but not limited to, the insured paying policy premiums for its insurance coverage, and RLI then providing said coverage for its claims in the event of covered damage. Our client has fully performed its contractual obligations by making policy premium payments and timely reporting covered losses upon its discovery, as required by its insurance contract with RLI.

To the contrary, RLI has materially breached the contract by failing to provide adequate coverage following the claim filed by the client. Moreover, despite filing a claim which notified RLI of this loss, Beka One has yet to receive full and fair compensation for its covered damages as required by its underlying insurance contract. As such, in addition to the above, our client give notice pursuant to Chapter 38.001 of the Civil Practice and Remedies Code, and in compliance with 542A.007 of the Texas Insurance Code, that we will seek all available attorney's fees, costs of court, penalties, and any additional remedies recoverable under Texas law.

## CONCLUSION

Beka One has incurred considerable damages as a result of the mishandling of its insurance claim. When looking at all the evidence in this matter, it would objectively be enough to convince a jury to reward a substantial judgment of actual and penalty damages against RLI in this case. Taking into consideration the undisputed and irrefutable evidence that exists, the fact that a substantial judgment would likely be awarded against RLI by a jury and in order to avoid litigation, we are offering to settle this matter for a total of $1,167,265.65, which includes actual damages in the amount of $1,152,265.65 and reasonable attorney's fees in the amount of $15,000.00 in exchange for a full settlement and release of all claims and causes of action related to this matter. Under Sec. 542A.004, you are also invited to re-inspect the insured's property within the timelines set forth by same.

We reserve the right to adjust the above amounts to conform to the information and evidence that will become available during the time leading up to trial, should litigation become necessary. This includes additional attorney's fees, court costs incurred, increasing penalties, and all applicable pre-judgment and penalty interest allowed by Texas law.

## SETTLEMENT AND RELEASE

The ultimate purpose of this letter is to encourage RLI to resolve this matter in a fair and equitable manner without the need for further legal action. In the event RLI fails to respond to this

RLI_001132

letter with an offer of settlement that is acceptable, the insured will have no alternative but to instruct our firm to file a lawsuit against RLI. The lawsuit will be filed under the relevant sections of the Texas Deceptive Trade Practices Act and the Texas Insurance Code, as well as the other authorities outlined above.

In such lawsuit, rather than seeking only the monetary amount we are now asking for, we will seek to recover the full measure of damages, expenses and attorney's fees incurred, as allowed by law. As such, this correspondence once again constitutes formal notice under §38.001 and all related provisions of the Texas Civil Practice and Remedies Code, of our intent to seek attorney's fees in this matter. Ultimately, the amount of damages awarded by a jury will increase dramatically.

This demand is conditioned upon delivery of written acceptance prior to the expiration of sixty-one calendar days from the date of the receipt of this notice and demand. RLI has been provided with copies of all records and information relevant to evaluating this claim. We therefore consider RLI in a position to act promptly on this demand. Pursuant to Section 542A.003(a), after the expiration of sixty-one calendar days from the date of it receiving this demand, the demand will be withdrawn. We reserve the right to then proceed against RLI for the full extent of all possible damages under Texas law. If you desire to resolve this matter without the necessity of a lawsuit, please contact me at my office within sixty days of your receipt of this letter to discuss a possible resolution.

With regard to the above demand, be aware that this law firm has been assigned an attorney's fee interest in any and all claim(s) related to the above policy. Moreover, RLI must limit its contact to our firm only with regard to any information or assistance needed related to said claim(s). In addition, **please send any future payments related to the above policy to this law firm's address for handling, with this firm named as an additional payee to reflect our interest in attorney's fees and expenses associated with this matter.**

## REQUEST FOR DOCUMENTATION & INFORMATION

In the spirit of facilitating resolution, please provide a payment log indicating all payments made and to whom they were made, including a brief description of the purpose of each payment regarding this claim. Moreover, consistent with the insured's rights under the policy, please immediately forward any and all copies of the following to our attention:

1. Underwriting file, including the policy, declarations page, application, amendments, etc.;
2. Letters, invoices, and receipts sent to or from Beka One and/or its representatives;
3. A full copy of the claims file;
4. All documents regarding the processing and adjustment of the above claim;
5. A description outlining why the above claim has not been paid in full;
6. Individual adjuster(s)' and RLI's file notes;
7. Any videos taken and received regarding the above claim;
8. Any photographs taken and received regarding the above claim; and
9. All investigative or expert reports regarding the above claim.

RLI_001133

In closing, please know that a copy of this document is being sent direct to our client, pursuant to Sec. 542A(c)(1) and (2). On behalf of Beka One, we consider this entire letter a pertinent communication with respect to the resolution of this case. A prompt response is therefore expected. Thank you for your anticipated courtesies.

