IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BEKA ONE, LLC,<br>*Plaintiff*<br><br>-vs-<br><br>RLI INSURANCE COMPANY,<br>*Defendant* | §<br>§<br>§   Civil Action No. 5:23-CV-00064<br>§<br>§<br>§<br>§<br>§ |

## ORDER

On this date, the Court considered Defendant's motion for partial summary judgment (ECF No. 21), Plaintiff's response (ECF No. 23), and Defendant's reply (ECF No. 24). After careful consideration, the Court **GRANTS** the motion.

## BACKGROUND

This case arises out of a dispute between Plaintiff Beka One, LLC ("Beka One") against Defendant RLI Insurance Company ("RLI") for an insurance claim for damages to Plaintiff's building, located at 903 E. Bitters Road in San Antonio, Texas (the "Property") allegedly caused by a hailstorm on May 27, 2020. ECF No. 1 ¶¶ 1–2.

In October 2020, Plaintiff submitted a claim for damages to the Property's roof, HVAC, and exhaust outlets (the "Claim") under a policy issued by Defendant (the "Policy"). ECF No. 21-1 at 163. Defendant then retained Engle Martin & Associates ("EMA"), an independent adjusting company, to inspect the Property. *Id.* at 165. On EMA's recommendation, Defendant retained an engineering firm, Nelson Forensics, LLC ("Nelson"), and a building consulting firm, JS Held, LLC ("JS Held"), to further assist with the investigation. *Id.* at 5.

In November 2020, Nelson agents inspected the Property, issuing two reports on their findings. *Id.* at 179. In its first report (the "Storm Stress Evaluation"), Nelson concluded that the

May 2020 storm did not compromise the "function or service life" of the Property's roof system and that any damage was caused by age, long term wear, and sun exposure. *Id.* at 182. The second report (the "Mechanical Equipment and Distress Evaluation"), evaluating the Property's HVAC units, exhaust fans, and rooftop vents, concluded that the storm had caused some damage to the HVAC system and recommended repairs. *Id.* at 229–35. Based on the second report and its own inspection of the Property, JS Held prepared an estimate of the cost of repairs to the HVAC system totaling $2,739.05. *Id.* at 300.

Based on the Nelson reports and JS Held's estimate, Defendant concluded that (1) the damage to the roof was "cosmetic in nature," and thus not covered under the Policy, and (2) the repair estimate for the HVAC system fell below the Policy deductible of $54,950. Defendant thus issued letters denying Plaintiff's claims in January and February 2021. *Id.* at 296–99 (January 28, 2021 letter denying coverage for roof damages); *id.* at 310–12 (February 11, 2021 letter denying payment for HVAC damages below deductible).

Plaintiff hired a roofer to carry out repairs on the Property in March and August 2021, ECF No. 23-2 at 1–2, and retained Needham Rice & Associates LLC ("Needham"), a public adjuster, to assist with the claims process, ECF No. 23 ¶ 9. In November 2021, Needham sent Defendant a damage report with a repair estimate of $102,093.10, provided by Integrity Solutions Mechanical, LLC ("ISM"), an HVAC contractor. ECF No. 21-1 at 313, 321. Defendant forwarded ISM's estimate to JS Held for further review, explaining that the estimate was based on a different scope of repairs than those recommended by Nelson. *Id.* at 333.

In January 2022, JS Held retained HVAC specialists from Comfort Air Engineering, Inc. ("Comfort Air") to evaluate the scope of repairs based on ISM and Nelson's competing recommendations. *Id.* at 335. After reviewing the reports and inspecting the Property, Comfort Air

2

determined that no major repair or equipment replacement was necessary and estimated repair costs of $15,655—again below Plaintiff's deductible. *Id*. at 336, 342. Accordingly, Defendant reaffirmed its denial of Plaintiff's claim for the HVAC repairs. *Id*. at 344.

On May 16, 2022, Defendant received a pre-suit demand letter from Plaintiff containing a new estimate from Plaintiff's adjuster for $1,152,265.65 for repairs, including a full roof replacement, and the full amount of the of the ISM HVAC estimate. *Id*. at 351, 362. Ten days later, before Defendant had a chance to respond to the demand letter, Plaintiff filed its first lawsuit on May 27, 2022. *Id.* at 364–75. Plaintiff later voluntarily dismissed the case as premature under Section 542A of the Texas Insurance Code. Defendant responded to Plaintiff's pre-suit letter reiterating its position in June 2022. *Id*. at 376–79.

On August 16, 2023, over a year after the filing of this suit, Plaintiff retained Mayfield Building Envelope Consultants ("MBEC"), a consulting company, to conduct a personal investigation into the property damages. ECF No. 23-1 at 3. MBEC reported that on the date of loss, nearby locations had hail between 2 and 3.25 inches and showed wind speeds of nearly 70 miles per hour. *Id*. at 21, 23. MBEC further concluded—contrary to Defendant's determination—that the cuts and punctures in the roof were consistent with windblown projectile impact. *Id*. at 23.

On January 17, 2023, Plaintiff filed suit against Defendant seeking damages for the denial of coverage, alleging that Defendant breached the Policy, the common law duty of good faith and fair dealing, and violated the Texas Insurance Code. ECF No. 1.

Defendant now seeks summary judgment as to Plaintiff's claim for breach of good faith and fair dealing, arguing that, viewed in the light most favorable to Plaintiff, the evidence demonstrates nothing more than a bona fide coverage dispute. ECF No. 21. The Court agrees.