Respectfully submitted,

/s/ Benjamin P. Barmore

Benjamin P. Barmore
Attorney at Law
ZERBE, MILLER, FINGERET, FRANK,
JADAV & HUNZIKER, LLP

cc:

**Via Email: BardiaBaheri@gmail.com**
Beka One, LLC
903 E. Bitters Rd.
San Antonio, TX 78216

RLI_001134

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

|  |  |
|---|---|
| Client: | Baheri, Bardia |
| Property: | 903 E Bitters Rd. |
|  | San Antonio, TX 78216 |
|  |  |
| Operator: | SCPRDY2 |
|  |  |
| Estimator: | Estimating Department |
|  |  |
| Type of Estimate: | hail and wind damage |
| Date Entered: | 8/26/2021 |

Date Assigned:

|  |  |
|---|---|
| Price List: | TXSA8X_APR22 |
| Labor Efficiency: | Restoration/Service/Remodel |
| Estimate: | 2021-08-26-1357 |
| File Number: | E. Bitters Rd. |

Please note:
This is an estimate of damages based on visual inspection only. No destructive testing was performed. In the event that more information regarding damage becomes available, we respectfully reserve the right to adjust the scope accordingly.

This does not include any updated pricing due to increased costs of construction due to material increases.

The two sections are separated due only to the availability of sketches. All other additional line items are for both sections in total.

Julie K Needham
License # 2309641
OSHA 30 #21-602029080
Property Law Claims Specialist

RLI_001497

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

### 2021-08-26-1357

### Source - Eagle View (2021-08-26-1357)

### Source - Eagle View

 **R4**

28,928.06 Surface Area
1,363.22 Total Perimeter Length

289.28 Number of Squares

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1. R&R Rubber roofing – Mechanically attached - 60 mil | 303.74 SQ | 75.97 | 424.65 | 15,053.77 | 30,411.66 | 197,523.75 |
| 3. R&R Insulation - ISO board, 1 1/2" | 303.74 SQ | 50.42 | 226.33 | 8,321.94 | 16,812.02 | 109,194.00 |
| 12. Remove Additional charge for high roof (2 stories or greater) | 303.74 SQ | 5.06 | 0.00 | 152.16 | 307.38 | 1,996.46 |
| 13. Additional charge for high roof (2 stories or greater) | 303.74 SQ | 0.00 | 19.15 | 575.84 | 1,163.32 | 7,555.78 |
| 6. R&R Pitch pan / pocket - up to 6" x 6" x 4" - galvanized | 37.00 EA | 23.97 | 103.67 | 467.54 | 944.54 | 6,134.76 |
| 7. R&R Exhaust cap - through roof - 6" to 8" | 22.00 EA | 8.62 | 83.76 | 201.20 | 406.46 | 2,640.02 |
| 9. R&R Flashing - pipe jack - split boot | 18.00 EA | 7.59 | 80.91 | 157.70 | 318.60 | 2,069.30 |
| 10. R&R Cap flashing - large | 1,613.00 LF | 0.56 | 25.28 | 4,126.30 | 8,335.98 | 54,142.20 |
| 41. R&R Counterflashing - Apron flashing | 1,151.00 LF | 0.56 | 9.44 | 1,139.50 | 2,302.00 | 14,951.50 |
| 42. R&R Gutter / downspout - box - aluminum - 7" to 8" | 1,829.00 LF | 0.48 | 22.55 | 4,170.08 | 8,424.38 | 54,716.33 |
| 40. R&R Aluminum termination bar / flashing for membrane roofs | 1,613.00 LF | 0.56 | 2.65 | 512.59 | 1,035.56 | 6,725.88 |
| 11. R&R Metal roofing - corrugated - 29 gauge. | 4,312.00 SF | 0.48 | 5.98 | 2,757.71 | 5,571.12 | 36,184.35 |
| Totals: R4 | | | | 37,636.33 | 76,033.02 | 493,834.33 |
| Total: Source - Eagle View | | | | 37,636.33 | 76,033.02 | 493,834.33 |
| Total: Source - Eagle View (2021-08-26-1357) | | | | 37,636.33 | 76,033.02 | 493,834.33 |

### 2022-03-28-1101-1

### Source - Eagle View (2022-03-28-1101-1)

RLI_001498

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

**Source - Eagle View**



**R1**

| | |
|---|---|
| 28,457.20 Surface Area | 284.57 Number of Squares |
| 1,089.22 Total Perimeter Length | |

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 44. R&R Rubber roofing - Mechanically attached - 60 mil | 298.80 SQ | 75.97 | 424.65 | 14,808.95 | 29,917.04 | 194,311.25 |
| 45. R&R Insulation - ISO board, 1 1/2" | 298.80 SQ | 50.42 | 226.33 | 8,186.59 | 16,538.58 | 107,418.07 |
| 46. Remove Additional charge for high roof (2 stories or greater) | 298.80 SQ | 5.06 | 0.00 | 149.68 | 302.38 | 1,963.99 |
| 47. Additional charge for high roof (2 stories or greater) | 298.80 SQ | 0.00 | 19.15 | 566.48 | 1,144.40 | 7,432.90 |
| Totals: R1 | | | | 23,711.70 | 47,902.40 | 311,126.21 |
| Total: Source - Eagle View | | | | 23,711.70 | 47,902.40 | 311,126.21 |
| Total: Source - Eagle View (2022-03-28-1101-1) | | | | 23,711.70 | 47,902.40 | 311,126.21 |
| Total: 2022-03-28-1101-1 | | | | 23,711.70 | 47,902.40 | 311,126.21 |

**HVAC**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 39. Integrity Solutions Mechanical | 1.00 EA | 0.00 | 102,093.10 | 10,107.22 | 20,418.62 | 132,618.94 |
| Totals: HVAC | | | | 10,107.22 | 20,418.62 | 132,618.94 |

**General Conditions**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 14. Commercial Supervision / Project Management - per hour | 400.00 HR | 0.00 | 71.31 | 2,823.88 | 5,704.80 | 37,052.68 |
| 15. Competent Person - per hour | 400.00 HR | 0.00 | 67.46 | 2,671.42 | 5,396.80 | 35,052.22 |

2021-08-26-1357                                                                    4/21/2022        Page: 3

RLI_001499

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

## CONTINUED - General Conditions

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 1926.502(h) | | | | | | |

1926.502(h)
"Safety monitoring systems." Safety monitoring systems [See 1926.501(b)(10) and 1926.502(k)] and their use shall comply with the following provisions:
1926.502(h)(1)
The employer shall designate a competent person to monitor the safety of other employees and the employer shall ensure that the safety monitor complies with the following requirements:
1926.502(h)(1)(i)
The safety monitor shall be competent to recognize fall hazards;
1926.502(h)(1)(ii)
The safety monitor shall warn the employee when it appears that the employee is unaware of a fall hazard or is acting in an unsafe manner;
1926.502(h)(1)(iii)
The safety monitor shall be on the same walking/working surface and within visual sighting distance of the employee being monitored;
1926.502(h)(1)(iv)
The safety monitor shall be close enough to communicate orally with the employee; and
1926.502(h)(1)(v)
The safety monitor shall not have other responsibilities which could take the monitor's attention from the monitoring function.
1926.502(h)(2)
Mechanical equipment shall not be used or stored in areas where safety monitoring systems are being used to monitor employees engaged in roofing operations on low-slope roofs.
1926.502(h)(3)
No employee, other than an employee engaged in roofing work [on low-sloped roofs] or an employee covered by a fall protection plan, shall be allowed in an area where an employee is being protected by a safety monitoring system.
1926.502(h)(4)
Each employee working in a controlled access zone shall be directed to comply promptly with fall hazard warnings from safety monitors.

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 17. Temporary toilet (per month) | 2.00 MO | 0.00 | 148.70 | 29.45 | 59.48 | 386.33 |
| 18. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 16.00 EA | 652.61 | 0.00 | 1,033.74 | 2,088.36 | 13,563.86 |
| 19. Equipment setup, take down, and monitoring (hourly charge) | 336.00 HR | 0.00 | 56.57 | 1,881.74 | 3,801.50 | 24,690.76 |
| 21. Generator - 10-30KW (per week – 8 hour) - no monitoring | 8.00 WK | 0.00 | 600.00 | 475.20 | 960.00 | 6,235.20 |
| 24. General Laborer - per hour | 560.00 HR | 0.00 | 44.23 | 2,452.12 | 4,953.76 | 32,174.68 |
| Daily site clean up and maintenance plus time for spotters and flaggers. | | | | | | |
| 25. Job-site cargo/storage container - 40' long - per month | 2.00 MO | 0.00 | 115.84 | 22.93 | 46.34 | 300.95 |
| 28. Telehandler/forklift (per month) - no operator | 2.00 MO | 0.00 | 3,063.00 | 606.48 | 1,225.20 | 7,957.68 |
| 29. Equipment Operator - per hour | 224.00 HR | 0.00 | 64.76 | 1,436.11 | 2,901.24 | 18,843.59 |
| Hours for forklift to move contents as needed, telehandler, scissor lift and boom operator | | | | | | |
| 31. Latent Factor | 1.00 EA | 0.00 | 29,485.71 | 0.00 | 5,897.14 | 35,382.85 |
| 32. Rental equipment delivery / mobilization (Bid item) | 2.00 EA | 0.00 | 175.00 | 34.66 | 70.00 | 454.66 |
| 33. Caution tape | 1,000.00 LF | 0.00 | 0.09 | 8.92 | 18.00 | 116.92 |
| 35. Fuel surcharge | 1.00 EA | 0.00 | 1,400.00 | 138.60 | 280.00 | 1,818.60 |
| 36. Temporary fencing - 5-8 months (per month) | 400.00 LF | 0.00 | 0.98 | 38.81 | 78.40 | 509.21 |

2021-08-26-1357                                                                                              4/21/2022           Page: 4

RLI_001500

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

## CONTINUED - General Conditions

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| Material protection and exclusion zones. | | | | | | |
| **Totals: General Conditions** | | | | 13,654.06 | 33,481.02 | 214,540.19 |

### Labor Minimums Applied

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 50. Temporary repair services labor minimum | 1.00 EA | 0.00 | 112.38 | 11.12 | 22.48 | 145.98 |
| **Totals: Labor Minimums Applied** | | | | 11.12 | 22.48 | 145.98 |
| **Line Item Totals: 2021-08-26-1357** | | | | 85,120.43 | 177,857.54 | 1,152,265.65 |

### Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 5,258.37 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| 57,385.26 | Surface Area | 573.85 | Number of Squares | 2,452.44 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

RLI_001501

 **Needham Rice & Associates, LLC**

727 S Dallas Ave
Lancaster, Texas 75146
License #23100176
800-972-4771
needham.rice@gmail.com

## Summary

| | |
|---|---:|
| Line Item Total | 889,287.68 |
| Overhead | 88,928.77 |
| Profit | 88,928.77 |
| Comm. Rpr/Remdl Tax | 85,120.43 |
| **Replacement Cost Value** | **$1,152,265.65** |
| **Net Claim** | **$1,152,265.65** |

Estimating Department

APPX 360

RLI_001502

Source - Eagle View (2021-08-26-1357) - Source - Eagle View



Source - Eagle View

4/21/2022        Page: 7

APPX 361

RLI_001503

Source - Eagle View (2022-03-28-1101-1) - Source - Eagle View



2021-08-26-1357

Source - Eagle View

4/21/2022      Page: 8

RLI_001504



7020 2450 0001 8673 5756

**PRIORITY**®
**MAIL**

02 1P **$ 026.69**⁰
0000264658 APR 27 2022
MAILED FROM ZIP CODE 77056

ance (restrictions apply).*
ernational destinations.

rm is required.

s

and

JSE.

ARK
4/29/2022

FROM: ZMFF&J
3009 Post Oak Boulevard, Suite 1700
Houston, Texas 77056

TO: RLI Insurance Corporation
RLII525 T60607-RFS-1122          05/13/22

:RLI INSURANCE COMPANY
9025 N LINDBERGH DR
PEORIA IL 61615-1499

* R F S *

Return ...t

APPX 363

RLI_001505

PSC-87717
6/7/2021
PRIVATE PROCESS
1525

**Case Number: 2022CI09884**

Beka One, LLC VS RLI Insurance Company
(Note: Attached Document May Contain Additional
Litigants)

IN THE **224TH DISTRICT COURT**
BEXAR COUNTY, TEXAS

**CITATION**

"THE STATE OF TEXAS"

Directed To:   **RLI Insurance Company**
**BY SERVING ITS REGISTERED AGENT Corporation Service Company,**
**CSC- Lawyers Incorporating Service Company**

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00am on the Monday next following the expiration of twenty days after you were served this CITATION and PETITION a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org" Said **Plaintiff's Original Petition** was filed **on this the 27th day of May, 2022.**

ISSUED UNDER MY HAND AND SEAL OF SAID COURT **on this the 6th day of June, 2022.**

**BENJAMIN PAUL BARMORE**
**ATTORNEY FOR PLAINTIFF**
**3009 Post Oak Blvd Ste 2000**
**Houston TX  77056-6599**



**Mary Angie Garcia**
**Bexar County District Clerk**
**101 W. Nueva, Suite 217**

San Antonio, Texas 78205
By: /s/ Luis Herrera
Luis Herrera, Deputy

---

BEKA ONE, LLC VS RLI INSURANCE COMPANY

Case Number: 2022CI09884
224th District Court

**Officer's Return**

I received this CITATION on the _____ day of _____, 20_____ at _____ o'clock ___M. and ( ) executed it by delivering a copy of the
CITATION with attached **PLAINTIFF'S ORIGINAL PETITION** the date of delivery endorsed on it to the defendant _____
in person on the _____ day of _____, 20____ at _____ o'clock ____ M. at _____ or ( ) not
executed because _____.
Fees: _____ Badge/PPS #: _____ Date certification expires: _____
_____ County, Texas

BY: _____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____
**NOTARY PUBLIC, STATE OF TEXAS**

OR: My name is _____, my date of birth is _____, and my
address is _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State
of Texas, on the _____ day of _____, A.D., _____.

_____
**Declarant**



RLI_001945

FILED
5/27/2022 10:05 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Laura Castillo
Bexar County - 224th District Court

**2022CI09884**

CAUSE NO. _____

| | | |
|---|---|---|
| **BEKA ONE, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| **RLI INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | **____th JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Beka One, LLC (hereinafter referred to as "Plaintiff") by and through its attorney of record and files this petition for damages caused by RLI Insurance Company (hereinafter referred to as "Defendant"). In support of such claims and causes of action, Plaintiff would respectfully show this Honorable Court as follows:

### INTRODUCTION

1.      Plaintiff's Property sustained severe and increasing loss because of a covered weather event, namely a hailstorm that occurred on May 27, 2020. In the aftermath, Plaintiff relied on its insurance company to help it recover and rebuild with respect to Policy number RKA0300001. (*See* Exhibit #1). However, contrary to Defendant's representation to Plaintiff, Defendant improperly adjusted Plaintiff's claim number 00489674. Plaintiff has therefore not received the coverage it purchased and is now required to take legal action to ensure it gets what is owed to it.

RLI_001946

## DISCOVERY LEVEL

2.      Plaintiff intends for discovery to be conducted at Level 3, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

3.      The monetary relief sought by Plaintiff is more than $250,000.00, excluding interest, statutory or punitive damages and penalties, and attorney fees and costs. Tex. R. Civ. Pro. 47(c)(1).

## PARTIES

4.      Plaintiff, Beka One, LLC is a Limited Liability Company having its principal office located at 5617 Saint Peter Dr., Plano, TX 75093. Plaintiff owns the property located at 903 E. Bitters Rd., San Antonio, TX 78216 (hereinafter referred to as the "Property"). The above-mentioned Plaintiff comprises of the following members:

a) Bardia Baheri, residing at 5617 Saint Peter Dr, Plano, Texas 75093

b) Khashayar Baheri, residing at 5828 Lennox Hill Dr, Plano, Texas 75093

5.      Defendant, RLI Insurance Company is headquartered at 9025 N. Lindbergh Drive Peoria, Illinois 61615 and registered to do business in the State of Texas. Defendant may be served with process by serving Defendant's registered agent for service, Corporation Service Company, CSC- Lawyers Incorporating Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.      This Honorable Court has jurisdiction to hear Plaintiff's claims under the Texas common law and Texas statutory law. The amount in controversy exceeds the minimum jurisdictional limits of this Court. Additionally, the venue is mandatory and proper in Bexar County, Texas, in accordance with § 15.002 & the Texas Civil Practice & Remedies Code, as all or a substantial part of the events giving rise to this lawsuit occurred within said county.

RLI_001947

## FACTUAL BACKGROUND

7. Plaintiff and Defendant entered into an insurance agreement governed by the terms of the insurance policy bearing number RKA0300001, wherein Defendant, in exchange for a yearly premium, agreed to cover any and all expenses incurred by Plaintiff in the course of restoring its Property from damages that were not excluded in the insurance agreement.

8. Plaintiff's Property sustained a severe and increasing loss, as a result of a covered weather-related event, namely a hailstorm, which caused significant roof damage to the Property on or about May 27, 2020.

9. Following the discovery of the Property damage, Plaintiff notified Defendant of the same, and Defendant opened claim number 00489674.

10. After being informed of the damage to Plaintiff's property, Defendant retained Engle Martin & Associates on or around October 16, 2020 as a third party adjuster for the claim. Shortly thereafter, Engle Martin & Associates authorized Nelson Forensics, LLC to evaluate the mechanical equipment at the subject structure and determine the intensity of the damage. On December 21, 2021, Nelson Forensics submitted a Storm Distress Evaluation and a Mechanical Equipment Hail Distress Evaluation to Engle Martin.

11. On January 28, 2021, Defendant sent a denial letter informing Plaintiff that the reports issued by Nelson Forensics indicated that the damage to the roof of the property was cosmetic in nature and therefore not covered under the policy. The letter further stated that Engle Martin would complete an estimate for condenser coil repair in order to see if it met the deductible, but no other part of the damages to the Property would be estimated.

12. Engle Martin subsequently retained J. S. Held to review and inspect the Property and provide an estimate of the mechanical damage. J. S. Held released this estimate on or about February 1, 2021 and estimated that replacing the damaged parts of the HVAC units would cost a

RLI_001948

total of $2,730.05. Following this estimate, Defendant sent another letter to Plaintiff, stating that J. S. Held's estimate valued the repairs as under the deductible, therefore it would not be tendering any payment.

13.    Plaintiff retained Cram Roofing Company to perform minimal repairs to the property on or around March 16, 2021. Cram Roofing repaired the front door window and tracked, located, and repaired multiple cuts/punctures and loose patches on the field of the roof and room five for a total of $690.09.

14.    On or about August 25, 2021, Cram Roofing again worked on Plaintiff's property. Temporary and permanent repairs were carried out to address issues with the voids on the base flashing membrane on the roof curbs and pitch pans, as well as punctures and cuts on the roof membrane. These repairs totaled $1,840.25.

15.    Frustrated with the slow-moving claims process, Plaintiff retained the services of Needham Rice & Associates LLC on or about April 29, 2021 to assist with the claim process.

16.    Integrity Solutions Mechanical LLC ("ISM") was later retained by Plaintiff to investigate and evaluate the property damage as well as make recommendations regarding repairs to the HVAC and refrigeration equipment. On or about October 28, 2021, ISM released their report, which stated that enough hail damage was found to recommend full coil replacement versus attempting to repair the existing ones. Based on this report, ISM also prepared an estimate totaling $102,093.10 to fix the damage.

17.    On or about January 11, 2022, Needham Rice sent an email to Defendant, inquiring as to whether it intended to make a payment related to the HVAC systems. Defendant responded on or about February 8, 2022, reiterating the position outlined in their previous denial letter that the loss amount was less than the deductible; therefore, it would still not be tendering payment.

RLI_001949

18.    After experiencing repeated issues with two HVAC units in particular, Plaintiff retained Cool Planet Air to provide an estimate to fix the damage to those units. On or about February 9, 2022, Cool Planet Air provided their estimate in the amount of $23,675.36 to Plaintiff.

19.    On or about April 21, 2022, Needham Rice released an updated estimate of the damages to the property in the amount of $1,152,265.65. This estimate reflected the total known damages to the property with updated pricing.

20.    Plaintiff has responded to every piece of communication, request, and/or demand requested by Defendant throughout the claims handling process. Plaintiff made a timely and complete claim and cooperated in every aspect of the claim resolution process. Despite this, it has been unfairly and unjustifiably delayed. This delay has now compounded the loss at the Property, all of which stands in stark contrast to the representations made to Plaintiff by its carrier when it purchased the policy. Such conduct exposes Defendant to certain causes of action under Texas law.

21.    Defendant has a contractual obligation to pay the full amount of the covered loss, including the costs to repair, restore and/or replace the damage to the Property less any applicable deductible.

22.    Defendant has denied Plaintiff's Property claim based on an inadequate investigation and analysis of the damages to Plaintiff's Property resulting from the covered loss.

23.    Despite Defendant's failure to properly adjust the claim, the Policy unambiguously ensures the covered loss and resulting damages.

24.    As a result of Defendant's failure to adequately investigate Plaintiff's covered loss and failure to pay for all of the damages as required by its insurance policy, Plaintiff has been unable to make all the required repairs.

RLI_001950

25.   Defendant's failure to properly adjust the claim and its refusal to pay for the true value of the covered loss to the Property has left Plaintiff with no choice but to hire its own professionals, incurring costs and expenses associated with proper evaluation and investigation of Plaintiff's covered loss.

26.   The significant effect of Defendant's wrongful and unjustified delays and refusal to tender due and owing Policy proceeds and benefits is that Plaintiff detrimentally relied upon the contract of insurance it entered into with Defendant and remains without the benefit of the bargain.

27.   As a result of Defendant's failure to honor its obligations and duties under the Policy, Plaintiff was forced to retain the services of legal counsel to protect its rights and remedies under the Policy and as an insured.

28.   As of the date of filing of Plaintiff's Original Petition, Plaintiff has met and complied with all conditions precedent and duties under the subject insurance policy, and all such conditions and duties have been waived by Defendant.

## CLAIMS AGAINST DEFENDANT

29.   All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, or representatives. Such was done with Defendant's full authorization or ratification and was completed in the routine course and scope of employment of Defendant.

## BREACH OF CONTRACT

30.   Plaintiff entered into a valid and enforceable written insurance contract with Defendant pursuant to the laws of Texas and hereby incorporates by reference the allegations of paragraphs 1 through 29 above as though fully stated herein.

31.   Defendant sold, in exchange for valuable consideration, the Policy, whereby Defendant agreed to pay for, *inter alia*, direct physical loss to the Property resulting from any peril not otherwise excluded within the Policy.

RLI_001951

32. Plaintiff fulfilled all of its obligations under the policy, including the payment of certain premiums to secure insurance on its dwelling and personal Property.

33. Defendant's refusal to pay the full value of the damages to the Property constitutes a breach of contract.

34. Due to Defendant's breach of the terms of the insurance policy at issue, Plaintiff has sustained damages by way of unpaid insurance proceeds and benefits, has been forced to retain counsel, and has further been damaged by a sum to be determined at trial and final judgment.

35. Plaintiff's damages include, without limitation, actual damages, interest, and consequential damages, including without limitation, attorneys' fees, costs, resulting damages from required remediation, and other foreseeable costs and expenses as a result of the breach of contract by the Defendant.

36. The contract outlined obligations to be performed by both Plaintiff and Defendant, including but not limited to, Plaintiff paying policy premiums for its insurance coverage, and Defendant then providing said coverage for claims in the event of covered damage.

37. Plaintiff fully performed its contractual obligations by making policy premium payments and timely reporting covered losses upon its discovery, as required by the insurance contract with Defendant.

38. In direct contrast, Defendant materially breached the contract by failing to provide adequate coverage following the underlying claim filed by Plaintiff. Moreover, despite filing a claim which notified Defendant of this loss, Plaintiff has yet to receive full compensation for its covered damages as required by the insurance contract purchased.

39. In addition to the above, Plaintiff has previously given notice pursuant to Chapter 38.001 of the Civil Practice and Remedies Code, that it will seek all available attorney's fees, costs of court, penalties, and any additional remedies recoverable under Texas law.

RLI_001952

## BREACH OF THE COMMON LAW DUTY OF
## GOOD FAITH AND FAIR DEALING

40.     Plaintiff hereby incorporates by reference the allegations of paragraphs 1 through 39 above as though fully stated herein.

41.     There is an implied covenant of good faith and fair dealing in the insurance contract between Defendant and Plaintiff.

42.     Defendant had no reasonable basis for denying the benefits of the insurance policy, and Defendant knew of or recklessly disregarded, the lack of any such reasonable basis. The reckless indifference of Defendant to the facts or to the law can be inferred and imputed from its actions as specified in the facts above.

43.     Defendant has, in violation of the covenant of good faith and fair dealing, hindered the timely resolution of Plaintiff's insurance claim.

44.     Instead of working through the differences in the claim with Plaintiff or its representative, Defendant chose to retain someone else who would undervalue the damages in order to support Defendant's refusal to pay the full value of the damages to the Property.

45.     Defendant's reckless indifference to the facts, evidence, and the proof submitted by Plaintiff amount to a breach of Defendant's fiduciary responsibility for good faith and fair dealing owed to Plaintiff, the insured.

46.     As a direct and proximate result of Defendant's bad faith and/or its unfair Property and casualty settlement practices, Plaintiff has sustained compensatory damages, consequential damages, pre-and post-judgment interest, attorneys' fees, engineer's fees, costs, and expenses.

### VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE

47.     Plaintiff incorporates by reference all facts and circumstances set forth within the above paragraphs.

RLI_001953

48.     Defendant's actions constitute certain violations of Chapter 542 of the Texas Insurance Code, as Plaintiff remains unpaid since the underlying covered event occurred.

49.     Specifically, Defendant has violated Section 542.058 of Chapter 542 of the Texas Insurance Code, in failing to adhere to the statutorily prescribed deadlines in the handling, adjustment, and payment of insurance claims. Defendant has possessed all necessary information to pay this claim which is objectively deficient.

50.     As a result of the above-referenced violations and acts committed by Defendant, and in accordance with Section 542.060 of the Texas Insurance Code, Defendant is liable to pay Plaintiff, in addition to the amount of the claim, simple interest on said amount as damages. The same is to be calculated each year, at the rate determined on the date of the judgment under governing Texas law. Plaintiff is further entitled to prejudgment interest on the amount of the claim, as provided by law. Interest awarded under this subsection as damages accrue beginning on the date the claim was required to be paid.

51.     As a result of Defendant's Texas Insurance Code violations, Plaintiff has also been forced to retain the legal services of the undersigned attorneys to protect and pursue the present claims on its behalf. Accordingly, Plaintiff also seeks to recover its court costs, reasonable and necessary attorneys' fees as permitted under governing Texas law, as well as any other such damages to which Plaintiff may be justly entitled.

## DAMAGES

52.     Defendant's conduct has been the producing or proximate cause of damage to Plaintiff, and Plaintiff, therefore, seeks an amount in excess of the minimum jurisdictional limits of this Court.

53.     Plaintiff is clearly entitled to statutory penalty interest damages, attorney's fees, and cost of court, as allowed under Section 542 of the Texas Insurance Code.

RLI_001954

## ATTORNEY FEES

54.    In addition, Plaintiff is entitled to all reasonable and necessary attorneys' fees pursuant to the Texas Insurance Code, and sections 38.001-.005 of the Civil Practice and Remedies Code.

55.    Pursuant to the operative provisions of 542A, we reserve the right to file suit in keeping with the operative Statute of Limitations, even if before the expiration of this letter, in order to comply with Texas law.

## RULE 193.7 NOTICE

56.    Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff hereby gives actual notice to Defendant that any and all documents produced, may be used against the Defendant producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.

## RULE 28 REQUEST

57.    To the extent that Defendant is conducting business pursuant to a trade name or assumed name, then suit is brought against Defendant pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff demand that, upon the answer to this petition, that Defendant answer in its correct legal and assumed name.

## JURY DEMAND

58.    A jury trial has been requested and the appropriate fee has been tendered.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that it be awarded actual damages in excess of the minimum jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, costs of suit, all such additional relief specified within this Original Petition, and for all such other relief, at law or in equity, to which Plaintiff may be justly entitled.

RLI_001955

Respectfully submitted,

*/s/ Benjamin P. Barmore*
Benjamin P. Barmore
Texas Bar No. 24073076
Scott G. Hunziker
Texas Bar No. 24032446
ZERBE, MILLER, FINGERET, FRANK,
JADAV & HUNZIKER, LLP
3009 Post Oak Blvd., Suite 1700
Houston, Texas 77056
Telephone: (713) 350-3529
Facsimile: (713) 350-3607
bbarmore@zmflaw.com
shunziker@zmflaw.com

**ATTORNEYS FOR PLAINTIFF**

RLI_001956

# QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.

A PROFESSIONAL CORPORATION
ATTORNEYS AND COUNSELORS
2001 BRYAN STREET, SUITE 1800
DALLAS, TEXAS 75201

GREG K. WINSLETT
gwinslett@qslwm.com

Phone:  (214) 880-1870
Fax:  (214) 871-2111

June 23, 2022

*Via Email:* [bbarmore@zmflaw.com]
Mr. Benjamin B. Barmore
Zerbe, Miller, Fingeret, Frank, Jadav & Hunziker, LLP
3009 Post Oak Boulevard, Suite 1700
Houston, Texas 77056

   Re:  **Beka One, LLC** (the "Insured")
      **903 E. Bitters Road, San Antonio, Texas 78216** (the "Property")**:**
      **Policy No. RKA0300001** (the "Policy")
      **Claim no. 00489674** (the "Claim")
      **Reported Date of Loss:** May 27, 2020

Dear Mr. Barmore:

   I have been retained by RLI Insurance Company ("RLI") to respond to your correspondence, dated April 26, 2022 and received May 16, 2022, submitted under the Texas Deceptive Trade Practices Act and the Texas Insurance Code (including Chapter 542A).  For the following reasons, RLI must reject the demand set forth in your letter.

   RLI disagrees in the strongest possible terms with your baseless contentions that either RLI or its retained consultants violated the Texas Deceptive Trade Practices Act, the Texas Insurance Code, or the common law by materially breaching the Policy, performing a substandard investigation of the Claim, improperly adjusting the Claim, refusing to pay insurance benefits promptly and fairly, misrepresenting material facts or policy provisions, failing to promptly provide a reasonable basis for the basis for denial of coverage, failing to conduct a reasonable investigation, failing to communicate pertinent information to the insured, failing to conduct a reasonable investigation of the Claim, failing to deny coverage within a reasonable period of time, failing to attempt to come to a reasonable settlement, offering less money to settle than the true value of the Claim, failing to enter into negotiations for settlement of the claim, and/or failing to respond to a time-limit demand.

   By way of background, upon receiving the Insured's first notice of loss on October 16, 2020, Shawn Garner of RLI immediately engaged independent adjuster Stephen Klink of Engle Martin & Associates to assist in the claim investigation.  Mr. Klink inspected the property on October 30, 2020, and, following that inspection, RLI retained Nelson Forensics, LLC to further assist with our investigation.  Stewart Verhulst, P.E., Aubrey Smading, P.E., and Laura Schulte, P.E., of Nelson Forensics inspected the Property on November 23, 2020, along with the Insured's

EXHIBIT
**A-16**

BEKA 000722

June 23, 2022
Page 2

contractor from Empire Roofing. As we previously advised the Insured, Nelson Forensics reported the following conclusions:

1. Recent hail at the site has been on the order of 1 1/4" to 1 1/2" in diameter, maximum, with the majority of the hail being on the order of 1/2" in diameter or smaller. This recent hail is attributed to the May 27, 2020, storm event.

2. Hail from the May 27, 2020, storm event has not compromised the function or service life of the EPDM roof membranes or of the roof system at the subject structure.

3. The subject structure has not been damaged by wind from the May 27, 2020, storm event.

4. There are no openings in the building envelope at the subject structure related to hail impact or wind from the May 27, 2020, storm event.

5. Coil distress consistent with hailstone impacts on or around the reported date of loss was visible on exposed north, east, and west-facing coil surfaces on eight units;

6. Coil distress consistent with hail stone impacts on exposed south-facing coil surfaces can be attributed to one or more hail events prior to the date of loss;

7. On eight of the units, coil distress that can be attributed to a hail event on or around the reported date of loss can be repaired by straightening the bent and flattened fins on the distressed coils;

8. On five of the units, the coil distress can be attributed to one or more hail events prior to the date of loss and is considered pre-existing. No repairs related to a hail event on or around the date of loss are recommended;

9. Based on the limited extent of the hail distress, there has been negligible, if any, reduction in unit cooling capacity and negligible, if any, increases in unit condensing pressure and corresponding mechanical and thermal stresses that can be attributed to hailstone impacts;

10. The limited indentations on one of the GVs and EFs covers related to hail stone impacts occurred from a hail event on or before the date of loss. These indentations have not affected the equipment's pre-loss performance or shortened their service lives and no repairs related to hail are recommended.

Based on the findings of Nelson Forensics, RLI sent a letter to the Insured on January 28, 2021, citing relevant Policy provisions and explaining that there was no covered damage to the roof or building and that RLI would obtain an estimate for HVAC condenser coil repairs to determine whether those repairs would exceed the wind/hail deductible. RLI retained building consultant JS Held, LLC, who submitted an estimate of $2,730.05 to repair the hail damage to AC units that could be attributed to the May 27, 2020 storm. On February 11, 2021, RLI sent another letter to the Insured explaining that the cost of the HVAC repairs did not exceed the Policy's windstorm/hail deductible of $54,950 (1% of the building limit).

RLI received a letter of representation from the public adjusting firm Needham Rice & Associates on May 5, 2021. Six months later, on November 12, 2021, the public adjuster sent a Report and HVAC Repair/replacement estimate from Integrity Solutions Mechanical LLC for $102,093.10. Carlos Cagadas of RLI forwarded the estimate to JS Held, LLC, who retained a local contractor, Comfort-Air Engineering, Inc., to review the ISM submissions and prepare a

BEKA 000723

June 23, 2022
Page 3

comparison estimate to repair the HVAC damage attributable to the May 27, 2020 storm. Comfort-Air Engineering's repair estimate totaled $15,655. On February 8, 2022, RLI emailed Needham Rice & Associates, informing the public adjuster that RLI would maintain its coverage position because the local contractor's estimate to perform the HVAC repairs did not exceed the applicable deductible of $54,950.

RLI received a letter of representation from your law firm on March 24, 2022. Then, on May 16, 2022, RLI received your April 26, 2022 demand letter which, for the first time, included Needham Rice & Associates' $1,152,265.65 estimate of purported building damages. The estimate included the ISM HVAC estimate (which RLI previously declined after receiving a comparable estimate to complete repairs well below the applicable deductible), as well as the cost of fully replacing the roof at the Property, coverage for which RLI previously denied in its January 28, 2021 coverage determination letter.

As the facts set forth above clearly demonstrate, RLI's handling of this Claim was timely, comprehensive, and appropriate.

Your unsupported allegations are directed not only at RLI, but also RLI's employees and consultants retained by RLI to assist with its investigation of the Claim. As explained above, RLI retained Engle Martin & Associates, Nelson Forensics, JS Held, and Comfort-Air Engineering to assist in the inspections and/or evaluations of the alleged damage to your client's Property. RLI recognizes under Section 542A.006 that it may accept the potential liability of its consultants by providing written notice to the claimant. While it is clear that RLI, Engle Martin & Associates, Nelson Forensics, JS Held, Comfort-Air Engineering, and the respective employees of each, did absolutely nothing improper or inappropriate here, pursuant to section 542A.006(b), RLI accepts any liability for any alleged acts or omissions relating to this Claim by any of them or their employees.

The Insured initiated suit against RLI on May 27, 2022 in violation of the 61-day notice period under Chapter 542A of the Texas Insurance Code, the effect of which is that the Insured has waived its right to recover attorney's fees. Tex. Ins. Code § 542A.007(d).

Lastly, please understand that the above discussion is based upon RLI's current understanding of the facts and circumstances pertaining to this Claim. This letter does not, nor is it intended to, waive or relinquish any rights or defenses RLI may have or that may exist under the terms of the Policy issued to your client or under any applicable statutory or common law. RLI specifically and fully reserves all such rights.

Sincerely,

Greg K. Winslett

BEKA 000724

June 23, 2022
Page 4

GKW/sf

cc:     Carlos Cagadas – via email: Carlos.Cagadas@rlicorp.com

        Richard L. Smith, III/firm

        Jon Lautin/firm

BEKA 000725