## DISCUSSION

### I.   Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Analysis

Under Texas law, an insurer owes a duty "to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified on other grounds by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990)). An insurer does not breach its duty merely by erroneously denying a claim. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

An insurer may "breach its duty of good faith and fair dealing by failing to reasonably investigate a claim" before denying it. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997). "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 48, 44–45 (Tex. 1997). An insurer fails to reasonably investigate a claim if the

investigation is conducted as a pretext for denying the claim. *See, e.g., State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 458 (Tex. 1997) (denying summary judgment on bad faith claims given evidence that expert report was not objectively prepared); *Simmons*, 963 S.W.2d at 45 (finding an "outcome-oriented" investigation unreasonable). An insurer is entitled to rely on the opinions of its experts unless there is evidence that such opinions or other information were either unreliable or not objectively prepared. *See Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 194 (Tex. 1998); *see also Tucker v. State Farm Fire and Cas. Co.*, 981 F. Supp. 461, 466 (S.D. Tex. 1997) ("In Texas, reliance on the opinion of an independent expert is a reasonable basis for denial of a claim as a matter of law.").

A claim for breach of the duty of good faith and fair dealing exists "when the insurer has no reasonable basis for denying or delaying payment of a claim." *Higginbotham*, 103 F.3d at 459 (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)). To succeed, a plaintiff must show that the defendant "knew or should have known that it was reasonably clear that the claim was covered." *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (quoting *Giles*, 950 S.W.2d at 54–55). "In determining whether a reasonable basis existed for denying a claim, the facts available to the insurer at the time of denial are considered." *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 536 (S.D. Tex. 1999) (citing *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)).

"An insurer does not act in bad faith where a reasonable investigation reveals a claim is questionable." *United Servs. Auto. Ass'n v. Croft,* 175 S.W.3d 457, 471 (Tex. App.—Dallas 2005, no pet.). A defendant is free from liability if he can show a reasonable basis for the denial, regardless of whether a factfinder should find it erroneous. *Higginbotham*, 103 F.3d at 459 (insurance carriers maintain the right to deny questionable claims without being subject to liability

for an erroneous denial of the claim). "Facts and evidence establishing only a bona fide coverage dispute do not rise to the level of bad faith." *Switzer v. State Farm Lloyds*, 642 F. Supp. 3d 568, 573 (5th Cir. 2022) (citing *Simmons,* 963 S.W.2d at 50–51).

The summary judgment evidence establishes that Defendant retained independent experts (including engineers, building consultants, and HVAC specialists) to evaluate the damage to the Property and estimate repair costs and relied upon their opinions its payment decisions. These companies not only conducted multiple inspections, but also considered all information submitted by Plaintiff's consultants.

Plaintiff has proffered no evidence suggesting that Defendant failed to conduct a reasonable investigation or that its experts' reports were not objectively prepared or were otherwise unreliable. *See Castaneda*, 988 S.W.2d at 194. Nor has it offered any evidence that Defendant "knew or should have known" that Plaintiff's claim was covered (or that its experts' reports were unreliable) based on the facts available to Defendant when it denied Plaintiff's claims. *Giles*, 950 S.W.2d at 54–55; *Viles*, 788 S.W.2d at 567. Instead, Plaintiff cites disagreements between the "Mayfield" report—prepared during this litigation by a roofing consultant retained by Plaintiff as an expert in this case—and the reports on which Defendant relied in denying Plaintiff's claims:

> The findings in these reports are not conclusive and only provide evidence showing Defendant knew or should have known of the covered damage to Plaintiff's property, which should have caused Defendant to make prompt payment. The conclusions found in the Mayfield report contradict the conclusions put forward by both Nelson Reports.

*See* ECF No. 23 at 9. These contradictions, however, only demonstrate that there is a bona fide dispute between experts and do not rise to the level of bad faith, especially considering that the Mayfield report was not available to Defendant when it denied Plaintiff's claims. *Switzer*, 642 F. Supp. 3d at 573.

In short, there is no evidence that Defendant acted unreasonably in investigating or denying Plaintiff's claims. Although issues of reasonability are normally left for a factfinder to determine, "courts routinely determine as a matter of law that undisputed record evidence establishes an insurer had a reasonable basis for denying . . . claim payment." *Alvarez v. State Farm Lloyds*, No. SA-18-CV-01191-XR, 2020 WL 1033657, at *4 (W.D. Tex. Mar. 2, 2020); *see, e.g.*, *Switzer*, 642 F. Supp. 3d at 576 (granting insurer's motion for summary judgment against insured's common law bad faith claim where the evidence revealed that the insurer had a reasonable basis for denying or delaying payment for the insured's hail damage claim as a matter of law due to disputed and contradicting expert reports and cost estimates); *Peterson v. State Farm Lloyds*, 242 F. Supp. 3d 557, 562 (W.D. Tex. 2017) (granting summary judgment in favor of the insurer against the insured's claim for breach of the common law duty of good faith and fair dealing where there was no evidence that the insurer acted in bad faith when denying the insured's claim). Based on the summary judgment record, no reasonable jury could return a verdict for Plaintiff on its bad-faith claims. *See Anderson*, 477 U.S. at 248.

## CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment (ECF No. 21) is **GRANTED**.

Plaintiff's claims for breach of the duty of good faith and fair dealing are **DISMISSED WITH PREJUDICE**. Plaintiff's claim for breach of contract remains to be tried.

It is so **ORDERED**.

**SIGNED** this 13th day of September, 2024.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE